Steven Haney Esq., *Pro Hac Vice*
Haney Law Group, PLLC
22815 Kelly Rd.
Eastpointe, MI 48021
Telephone: (248) 414-1470
E-Mail: steve@haneygroup.net

Attorneys for Defendant

Jacob A. Gillick, Esq., SBN 312336
Gillick Legal, APC
777 S. Alameda, 2nd Floor
Los Angeles, CA 90021
Telephone: (858) 250-0656
E-Mail: JGillick@GillickLegal.com

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN RINDERKNECHT<br><br>Defendants. | Case No. 2:25-cr-00833-AH<br><br>**DEFENDANT JONATHAN RINDERKNECHT'S MOTION IN LIMINE TO ADMIT EVIDENCE OF ATF SPECIAL AGENT MATTHEW BEALS' PRIOR INVESTIGATION AND TESTIMONY IN THE USS BONHOMME RICHARD ARSON PROSECUTION PURSUANT TO FED. R. EVID. 404(b), 608, AND 613, AND THE SIXTH AMENDMENT**<br><br>Hearing Date: May 13, 2026<br>Hearing Time: 10:00 a.m.<br>Department: 9C<br>Hon. Anne Hwang Presiding |

1

## I.  INTRODUCTION

Defendant Jonathan Rinderknecht respectfully moves this Court for an order permitting the defense to introduce evidence at trial of ATF Special Agent Matthew Beals' prior role as the lead ATF investigator in the arson investigation and prosecution of United States Navy Seaman Ryan Mays arising from the catastrophic 2020 fire aboard the USS *Bonhomme Richard* in San Diego, California.

This prior investigation, prosecution, and acquittal bear extraordinary and unmistakable similarities to the investigation Agent Beals has conducted against Mr. Rinderknecht in the present case and, critically, reveals a pattern, motive, and systematic bias that is directly relevant to the jury's assessment of Agent Beals' credibility, methodology, and conclusions in this case.

In both cases: the subject was observed near the origin area before the fire but was never seen starting it; no direct eyewitness testimony exists placing the subject as the cause of the fire; no ignitable fluids, accelerants, or arson-specific physical evidence were recovered; the lead ATF investigator identified an "open flame with a lighter" as the ignition source while acknowledging uncertainty as to the exact ignition sequence; the investigation lasted approximately eight (8) months before findings were published; the investigator constructed a motive theory premised on a young, discontented man striking out against institutional authority; and the resulting prosecution of the "suspect" served, directly or indirectly, to deflect scrutiny from the institutional failures of a government agency — the United States Navy in Mays, and the Los Angeles Fire Department ("LAFD") and California State Parks in this case.

In the Mays prosecution, a military court rejected Agent Beals' findings, acquitted Seaman Mays of all charges, and the Navy's own investigation blamed the ship's commanding officers. The parallel in this case is strikingly similar and impossible to ignore.

MOTION IN LIMINE

This evidence is admissible on at least four independent grounds: (1) under Federal Rule of Evidence 404(b)(2) as proof of Agent Beals' motive, absence of mistake, and a common plan or scheme in conducting arson investigations; (2) under Federal Rule of Evidence 608(b) as specific instances of conduct probative of the investigator's character for truthfulness and the reliability of his methodology; (3) as extrinsic bias evidence fully admissible under Federal Rule of Evidence 613 and the Confrontation Clause; and (4) as substantive evidence under the Sixth Amendment's guarantee that the accused may confront and meaningfully cross-examine the government's key witness. The probative value of this evidence is substantial and is not substantially outweighed by any danger of unfair prejudice under Rule 403.

## II. STATEMENT OF RELEVANT FACTS

### A. Agent Matthew Beals: The Government's Lead ATF Investigator in This Case

ATF Special Agent Matthew Beals is the Bureau's primary investigator and expected key trial witness in the prosecution of Jonathan Rinderknecht. Agent Beals participated in the Origin and Cause investigation of the January 1, 2025, Lachman Fire and the January 7, 2025, Palisades Fire, which the government alleges constitutes a "holdover" fire event caused by the rekindling of the earlier Lachman Fire.

