TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental Crimes & Consumer Protection Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
DANBEE C. KIM (Cal. Bar No. 350014)
Assistant United States Attorneys
Environmental Crimes & Consumer Protection Section
1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3359/8644/6530
    Email:      mark.williams@usdoj.gov
                matthew.o'brien@usdoj.gov
                danbee.kim2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN RINDERKNECHT,<br>  aka "Jonathan Rinder,"<br>  aka "Jon Rinder,"<br><br>Defendant. | No. CR 25-833-AH<br><br>GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY; DECLARATION OF MARK A. WILLIAMS; EXHIBITS<br><br>Hearing Date:  May 13, 2026<br>Hearing Time:  10:00 a.m.<br>Location:       Courtroom of the<br>                Hon. Anne Hwang |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Mark A. Williams, Matthew W. O'Brien, and Danbee C. Kim, hereby files this motion in limine to exclude the proposed testimony of Neil Broom, and portions of the proposed testimony of Edward Nordskog and Thomas Guzman, pursuant to Rule 16 of the Federal Rules of Criminal Procedure and Rules 402, 403, 702, and 704 of the Federal Rules of Evidence.

In February 2026, and again on April 7, 2026, the parties met and conferred regarding this motion and the underlying issues. Defense counsel informed the undersigned counsel that defendant opposes this motion.

This Motion is based upon the attached memorandum of points and authorities, the declaration of Mark A. Williams and attached exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 8, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

/s/
MARK A. WILLIAMS
MATTHEW W. O'BRIEN
DANBEE C. KIM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. PORTIONS OF THE PROPOSED EXPERT TESTIMONY SHOULD BE
   EXCLUDED ........................................................................................................3

    A.    Legal Framework ........................................................................................3

    B.    Broom's Testimony Should Be Excluded Altogether Because the
        Defense's Expert Notice Fails to Meet Rule 16's Requirements .................4

    C.    Expert Testimony Regarding the LAFD's Response to Defendant's
        Arson Is Inadmissible ................................................................................5

        1.    Nordskog Is Not Qualified to Opine About the LAFD's
            Response ...........................................................................................5

        2.    Nordskog's Proposed Testimony Is Unreliable and Irrelevant,
            and Will Confuse and Mislead the Jury.............................................7

        3.    Guzman's Critique of the LAFD Is Inadmissible for the Same
            Reasons ............................................................................................9

    D.    The Majority of Nordskog's Remaining Proposed Testimony is
        Inadmissible ...............................................................................................9

        1.    Nordskog May Not Testify Regarding Defendant's Mental
            State or Culpability for the Charged Crimes ...................................10

        2.    Nordskog's Opinions About Defendant's Recorded Statements
            Are Inadmissible .............................................................................10

        3.    Nordskog's Opinions Regarding Origin-and-Cause Should Be
            Excluded as Cumulative of Guzman's Opinions...............................11

III. CONCLUSION.................................................................................................14

## TABLE OF AUTHORITIES

<u>DESCRIPTION</u>                                                                                          <u>PAGE</u>

**Cases**

<u>Cooper v. Brown</u>,
    510 F.3d 870 (9th Cir. 2007) ................................................................................. 4

<u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>,
    509 U.S. 579 (1993) ................................................................................. passim

<u>Kumho Tire Co., Ltd. v. Carmichael</u>,
    526 U.S. 137 (1999) ................................................................................. 4

<u>Lust v. Merrell Dow Pharmaceuticals, Inc.</u>,
    89 F.3d 594 (9th Cir. 1996) ................................................................................. 3

<u>United States v. Amaral</u>,
    488 F.2d 1148, 1152 (9th Cir. 1973) ................................................................. 3

<u>United States v. Garcia</u>,
    793 F.3d 1194, 1213 (10th Cir. 2015) ................................................................. 8

<u>United States v. Spangler</u>,
    810 F.3d 702 (9th Cir. 2016) ................................................................................. 3

**Other**

Fed. R. Evid. 402 ................................................................................................ 3, 10

Fed. R. Evid. 403 ............................................................................................. passim

Fed. R. Evid. 702 ............................................................................................. passim

Federal Rule of Criminal Procedure 16 ....................................................... 1, 4, 5

Federal Rule of Evidence 704 ......................................................................... 2, 10