Agent Beals conducted multiple witness interviews, including extensive recorded interviews of Mr. Rinderknecht on January 24, 2025 — interviews during which Agent Beals employed deception to obtain Mr. Rinderknecht's cooperation. Agent Beals participated in the preparation of the ATF Origin and Cause Report, which was not finalized until August 8, 2025, nearly eight months after the Lachman Fire began. The report concluded, without any direct evidence of arson, that the Lachman Fire was an intentional act committed by Mr. Rinderknecht using nothing but an open flame by means of a lighter, while

3

ignoring multiple witnesses' factual accounts of hearing a loud bang, followed by a flash of light, then instantly the start of the Lachman Fire.

**B. The Government's Theory and the Total Absence of Direct Evidence**

The government's theory of prosecution rests on the following: (1) Mr. Rinderknecht was present in the area of Buddha Hill (the Skull Rock Trailhead area) on New Year's Eve shortly after midnight on January 1, 2025; (2) he was near the area where the Lachman Fire is believed to have originated; (3) he possessed a lighter; (4) he asked a ChatGPT query about cigarette liability following the fire; and (5) he allegedly provided inconsistent accounts, three weeks after the fact, of where exactly he was on the darkened trail when he first observed the fire.

Critically, the government possesses: *no* eyewitness who observed Mr. Rinderknecht starting the fire; *no* physical evidence of accelerants, ignitable fluids, or materials associated with deliberate arson at the origin site; *no* incriminating statements or admissions by Mr. Rinderknecht; *no* surveillance video of Mr. Rinderknecht committing any act of arson; and *no* identification of the precise ignition source or the specific item of fuel first ignited.

The ATF was unable to determine a precise point of origin, only a 20-foot by 20-foot "area of origin." Cell phone GPS data cannot place Mr. Rinderknecht within the ignition area — at best, it places him approximately 30 to 50 feet away, on a trail. Mr. Rinderknecht called 911 more than thirteen (13) times attempting to report the fire, waited for emergency responders to arrive, and cooperated fully throughout the investigation.

By contrast, abundant evidence supports the accidental or natural origin of the Palisades Fire. Multiple witnesses in the Highlands neighborhood — numbering upwards of thirty (30) — heard what sounded like fireworks or a mortar explosion immediately before the Lachman Fire began on New Year's Eve, a night historically associated with widespread illegal fireworks use in the

4

MOTION IN LIMINE

Palisades area.

A security guard near the Skull Rock Trailhead reported hearing fireworks at midnight and seeing four individuals in hooded clothing running from the trailhead. Another witness, whose house abutted the trailhead said the windows of his house shook from a mortar blast on the hill right after midnight. In response, at approximately 12:15am he went outside and saw the start of the Lachman Fire and also saw four teenagers in hoodies leaving the area. Another witness, who was walking his dog, also told the ATF that right around 12:10am, he heard a loud bang, saw a flash of light and then saw the start of the Lachman Fire. This witness has been adamant in his observation of the fireworks, took a photo of the fire at 12:14am, and was the first person to call 911 to report the fire. The notion that the New Years' Eve Lachman Fire was not started by a firework borders on absurd.

The ATF's own initial search warrant affidavits theorized that the Lachman Fire was caused by fireworks, and agents searched Mr. Rinderknecht's residence, vehicle, phones, and cloud storage for evidence of fireworks possession, or any other arson related references — and found nothing.

Furthermore, LAFD Battalion Chief Mario Garcia ordered fire crews to abandon the Lachman burn scar on the morning of January 2, 2025, despite firefighters' warnings (LAFD Firefighter Scott Pike) who testified at a recent deposition that the Lachman burn scar was still smoldering, with ash pits too hot to touch with a gloved hand.

No thermal imaging was used, in violation of standard protocol. No LAFD personnel, or State Parks representatives returned to the burn scar before hurricane-force Santa Ana winds and the Lachman Fire reignited six days later into the catastrophic Palisades Fire.

/ / /

/ / /

/ / /

5

MOTION IN LIMINE

**C.  Agent Beals' Prior Role: The USS Bonhomme Richard Investigation and the Prosecution of Ryan Mays**

In July 2020, a devastating fire broke out aboard the USS *Bonhomme Richard*, a United States Navy amphibious assault ship docked at Naval Station San Diego, California. The fire burned for four days, caused damage in the hundreds of millions of dollars, and resulted in the constructive total loss of the vessel. The fire was one of the most catastrophic peacetime naval losses in modern American history.