Rule 104 ................................................................................................................. 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

In November 2025, the parties agreed, and the Court ordered, that the parties would exchange their expert disclosures no later than February 4, 2026.  (Dkt. 26 at 2:16-17.)  On February 4, 2026, defendant disclosed to the government that he intended to call three experts – Neil Broom, Edward Nordskog, and Thomas Guzman – but the disclosures provided only a single sentence describing each witness's expected testimony (the same sentence was used for Guzman and Nordskog).  (See Exh. A.) None of the experts signed the disclosures, which also failed to list all the cases in which the experts testified.  (See id.)  The government notified the defense of these deficiencies that same day.  (See Exh. B.)[1]

Although defendant supplemented his disclosures for Nordskog and Guzman, he has provided only one supplemental sentence describing Broom's anticipated testimony:

> It is anticipated that after a complete review of the discovery, the expert will testify as to the efficacy, accuracy and science of geo location data analysis that is being offered in this case against the defense, placing Defendant in a specific isolated location at the location of the January 1st, 2025 fire.

(Exh. C at 55.)  Because this "disclosure" fails to disclose any of Broom's expert opinions, how he formed those opinions, or what his expert analysis entailed – and thus fails to comply with the basic requirements of Rule 16(b)(1)(C)(iii) – Broom's testimony should be excluded.

The supplemental disclosures for Nordskog and Guzman were more substantive, but they remain flawed in several respects.  First, both Nordskog and Guzman improperly seek to offer their opinions about the response of the Los Angeles Fire Department ("LAFD") to the Lachman Fire.  The irrelevance of such testimony is outlined in a separate, concurrently filed motion in limine.  But even if the Court were to

---

[1] For ease of reference, the government added sequential page numbers to the defense's expert disclosures in Exhibits A, C, D, and E (and redacted the non-sequential page numbers to avoid confusion).  All references in this motion are to the new page numbers.

deny that motion, the proposed expert testimony should still be excluded for several additional reasons:

- Nordskog, a retired arson detective with the Los Angeles County Sheriff's Department, has no firefighting expertise whatsoever, rendering him unqualified to offer his opinions about the LAFD's response.

- Nordskog's salacious opinions about the LAFD's response are not grounded in any reliable principles or methods.

- While Guzman, unlike Nordskog, has firefighting expertise, his opinions about the LAFD's response also are not grounded in any reliable principles or methods.

- The defense intends to have Nordskog and Guzman testify as to the same issues, rendering their testimony cumulative.

Second, in addition to Nordskog's flawed opinions about the LAFD, many of his other opinions are improper as well. In contravention of Rule 704, Nordskog seeks to testify as to defendant's mental state and culpability. And the defense wants Nordskog to testify as to his opinion about the validity of defendant's recorded statements, a transparent attempt to "backdoor" defendant's testimony through an expert. Finally, as with Nordskog's proposed testimony about the LAFD, his proposed testimony about the origin and cause of the fire is duplicative of, and cumulative to, Guzman's proposed testimony.

The government respectfully requests that the Court: (1) exclude Broom's testimony based on the inadequate expert disclosure; (2) exclude Nordskog and Guzman from testifying regarding the LAFD's response to the fire; and (3) exclude other portions of Nordskog's proposed testimony because he is unqualified to render certain opinions, his opinions are irrelevant and unreliable under Rule 702 and Daubert, and his opinions are unfairly prejudicial, misleading, and cumulative under Rule 403.

2

## II.   PORTIONS OF THE PROPOSED EXPERT TESTIMONY SHOULD BE EXCLUDED

### A.   Legal Framework

Under Rule 702, the proponent of expert testimony must demonstrate four things: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702; Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th Cir. 1996) ("[I]t is the proponent of the expert who has the burden of proving admissibility").

Expert testimony may be objectionable where it is irrelevant, unduly prejudicial, or unnecessarily confuses or misleads the jury.  See Fed. R. Evid. 402, 403; United States v. Spangler, 810 F.3d 702, 707 n.3 (9th Cir. 2016) (relevance is "folded into the Daubert standard under Federal Rule of Evidence 702").  Regardless of the relevance of the proffered expert testimony, a court can also exclude it if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 595 (1993) (quoting Fed. R. Evid. 403).  Because expert testimony carries the "aura of special reliability and trustworthiness," it raises a substantial danger of undue prejudice and confusion of the issues so courts must pay particular attention in assessing its admissibility.  See United States v. Amaral, 488 F.2d 1148, 1152 (9th Cir. 1973).