ATF Special Agent Matthew Beals served as the lead ATF investigator in the arson investigation of the USS *Bonhomme Richard* fire. The investigation spanned approximately eight (8) months — precisely the same duration as the Lachman/Palisades investigation in this case — before Agent Beals' team published its findings.

The investigation identified Navy Seaman Ryan Mays as the alleged arsonist. Mays was a young, enlisted sailor who had failed to qualify for the Navy SEAL program. Agent Beals and the government constructed a motive theory premised on Mays' supposed resentment, disillusionment, and dissatisfaction — characterizing him as an angry young man who wanted to strike out at those around him. **This motive theory was eerily identical to the profile the government now deploys against Jonathan Rinderknecht in this case.**

The parallels between the Mays investigation and the present investigation are not merely coincidental — they are structurally identical:

> **Parallel 1 — Presence Near Origin Without Witnessing the Act:**
>
> In the Mays case, Seaman Mays was identified as having been seen in the vicinity of the area where the fire originated aboard the *Bonhomme Richard* prior to the fire's ignition. No witness ever observed Mays starting the fire. **In the Rinderknecht case, Mr. Rinderknecht was present on Buddha Hill near the area of origin of the Lachman Fire on New Year's Eve. No**

6

MOTION IN LIMINE

**witness ever observed Mr. Rinderknecht starting any fire.**

**Parallel 2 — Open Flame Theory With No Direct Physical Evidence:**

In both cases, Agent Beals concluded that the fire was intentionally set using an open flame — and in both cases, no accelerants, ignitable fluids, or physical evidence of deliberate arson preparation were found. In the Mays case, Mays possessed a lighter in his locker. **In this case, Mr. Rinderknecht possessed a lighter in his car. In both cases, Agent Beals elevated this entirely ordinary possession to a pillar of the arson theory.**

**Parallel 3 — No Identification of Exact Ignition Source:**

In the Mays prosecution, Agent Beals acknowledged under oath that he was "uncertain" about the ignition sequence — a concession that goes to the heart of any arson determination. **In this case, the ATF similarly could not identify the precise ignition source or the exact item of fuel first ignited. Despite this, Agent Beals' team concluded — in both cases — that arson had been committed.**

**Parallel 4 — Consistent Denial of Guilt:**

In both cases, the subject of Agent Beals' investigation consistently and repeatedly denied any involvement in starting the fire. In the Mays case, Seaman Mays denied setting the fire. **In this case, Mr. Rinderknecht has consistently denied starting the Lachman Fire from his very first contact with investigators.**

**Parallel 5 — Motive Profile: The Discontented Young Man:**

In the Mays case, Agent Beals and the prosecution portrayed Seaman Mays as a disgruntled, disenchanted, angry young man who had failed to achieve his ambitions and sought to vent his frustration and resentment against those around him. **The government employs a strikingly similar character profile against Mr. Rinderknecht. In both instances, this motive narrative was constructed without any direct evidence of intent to**

7

**commit arson.**

**Parallel 6 — Eight-Month Investigation Duration:**

Both the USS *Bonhomme Richard* investigation and the Lachman/Palisades investigation were conducted by Agent Beals' team over an approximately eight-month period before conclusions were published. This is not coincidence — it reflects the same investigative pattern and the same methodological approach applied by Agent Beals in both cases.

**Parallel 7 — Institutional Failure as the True Cause:**

In the Mays case, following the acquittal, the United States Navy conducted its own investigation and attributed primary blame for the *Bonhomme Richard* fire's devastation to the ship's commanding officers, whose failures in fire suppression readiness and emergency response were determined to be significant contributing causes. Agent Beals' prosecution of Mays had the effect — whether intended or not — of focusing blame on an individual sailor rather than on the institutional and command failures of the Navy itself. In this case, the defense contends that Agent Beals' prosecution of Mr. Rinderknecht performs the same function: it deflects scrutiny from the catastrophic institutional failures of the LAFD and the California State Parks — including the decision by Battalion Chief Mario Garcia to abandon a smoldering burn scar in the face of an imminent red flag weather event — onto a private individual who happened to be in the area.

## D. The Acquittal of Ryan Mays and the Criticism of Agent Beals' Investigation

Following a court martial proceeding in the United States Navy-Marine Corps military justice system, Seaman Ryan Mays was acquitted of all arson charges arising from the USS *Bonhomme Richard* fire.