The "trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.  This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  Daubert, 509 U.S. at 592-93.  "The trial court acts as a 'gatekeeper' to exclude

3

expert testimony that does not meet the relevancy and reliability threshold requirements." Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007) (construing Daubert and Rule 702). The "gatekeeping" principles of Daubert apply equally to all proffered expert testimony under Rule 702 as they do to scientific testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999); see also Fed. R. Evid. 702, Advisory Comm. Notes ("the amendment [to Rule 702] does not distinguish between scientific and other forms of expert testimony. The trial court's gatekeeping function applies to testimony by any expert.").

Daubert articulated a two-step guide for district courts to follow in executing their gatekeeping function: first, the trial court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue"; and second, the court must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. Daubert, 509 U.S. at 592-95.

**B.      Broom's Testimony Should Be Excluded Altogether Because the Defense's Expert Notice Fails to Meet Rule 16's Requirements**

Federal Rule of Criminal Procedure 16(b)(1)(C)(iii) requires defendant's expert notice to contain a "complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" and "the bases and reasons for them." Fed. R. Crim. Pro. 16(b)(1)(C)(iii) (emphasis added).

Here, the defense's February 4th expert notice contains a one-sentence "summary" of Broom's testimony:

> The expert will testify as to the efficacy, accuracy and inexact science of geo location data analysis, Time Data Analysis and other cellular extractions, utilized for the purposes of evidence in the subject case against the Defendant.

4

(Exh. A at 4.)  After the government notified the defense about the inadequacies of the Broom disclosure (see Exh. B), the defense issued a supplemental disclosure on February 10, 2026, that similarly failed to identify any of Broom's opinions:

> It is anticipated that after a complete review of the discovery, the expert will testify as to the efficacy, accuracy and science of geo location data analysis that is being offered in this case against the defense, placing Defendant in a specific isolated location at the location of the January 1st, 2025 fire.

(Exh. C at 55.)

These two sentences are the opposite of the "complete statement of all opinions" required by Rule 16.  They contain no opinions, conclusions, or analysis whatsoever.  No expert report was provided detailing Broom's opinions and analysis.  There is also no explanation for how Broom arrived at this "summary" of his opinion, no description of the testing and/or methodologies he used in forming the unspecified opinions, and only a broad reference to "discovery" as the basis for the undisclosed opinions.  Given the defense's failure to comply with the expert disclosure deadline it stipulated to last year, Broom's testimony should be excluded.

## C.    Expert Testimony Regarding the LAFD's Response to Defendant's Arson Is Inadmissible

In a concurrently filed motion in limine, the government moves the Court to exclude testimony and argument related to the LAFD's response to the Lachman Fire. The government's arguments in that motion are incorporated by reference herein.  Expert testimony on this issue should also be barred for several additional reasons.

### 1.    Nordskog Is Not Qualified to Opine About the LAFD's Response

Expert testimony is only admissible from a witness "who is qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Nordskog was a detective with the Los Angeles County Sheriff's Department Arson and Explosives Detail from 1997 until he retired in 2019.  Prior to that he was an undercover detective, plain clothes detective, and jail deputy.  (Exh. A at 9.)  Nordskog was never a

firefighter.  He has no training, experience, or other qualifications in fire suppression techniques for brushfires or wildland fires.

Notwithstanding the fact that Nordskog has never worked a day as a firefighter, his supplemental report is full of sensational statements about the LAFD's fire suppression efforts:

- "A fire with the characteristics of the Lachman Fire would typically be monitored for four or more days."  (Exh. D at 1.)
- "[F]ire officials' decision to leave and abandon a still smoldering Lachman burn scar was grossly negligent and allowed the entirely preventable Palisades Fire to occur."  (Id.)
- "Any reasonable fire department, knowing that its personnel had reported persistent hot spots and that civilians were reporting smoke days later, would have established ongoing monitoring and mitigation of the fireground.  The LAFD did nothing."  (Id.)
- "The Palisades Fire was the consequence of the LAFD's extraordinary and documented negligence during the six-day period between the two fires."  (Id. at 2.)
- "The LAFD had six days, multiple warnings, and every tool at its disposal.  It failed at every turn."  (Id.)
- "The Palisades Fire was not inevitable.  It was preventable.  And the entity that failed to prevent it was the Los Angeles Fire Department."  (Id.)
- LAFD "[s]ystematically concealed these failures from the public and investigators."  (Id.)
- "The government's case against Jonathan Rinderknecht depends on establishing that the Palisades Fire was the natural and probable consequence of the Lachman Fire.  **The evidence set forth above demonstrates that it was not.**"  (Id. (emphasis in original).)

6

Even if these conclusory statements somehow qualify as expert opinions (they do not), Nordskog is unqualified to testify about these topics given his lack of training and experience as a firefighter. As such, Nordskog's speculative opinions regarding the LAFD's response should be excluded on this basis alone.

2.    Nordskog's Proposed Testimony Is Unreliable and Irrelevant, and Will Confuse and Mislead the Jury

Not only is Nordskog unqualified to render opinions regarding the LAFD's response to the Lachman Fire, but his opinions about the LAFD are also unreliable, irrelevant, and scientifically invalid, and will be confusing and misleading to the jury.

In addition to the unfounded "opinions" set forth above, Nordskog makes other statements that are inadmissible because they are not the product of any application of reliable principles and methods. For example, after leveling allegations against the LAFD related to the Lachman Fire, Nordskog proceeds to attack the federal and state response to the Palisades Fire:

- "Based on the fact that these fires were the single-most destructive fire event in Southern California history, it was necessary to spend the funds or utilize 'mutual aid'…Clearly, all available resources were not used in this case." (Exh. C at 5.)

He also questions law enforcement observations in connection with the federal criminal investigation:

- "Perhaps the most absurd entry in the ATF reports is an investigator, obviously relying on antiquated interrogation techniques commenting on JR's [the defendant's] carotid artery pulsing as he's being questioned by Federal agents. This reaction seems pretty normal for anyone who has never committed a crime, when confronted by the Feds…" (Id. at 12.)

These statements (and the hyperbolic statements listed above) are inadmissible for a number of reasons. First, Nordskog's statements are not expert opinions – they are salacious statements designed to distract the jury from defendant's own criminal

7

liability.[2]  Calling the Palisades Fire "entirely preventable" and claiming that the LAFD "failed at every turn" – vast overstatements unsupported by any evidence or analysis – would not help the jury "determine a fact in issue."  See Daubert, 509 U.S. at 591.  These statements also violate Rule 403 given the obvious "danger of unfair prejudice [and] confusion of the issues" if Nordskog were permitted to testify regarding his irrelevant and inflammatory opinions.

Second, Nordskog appears to be simply repeating public reporting regarding the LAFD instead of engaging in any expert analysis of his own.  For example, Nordskog's claim that LAFD "[s]ystematically concealed [its] failures from the public" appears to be based on media reports because no source or other data is cited.  This is improper.  Courts have emphasized that "[w]e have repeatedly cautioned about the impropriety of permitting an 'expert' witness to 'parrot[]' testimonial hearsay," and have also warned that an expert should not become "little more than a backdoor conduit for an otherwise inadmissible statement."  United States v. Garcia, 793 F.3d 1194, 1213 (10th Cir. 2015).

Third, Nordskog's allegations do not satisfy the first step of the Daubert analysis because there is no "reasoning or methodology underlying the testimony," much less anything that "properly can be applied to the facts in issue."  Daubert, 509 U.S. at 592-93.  Nordskog's "opinions" in this area are totally unsupported by any thorough reasoning or methodology at all.  Indeed, it would be impossible to apply a reliable test to determine if someone was "grossly negligent," as Nordskog claims without any analysis, so his opinions are necessarily inadmissible.

Finally, Nordskog's sweeping conclusory statements fail the second Daubert step because they are irrelevant and are not designed to aid the jury.  They would instead confuse and mislead the jury, distract from the actual evidence of defendant's criminal liability, and have no place in a federal criminal trial.

---

[2] Defense counsel has also made similar statements to the media attacking the LAFD, which are summarized in the government's motion in limine to exclude that evidence.