The military court rejected Agent Beals' investigative conclusions and the government's theory that Mays had intentionally set the fire. Following the

acquittal, critics of the investigation — including naval observers, legal commentators, and military justice practitioners — characterized the Mays prosecution as an effort by the Navy and its allied investigative agencies to scapegoat an individual sailor in order to shield the Navy's leadership and institutional command structure from accountability for the conditions that allowed the fire to spread and the ship to be destroyed.

The acquittal in the Mays court martial is directly relevant to this proceeding. It establishes that a factfinder with direct access to Agent Beals' investigative findings and testimony reviewed his methodology and conclusions and found them insufficient to sustain a finding of guilt beyond a reasonable doubt — in a factually and structurally parallel arson case. The jury in this case is entitled to know that Agent Beals has made this same type of arson determination before, under nearly identical evidentiary circumstances, and was rejected by a court.

### III. LEGAL ARGUMENT

**A. The Evidence Is Admissible Under Federal Rule of Evidence 404(b)(2)**

Rule 404(b) expressly permits other-acts evidence for non-propensity purposes such as knowledge and absence of mistake. USCS Fed Rules Evid R 404.

Federal Rule of Evidence 404(b)(1) prohibits the use of "other crimes, wrongs, or acts" only when offered to prove that a person acted in conformity therewith — i.e., propensity evidence. Rule 404(b)(2), however, expressly permits such evidence when offered for other purposes, including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

The evidence could be admissible under Rule 404(b) if it is offered for a proper purpose, such as demonstrating the agent's knowledge, intent, or absence of mistake in the current case. For example, Agent Beals' prior involvement in a

similar case is relevant to establishing a pattern of investigative methods or expertise that directly pertains to the current prosecution and therefore satisfies the materiality requirement. *Huddleston v. United States*, 485 U.S. 681, 685-86 (1988)

The defense does not offer Agent Beals' prior conduct to prove his propensity to act in any particular way. Rather, this evidence is offered for the following expressly permissible Rule 404(b)(2) purposes:

**1. Motive and Bias.** Evidence of Agent Beals' prior investigation — and his role in a prosecution that resulted in acquittal and criticism of his methodology — is directly probative of his institutional motivation to reach a conclusion of arson in this case regardless of whether the evidence supports that conclusion. A government agent whose prior signature investigation was rejected by a court has both a professional and institutional motivation to revalidate his methodology in subsequent proceedings. The Supreme Court in *Abel* emphasized that "proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony" *United States v. Abel*, 469 U.S. 45 (1984). This principle is grounded in the Federal Rules of Evidence, particularly Rule 401, which defines relevant evidence as that which has any tendency to make a fact of consequence more or less probable. USCS Fed Rules Evid R 401. *United States v. Abel*, 469 U.S. 45, 52 (1984) ("[E]vidence of bias is almost always relevant.").

**2. Absence of Mistake or Accident / Lack of Accident.** The Rinderknecht defense theory is, in significant part, that if the Lachman Fire was started by a person at all — a predicate the defense contests — it was caused accidentally, not intentionally, including potentially by Mr. Rinderknecht's cigarette or by the fireworks of others. Agent Beals concluded that the fire was intentional arson. His prior conclusion of intentional arson under nearly identical

MOTION IN LIMINE

evidentiary circumstances — circumstances that a court ultimately found insufficient — is directly probative of whether his arson determination in this case reflects genuine evidence or a systematic pattern of over-reaching investigative conclusions. *United States v. Pritchard*, 964 F.3d at 524.

**3. Plan or Common Scheme.** The extraordinary structural parallels between the two investigations reveal not a coincidence but a methodology — a systematic investigative approach in which Agent Beals identifies a suspect present near a fire's origin, constructs a motive narrative around the suspect's character, and reaches a conclusion of intentional arson without direct evidence. This "common plan" is admissible under Rule 404(b)(2) to illuminate the framework within which Agent Beals' conclusions in this case were reached.

**4. Identity.** The virtually identical methodology Agent Beals employed in both the Mays investigation and this investigation — down to the eight-month timeline, the open-flame theory, the absence of physical evidence, and the discontented-young-man motive profile — is relevant to identify the source and reliability of the investigative method that produced the government's case against Mr. Rinderknecht.