### 3. Guzman's Critique of the LAFD Is Inadmissible for the Same Reasons

Guzman's conclusory allegations against the LAFD are inadmissible because they are not supported by any analysis or the application of reliable principles and methods under Rule 702. For example, Guzman claims that "[g]overnment representatives left the Lachman Fire unattended days before a foreseeable hazardous event, which allowed the fire to escape control." (Exh. E at 13.) Guzman then lists what "The Los Angeles Times reported" as a basis for his opinion, and includes "The Los Angeles Times" as part of the "data" he considered in rendering this opinion. (Id.) Guzman also parrots and adopts other hearsay opinions as his own without explanation: "[t]he fire captain who responded to the Lachman Fire on January 1, 2025, concluded the fire was caused by fireworks." (Id. at 7.)

As with Nordskog's claims, there was no reliable application of scientific principles whatsoever to support these opinions. Guzman fails to explain how the LAFD "allowed the fire to escape control" after they last inspected the scene on January 3, 2025. Nor could he – there were no reports of smoke or fire for the LAFD to respond to on January 4, 5, or 6. Citing to the Los Angeles Times as the first piece of "Data Considered" also undermines the validity of Guzman's claims. These conclusory opinions fail to meet the standards set forth in Rule 702 and Daubert, making them inadmissible.

**D.   The Majority of Nordskog's Remaining Proposed Testimony is Inadmissible**

The defense seeks to have Nordskog testify as an expert on a vast range of topics: fire origin and cause analysis; smoking and fireworks as causes of fires; wildland fires; firefighting techniques; fire scene analysis; fire patterns; fire dynamics; arson; intent and motive in arson cases; profiling and behavioral analysis of arson suspects; investigative psychology; the LAFD's response to the Lachman and Palisades Fire; and other related

areas.  The majority of Nordskog's proposed testimony is inadmissible under Federal Rules of Evidence 402, 403, 702, 704, and Daubert.

        1.     Nordskog May Not Testify Regarding Defendant's Mental State or Culpability for the Charged Crimes

Federal Rule of Evidence 704 makes clear that "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone."

Nordskog's reports are replete with opinions that violate Rule 704.  For example:

- "There is **not one shred of physical evidence that supports this finding**" of arson.  (Exh. C at 10 (emphasis in original).)
- "[T]here is no evidence to apply intent or motive to this event."  (Id.)
- "There is not sufficient data in this case to determine who started the fire…."  (Id.)
- "The LAFD certainly did not believe that Lachman was an arson fire…."  (Id.)
- "None of it indicates he is an arsonist."  (Id. at 12.)
- "JR's arrest is nothing more than an attempt to obscure the failures of the LAFD and pin the whole thing on a person who was in the area at the time of the event."  (Id. at 13.)

All of these opinions violate Rule 704, especially the report's final sentence: "There is no evidence of arson within this case." (Id. (emphasis added).)  The defense is attempting to provide the jury with opinions regarding "ultimate issues," elements, and factual matters that the jury alone must resolve.  This evidence violates the basic evidentiary rule set forth in Rule 704 and must therefore be excluded from trial.

        2.     Nordskog's Opinions About Defendant's Recorded Statements Are Inadmissible

For similar reasons, Nordskog also should not be permitted to testify regarding his opinions about recorded statements that defendant made to law enforcement agents.  For example, although defendant said in a recorded interview that he did not hear fireworks

in the origin area of the Lachman Fire, Nordskog opines that "[t]his is not a reliable statement in that based on his other statements, JR was likely wearing ear buds, or something similar while listening to music on the hill." (Exh. C at 9.) There is no evidence that defendant was wearing "ear buds, or something similar" when he started the Lachman Fire, so this opinion is inadmissible for that reason alone.

This appears to be another attempt by defense counsel to "backdoor" findings of fact reserved for the jury through his experts. Nordskog's speculations about defendant's conduct, and Nordskog's belief that defendant's admission during a recorded interview is "not a reliable statement," are irrelevant and would mislead the jury. While defendant is free to take the stand and testify about his conduct and statements, Nordskog cannot present defense arguments under the guise of expert testimony.