**B. The Evidence Is Independently Admissible Under Federal Rule of Evidence 608(b) to Attack Agent Beals' Credibility**

Federal Rule of Evidence 608(b) permits a court, in its discretion, to allow inquiry on cross-examination into specific instances of a witness's conduct if those instances are probative of the witness's character for truthfulness or untruthfulness. The Ninth Circuit has consistently recognized that the scope of cross-examination to expose a government witness's credibility deficits is broad, particularly where the witness's testimony is central to the case. *United States v. Brooke*, 4 F.3d 1480, 1488 (9th Cir. 1993) ("[W]hen the case against a defendant turns on the testimony of a single witness... great latitude should be allowed in cross-examining that

11

witness or as to any bias that may underlie it.").

The Brooke Court emphasized "We have previously pointed out that "when [**28]  the case against a defendant turns on the credibility of a witness, the defendant has broad cross-examination rights." *United States v. Ray,* 731 F.2d 1361, 1364 (9th Cir. 1984). The Court further overemphasized the importance of allowing full and fair cross-examination of government witnesses whose testimony is important to the outcome of the case. United States v. Brooke, 4 F.3d 1480, 1489.  Here, no government witness is more material, or important, to the outcome of this case than Special Agent Beals.

Agent Beals' prior arson investigation, his sworn testimony at the Mays court martial, his concession under oath that he was "uncertain" about the ignition sequence in the Mays case — notwithstanding his conclusion of intentional arson — and the acquittal that followed are specific instances of conduct directly probative of the reliability and honesty of Agent Beals' investigative judgments and expert conclusions. This Court has broad discretion to permit such inquiry.

The defense respectfully submits that in a case where the government's arson conclusion rests entirely on the investigative conclusions of this same agent, such inquiry is not merely appropriate — it is constitutionally compelled and paramount to the Defense to engage in a full and fair cross-examination of Agent Beals..

**C. The Evidence Is Admissible as Bias Evidence Under the Confrontation Clause and Federal Rule of Evidence 613**

The Sixth Amendment guarantees the right of an accused to confront witnesses against them, which includes the right to effective cross-examination. This right is not limited to physical confrontation but extends to probing a witness's credibility through inquiries into potential biases or motivations. *Davis v. Alaska,* 415 U.S. 308 (1974), *Daniels v. State,* 374 So. 2d 1166 (1979), *Burr v. Sullivan,* 618 F.2d 583 (1980), USCS Const. Amend. 6.

MOTION IN LIMINE

The Sixth Amendment's Confrontation Clause guarantees the accused not merely a formal opportunity to cross-examine government witnesses, but a meaningful opportunity to expose the bias, motive, and interest of those witnesses. *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) ("[T]he partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony.").

The Supreme Court has held that evidence of a witness's bias is "almost always relevant" and that its exclusion may violate the Confrontation Clause when the witness's testimony is critical to the case. *United States v. Abel*, 469 U.S. 45, 52 (1984).

Although trial courts have broad discretion to limit cross-examination to prevent harassment, confusion, or marginally relevant inquiries, such discretion is not unlimited. Restrictions that prevent the jury from receiving a "reasonably complete picture" of a witness's credibility and potential biases violate the Confrontation Clause. *Burr v. Sullivan*, 618 F.2d 583 (1980), § 4.10 Bias, Interest, and Hostility, *Gibbs v. Covello*, 996 F.3d 596 (2021).

Agent Beals is the government's primary investigator, the author and co-author of the Origin and Cause Report, and a central witness at trial. His prior investigation and the acquittal in the Mays case are directly probative of: (1) his institutional motivation to reach an arson conclusion regardless of the evidence; (2) his awareness that the same type of thin evidentiary profile was rejected by a prior court; and (3) his potential motive to attribute this fire to an individual — and deflect institutional liability — in a manner consistent with his prior conduct. These are paradigmatic bases for cross-examination under both Rule 613 and the Confrontation Clause.

Exclusion of this evidence would deprive Mr. Rinderknecht of his constitutional right to expose Agent Beals' bias and motive to the jury. In a prosecution premised entirely on the investigative conclusions of a single lead

13

MOTION IN LIMINE

ATF agent — in the absence of any direct evidence of arson — this right is not merely important; it is the cornerstone of the defense.