### 3. Nordskog's Opinions Regarding Origin-and-Cause Should Be Excluded as Cumulative of Guzman's Opinions

In addition to providing unfounded, irrelevant opinions and impermissible legal conclusions, Nordskog's reports parrot a number of Guzman's opinions without providing any meaningful analysis to distinguish them, thus making them cumulative under Rule 403.

Defendant's February 4th expert disclosure makes clear that Nordskog and Guzman will be testifying about the exact same subject matter:

| Guzman | Nordskog |
| --- | --- |
| "The expert will testify regarding the accuracy and procedural efficacy of the Origin and Cause Report, arson profiling by the Government with respect to the Defendant, and the post-action(s) gross negligence of the fire department agencies | "The expert will testify regarding the accuracy and procedural efficacy of the Origin and Cause Report, arson profiling by the Government with respect to the Defendant, and the post-action(s) gross negligence of the fire department agencies |

11

| | |
|---|---|
| subsequent to the January 1st, 2025 Lachman Fire." | subsequent to the January 1st, 2025 Lachman Fire." |

(Exh. A at 2-3.)

The defense's supplemental expert disclosures confirm that Nordskog will be repeating Guzman's opinions in several areas.  For example:

| Guzman | Nordskog |
|---|---|
| "[T]here is substantial evidence to obligate the inclusion of fireworks as a possible cause of the Lachman Fire in the August 9 Report."<br>"The most likely cause of the fire is fireworks."<br>(Exh. E at 7-8.) | "[I]nvestigators did not come close to eliminating fireworks as a 'cause' for this fire, when in fact it is the single most likely cause for this event."<br>(Exh. C at 9.) |
| "Smoking" was "improperly excluded" as a possible cause.<br>(Exh. E at 8.) | "[C]igarettes in this case remain a 'possible cause…'"<br>(Exh. C at 10.) |
| ATF's cigarette testing was "invalid" because it "did not account for the vertical component of fuels.  Vertical fuels may suspend a cigarette, possibly increasing airflow, or cause it to land vertically in the fuel bed."<br>(Exh. E at 12.) | ATF's cigarette testing was "somewhat flawed" "in that most seasoned wildland investigators recognize that it is much easier to ignite wildland fires by cigarettes in 'suspended fuels…'"<br>(Exh. C at 10.) |

12

| Guzman | Nordskog |
|---|---|
| The Lachman Fire origin area identified by ATF experts "is inconsistent with fire pattern indicators and actions by investigators." (Exh. E at 13.) | Regarding the Lachman Fire origin area identified by ATF experts, "it would be nearly impossible to come up with an accurate origin for this fire based on the fire pattern indicators." (Exh. C at 6.) |
| "The cause of the January 1, 2025, Lachman Fire should be Undetermined." (Exh. E at 8.) | "[I]nvestigators are mandated to classify the cause of the Lachman Fire as Undetermined." (Exh. C at 10.) |
| "A fire with the characteristics of the Lachman Fire would typically be grid searched for four or more days following containment…" (Exh. E at 11.) | "A fire with the characteristics of the Lachman Fire would typically be monitored for four or more days following containment…" (Exh. D at 1.) |
| "Government representatives left the Lachman Fire unattended days before a foreseeable hazardous event, which allowed the fire to escape control." (Exh. E at 13.) | "Extreme or unusual impending weather conditions…would increase fire detection and mitigation measures.  Numerous protocols should have been followed…" "Any reasonable fire department, knowing that its personnel had reported persistent hot spots and that civilians were reporting smoke days later, would have established ongoing monitoring and mitigation of the fireground.  The LAFD did nothing." (Exh. D at 1.) |

13

Rule 403 provides that otherwise relevant evidence may be excluded where its probative value is substantially outweighed by the danger of "wasting time, or needlessly presenting cumulative evidence." That is the case here. Nordskog's opinions that parrot Guzman's are supported only by a flimsy, cursory analysis of limited information – they would add no new, relevant analysis to the trial. Moreover, as stated above, Nordskog has no firefighting experience and should not be permitted to opine regarding fire suppression efforts. It appears that the defense is using Nordskog's cumulative statements to bolster Guzman's expert testimony (and vice versa). Nordskog's testimony is cumulative of Guzman's and should be excluded.

**III.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court grant this motion in limine to exclude Broom's testimony and portions of the proposed testimony from Nordskog and Guzman.