**D. The Evidence Satisfies the Rule 403 Balancing Test**

Even where evidence is admissible under Rule 404(b) and the Confrontation Clause, Rule 403 requires exclusion only if the probative value is *substantially* outweighed by the danger of unfair prejudice.  The Ninth Circuit employs a balancing test under Rule 403, asking whether the probative value of evidence is "substantially outweighed" by the danger of unfair prejudice. *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007).

First, the probative value is exceptionally high. This evidence goes directly to the credibility of the government's key witness and the reliability of the investigative conclusions that constitute the entirety of the government's case.

Second, there is no meaningful "unfair" prejudice to the government. The evidence does not invite the jury to convict or acquit Mr. Rinderknecht based on emotion or character; it invites the jury to evaluate the reliability of the investigation conducted by Agent Beals — which is precisely the kind of rational, probative inquiry that trials are designed to facilitate. Any prejudice to the government is the prejudice of accurate impeachment, which is never "unfair" within the meaning of Rule 403.

Third, there is no material risk of confusion of the issues or misleading the jury. The structural parallels between the two investigations are clear and comprehensible, and the Court may provide a limiting instruction if it deems one appropriate.

**E. The Defense Has Satisfied Its Pretrial Notice Obligations Under Rule 404(b)**

Federal Rule of Evidence 404(b)(3) requires a defendant who intends to use Rule 404(b) evidence to "provide reasonable notice of the general nature of any such evidence" before trial. The defense provided formal written notice to the

MOTION IN LIMINE

United States Attorney's Office, Central District of California, by letter dated February 12, 2026, addressed to AUSA Mark Williams, Chief of Environmental Crimes and Consumer Protection Services, disclosing the defense's intent to introduce evidence of Agent Beals' prior involvement in the Mays/USS *Bonhomme Richard* prosecution. This notice satisfies Rule 404(b)(3). The government has been on notice of this issue since at least that date and cannot claim surprise or prejudice.

The defense's written notice dated February 12, 2026, disclosing its intent to introduce evidence of Agent Beals' prior involvement in the Mays/USS Bonhomme Richard prosecution, does not fall under the pretrial notice requirements of Rule 404(b)(3), as those requirements are directed at the prosecution. However, the admissibility of such evidence would still be subject to the general evidentiary rules, including Rule 404(b)(2), which permits evidence of other acts for non-propensity purposes, and Rule 403, which allows the court to exclude evidence if its probative value is substantially outweighed by the risk of unfair prejudice, confusion, or other concerns.  USCS Fed Rules Evid R 404, *United States v. Urias Espinoza*, 880 F.3d 506 (2018), USCS Fed Rules Evid R 403, *United States v. Romero*, 282 F.3d 683 (2002).

## IV. CONCLUSION

The evidence of ATF Special Agent Matthew Beals' prior role as lead investigator in the USS *Bonhomme Richard* arson investigation and prosecution of Ryan Mays — which resulted in Mays' acquittal following an eight-month investigation employing the same methodology, the same open-flame theory, the same absence of direct evidence, and the same motive narrative deployed against Jonathan Rinderknecht — is among the most relevant and probative evidence in this case. It speaks directly to the credibility, bias, methodology, and institutional motivation of the government's central witness. It goes to the very core of whether the jury should credit Agent Beals' investigative conclusions or view them as the

MOTION IN LIMINE

product of the same pattern of overreach that a prior court rejected.

The evidence is admissible under Federal Rules of Evidence 404(b)(2), 608(b), and 613, and its exclusion would violate Mr. Rinderknecht's rights under the Sixth Amendment's Confrontation Clause. It easily passes the Rule 403 balancing test.

The defense respectfully requests that this Court grant this Motion in Limine in its entirety and enter an order permitting the defense to introduce evidence of and cross-examine Agent Beals regarding his prior role in the USS *Bonhomme Richard* investigation and the Mays prosecution, including the acquittal, the basis for Beals' conclusions, and the subsequent Navy investigation that attributed blame to institutional command failures.

Respectfully submitted,

/s/ Steven A. Haney
Steven A. Haney (Pro Hac Vice)
Counsel for Defendant
22815 Kelly Road
Eastpointe, Michigan 48021
(248) 414-1470

16