TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental Crimes & Consumer Protection Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
DANBEE C. KIM (Cal. Bar No. 350014)
Assistant United States Attorneys
Environmental Crimes & Consumer Protection Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3359/8644/6530
    Email:    mark.williams@usdoj.gov
           matthew.o'brien@usdoj.gov
           danbee.kim2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 25-833-AH |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING THE RESPONSE OF THE LOS ANGELES FIRE DEPARTMENT TO THE FIRE DEFENDANT IGNITED; DECLARATION OF MATTHEW O'BRIEN; EXHIBITS |
| v. | |
| JONATHAN RINDERKNECHT,   aka "Jonathan Rinder,"   aka "Jon Rinder," | |
| Defendant. | Hearing Date:  May 13, 2026 Hearing Time:  10:00 a.m. Location:  Courtroom of the Hon. Anne Hwang |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Mark A. Williams, Matthew W. O'Brien, and Danbee C. Kim, hereby moves this Court for an order barring defendant JONATHAN RINDERKNECHT

from introducing any evidence or making any argument at trial regarding the response of the Los Angeles Fire Department to the fire defendant set on January 1, 2025.

On April 7, 2026, the parties met and conferred regarding this motion. Defense counsel informed the undersigned counsel that defendant opposes this motion.

This motion is based upon the attached memorandum of points and authorities, the declaration of Matthew W. O'Brien and the exhibits thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 8, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division


___/s/_____
MARK A. WILLIAMS
MATTHEW W. O'BRIEN
DANBEE C. KIM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................1

II.  FACTUAL BACKGROUND.............................................................................2

     A.   Defendant's Eagerness to Put the LAFD on Trial ........................................2

          1.   Defense Counsel's Public Attacks on the LAFD ...............................2

          2.   Defendant's Expert Disclosures.........................................................3

     B.   The Charges ...................................................................................................4

III. EVIDENCE AND ARGUMENT REGARDING THE LAFD'S
     RESPONSE TO THE FIRE SHOULD BE BARRED.............................................7

     A.   Because Proximate Cause Is Not an Element of Any Count, the
          Concept of Potentially Intervening or Superseding Causes Is
          Irrelevant........................................................................................................8

     B.   Even if Proximate Cause Were Relevant, the LAFD's Response to
          the Fire Cannot Be an Intervening or Superseding Cause Because the
          LAFD Was Responding to Defendant's Conduct.......................................10

     C.   Evidence Regarding the LAFD's Response to the Fire Should Be
          Excluded Under Rule 403 ...........................................................................14

IV.  CONCLUSION................................................................................................16

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                                    PAGE

**Cases**

Brackett v. Peters,
    11 F.3d 78 (7th Cir. 1993) ................................................................. 11, 14

Kusmider v. State,
    688 P.2d 957 (Alaska Ct. App. 1984) ............................................... 11-12

Mendez v. Cnty. of Los Angeles,
    897 F.3d 1067 (9th Cir. 2018) ............................................................ 10, 14

People v. McGee,
    187 P.2d 706 (Cal. 1947) .................................................................... 11, 12

People v. Staake,
    102 N.E.3d 217 (Ill. 2017) .................................................................. 10-11

Tennison v. Circus Circus Enterprises, Inc.,
    244 F.3d 684 (9th Cir. 2001) .............................................................. 15

Togonon v. Garland,
    23 F.4th 876 (9th Cir. 2022) ............................................................... 8

United States v. Abner,
    35 F.3d 251 (6th Cir. 1994) ................................................................ 8

United States v. Blackstone,
    56 F.3d 1143 (9th Cir. 1995) .............................................................. 14

United States v. Funches,
    135 F.3d 1405 (11th Cir. 1998) .......................................................... 15

United States v. Hamilton,
    182 F. Supp. 548 (D.D.C. 1960) ........................................................ 11

United States v. Henderson,
    No. 23-828, 2024 WL 4345300 (9th Cir. Sept. 30, 2024) ................... 15

United States v. Houston,
    406 F.3d 1121 (9th Cir. 2005) ............................................................ 8-9

United States v. Lynch,
    903 F.3d 1061 (9th Cir. 2018) ............................................................ 15

**TABLE OF AUTHORITIES (continued)**

DESCRIPTION                                                                                           PAGE

United States v. Main,
  113 F.3d 1046 (9th Cir. 1997) ............................................................................ 8-9

United States v. Pineda-Doval,
  614 F.3d 1019 (9th Cir. 2010) ........................................................................ 12, 13

United States v. Swallow,
  109 F.3d 656 (10th Cir. 1997) ......................................................................... 11-12

United States v. Thomas,
  116 F.3d 606 (2d Cir. 1997) ................................................................................. 15

Zal v. Steppe,
  968 F.2d 924 (9th Cir. 1992) ........................................................................... 14-15

**Statutes**

18 U.S.C. § 844 ......................................................................................... passim

18 U.S.C. § 1855 ....................................................................................... passim

**Rules**

Fed. R. Evid. 403 .................................................................................... passim

Fed. R. Evid. 401 .......................................................................................... 15

3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The government moves this Court for an order barring defendant JONATHAN RINDERKNECHT ("defendant") from introducing any evidence or making any argument regarding the response of the Los Angeles Fire Department ("LAFD") to the fire defendant ignited on January 1, 2025.  Defendant is charged with starting the Lachman Fire in the early morning hours of January 1, 2025, a fire which dozens of ground-based firefighters and aircraft responded to over the course of three days.[1] Although the Lachman Fire was found to have continued underground and ultimately developed into the Palisades Fire, any alleged negligence of first responders in *responding* to the fire is irrelevant to defendant's criminal liability for *igniting* the fire.

Based on defense counsel's conversations with government counsel, his numerous press conferences and statements to the media, his suppression motions, and his expert notices, it is clear that the defense seeks to blame the LAFD for causing the Palisades Fire.  Blaming first responders to avoid criminal liability is an impermissible attempt at jury nullification.  Turning defendant's arson trial into a mini-trial regarding the LAFD's response to the arson also would substantially lengthen the trial and confuse jurors.

An arsonist cannot blame the fire department for not fully extinguishing a fire that he started.  Defendant is responsible for the consequences of his criminal actions. Accordingly, the government moves in limine to preclude the defense from blaming the LAFD for defendant's own conduct.

---

[1] The government at times refers to the "Lachman Fire" and "Palisades Fire" separately herein for ease of reference.  To be clear, the government considers them to be a single, continuous fire.

## II.    FACTUAL BACKGROUND

### A.    Defendant's Eagerness to Put the LAFD on Trial

#### 1.    Defense Counsel's Public Attacks on the LAFD

From the day he was retained, defense counsel has been promoting the theory that the Palisades Fire was caused by alleged governmental failures in responding to the Lachman Fire, and that the prosecution team indicted defendant as a "scapegoat."  In a press release issued by his office on October 16, 2025, defense counsel proclaimed:

> There were blatant failures by Governmental agencies that were intervening causes between the Lachman and the Palisades Fires . . . . To scapegoat Jonathan Rinderknecht and attempt to hold him criminally liable for the failure of others is preposterous.

(Exh. A at 2.)

And so it began.  Below is a sampling of similar public statements by defense counsel, in which he blames the government for a "misguided" prosecution and blames governmental agencies for the Palisades Fire.

- "They don't have any evidence that [defendant] started the fire, not to mention the rekindling of the Palisades fire that was obviously due to the departmental failures from multiple agencies."  (Exh. B at 7).

- "It's just absolutely mindboggling to me that [the prosecutors are] going to continue to go forward with this case."  (Id.)

- "Blaming it on Jonathan Rinderknecht seems a little bit misguided," Haney told reporters at the time. "It will be heavily litigated what happened during the Lachman fire, why it wasn't put out."  (Exh. C at 5.)

- "If the government says the Palisades was caused by the Lachman fire, then somebody, not my client, had a duty to extinguish that fire."  (Id.)

Defendant's motions to suppress further evidenced his plans to blame the LAFD and others for the Palisades Fire.  Even though the response of the LAFD to the fire was irrelevant to the suppression issue, defense counsel devoted page after page in his motions to cherry-picking misleading statements of firefighters regarding the Lachman

2

Fire.  The defense alleged that the Palisades Fire was "proximately caused by the gross negligence and rampant systemic failures of multiple government agencies, lack of water, and a bone-dry Santa Ynez reservoir [and] became one of the most destructive, and entirely preventable human tragedies, in Los Angeles history."  (Dkt. No. 49 at 4:26-5:1.)  As a result, the defense labelled this prosecution as "[o]ne of the most shameful attempts at deflecting civil and criminal liability in the nation's history."  (Id. at 16:19-20.)

On March 9, 2026, defendant's campaign against the LAFD went even further.  Defense counsel held a press conference on the Court's steps arguing that the government should dismiss this case due to the LAFD's alleged negligence.  (Defendant has not filed a motion to dismiss.)

In sum, defendant openly wants to put the LAFD on trial.  In defense counsel's words, the trial "will be an epic war."  (Exh. B at 2.)  "It's going to be a street fight."  (Id.)

2.    Defendant's Expert Disclosures

Defendant's expert disclosures confirm his desire to put the LAFD on trial.  Ed Nordskog, whom defendant has noticed as an expert on arson investigations, also intends to testify regarding the LAFD's response to the fire.  (Mr. Nordskog has no expertise on the subject of fire-fighting; the government's Daubert challenge to his LAFD-related testimony is submitted in a separately filed motion in limine.)  In February 2026, the defense disclosed a supplemental disclosure for Mr. Nordskog which discusses nothing but the LAFD's response to the Lachman Fire.  (See Exh. D.)  Mr. Nordskog, who also is not an expert on federal arson trials, claimed in his disclosure that the "government's case against Jonathan Rinderknecht depends on establishing that the Palisades Fire was the natural and probable consequence of the Lachman Fire."  (Id. at 2.)  As explained below, that is false.

Defendant noticed a second expert, Thomas Guzman, to testify about the LAFD's response.  Four of Mr. Guzman's disclosed opinions focus on the LAFD's response to

3

the fire.  (See Exh. E at 10 ("Opinion 16: With a four-person fire engine crew, a perimeter check of a fire with the characteristics of the Lachman Fire would typically take 30 to 60 minutes to complete"); id. at 11 ("Opinion 17: With a four-person fire engine crew, a standard grid search for hotspots on a fire with the characteristics of the Lachman Fire would take between several hours and a full day."); id. ("Opinion 18: A fire with characteristics of the Lachman Fire would typically be grid searched for four or more days following containment, with regular perimeter checks continuing for several days after the last grid search, but red flag fire forecasts would increase fire detection measures."); id. at 13 ("Opinion 21: Government representatives left the Lachman Fire unattended days before a foreseeable hazardous event, which allowed the fire to escape control.").

**B.    The Charges**

Defendant's zeal to put the LAFD on trial does not correspond to the actual charges in the indictment.

Count One charges defendant with violating 18 U.S.C. § 844(f)(1) (Destruction of Property by Means of Fire).  Count One addresses the property that burned on January 1, 2025 in the Lachman Fire, and on January 7, 2025 (and thereafter) in the Palisades Fire, where the property was owned by institutions or organizations receiving federal financial assistance.  Count One lists eight categories of property that burned in the fire and were owned by institutions or organizations that received federal funding.  (Dkt. No. 7 at 2.)

Count Two charges defendant with violating 18 U.S.C. § 844(i) (Arson of Property Affecting Interstate Commerce).  Count Two addresses the property that burned on January 1, 2025 in the Lachman Fire, and on January 7, 2025 (and thereafter) in the Palisades Fire, where the property was used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce.  Count Two lists seven categories of property that burned in the fire and were used in interstate commerce or activities affecting interstate commerce.  (Id. at 3.)

4

Count Three charges defendant with violating 18 U.S.C. § 1855 (Timber Set Afire). Count Three alleges that property in the Santa Monica Mountains National Recreation Area burned between January 1 and 31, 2025. (Id. at 4.)

Counts One and Two (the two counts with five-year mandatory minimums) do not hinge on anything that happened after the early morning hours of January 1, 2025, when the Lachman Fire began. These two counts do not turn on whether the Palisades Fire was a holdover fire, or who is to blame for the holdover. While these counts reference damage caused by the Palisades Fire (to establish additional jurisdictional predicates under Sections 844(f)(1) and 844(i)), defendant could be found guilty of Counts One and Two *even if* the Palisades Fire had never happened.

Specifically, Count One alleges, in part, that the institutions and organizations receiving federal financial assistance that owned property damaged by the fire included (1) the Mountains Recreation and Conservation Authority ("MRCA"), which owned the parcel identified by the Los Angeles County Assessor as Assessor Identification Number 4431-023-903 ("Parcel 903"); and (2) the State of California, which owned the parcel identified by the Los Angeles County Assessor as Assessor Identification Number 4431-023-902 ("Parcel "902"). (Dkt. No. 7 at 1-2.)

The Lachman Fire began on Parcel 903 and spread to Parcel 902 before it was contained by the LAFD on the morning of January 1, 2025. Accordingly, defendant can be found guilty of Count One irrespective of what happened after the morning of January 1, 2025. In other words, even if the jury were to find that the Palisades Fire was not a holdover fire, defendant would still be guilty of Count One if the jury finds that he maliciously started the Lachman Fire on January 1, 2025.



*Figure 1: A photo of the burn scar of the Lachman Fire (looking north), as seen later in the day on January 1, 2025. The burned area comprised portions of Parcel 903 (owned by the MCRA) and Parcel 902 (Topanga State Park, owned by the State of California).*

*Figure 2: This satellite image shows the same hillside after the Palisades Fire (the top is north, the bottom is south). The red line shows the outline of the burn scar of the Lachman Fire. The origin area of the Lachman Fire (the yellow dot near the top) was located in Parcel 903. The Lachman Fire spread to the south and east into Parcel 902. The origin area of the Palisades Fire was just to the south of the southern perimeter of the Lachman Fire.*

6

The same holds true for Count Two.  It alleges, in part, that the real property used in interstate commerce that was damaged by the fire included the Santa Monica Mountains National Recreation Area and Topanga State Park.  (Dkt. No. 7 at 3.)  On January 1, 2025, the Lachman Fire burned land that was part of the Santa Monica Mountains National Recreation Area and Topanga State Park.  Hence, even if the jury were to find that the Palisades Fire was not a holdover fire, defendant would still be guilty of Count Two if the jury finds he maliciously started the Lachman Fire.

Count Three is slightly different from a jurisdictional standpoint, but does not necessarily hinge on proof of a holdover fire.  Count Three alleges that defendant intentionally set fire to property owned by the United States (which burned on January 7, 2025 or thereafter), as well as property "under the partial, concurrent, or exclusive jurisdiction of the United States, within the Santa Monica Mountains National Recreation Area" (which the government alleges burned on January 1, 2025).  (Id. at 4.)  Unlike Counts One and Two, which each have a five-year minimum and twenty-year maximum sentence, Count Three has no mandatory minimum and has a five-year maximum sentence.  See 18 U.S.C. 1855.

### III.    EVIDENCE AND ARGUMENT REGARDING THE LAFD'S RESPONSE TO THE FIRE SHOULD BE BARRED

Evidence and argument regarding the LAFD's response to the fires should be barred for three independent reasons.  First, because none of the three counts requires the government to prove proximate cause, the tort concept of intervening or superseding causation is inapplicable here, rendering the LAFD's response to the fire irrelevant to defendant's criminal liability as a matter of law.  Second, even if the government were required to prove proximate causation (it is not), the LAFD's response to the fire cannot be an intervening or superseding cause because the LAFD's alleged negligence occurred in response to defendant's conduct, rendering the concept of intervening or superseding cause inapplicable as a matter of law.  Third, even if the LAFD's response to the fire were somehow relevant to defendant's criminal liability (it is not), evidence and

argument regarding the LAFD's response should be excluded under Rule 403 because it would be unfairly prejudicial, confuse the jury, and waste a tremendous amount of time at trial.

**A.      Because Proximate Cause Is Not an Element of Any Count, the Concept of Potentially Intervening or Superseding Causes Is Irrelevant**

The government does not have to prove proximate cause in this case.  Count One only requires the government to prove that: (1) defendant maliciously damaged or destroyed by means of fire; (2) a building, vehicle, or other real or personal property; and (3) the building, vehicle, or other real or personal property was, in whole or in part, owned or possessed by, or leased to, the United States or any institution or organization receiving federal financial assistance. See 18 U.S.C. § 844(f)(1); Togonon v. Garland, 23 F.4th 876, 878 (9th Cir. 2022);

Count Two has very similar elements, again with no proximate cause requirement. Count Two requires the government to prove that: (1) defendant maliciously damaged or destroyed by means of fire; (2) a building, vehicle, or other real or personal property; and (3) the building, vehicle, or other real or personal property was in interstate or foreign commerce, or in any activity affecting interstate or foreign commerce.  See 18 U.S.C. § 844(i); Togonon, 23 F.4th at 878.

Likewise, Count Three lacks a proximate cause element.  Count Three requires the government to prove that: (1) defendant willfully and without authority set on fire; (2) any timber, underbrush, grass, or other inflammable material; and (3) the timber, underbrush, grass, or other inflammable material was upon the public domain or upon any lands owned or leased by, or under the partial, concurrent, or exclusive jurisdiction of, the United States.  See 18 U.S.C. § 1855; United States v. Abner, 35 F.3d 251 (6th Cir. 1994).

Thus, proximate cause is not an element of any of the three crimes.  See United States v. Houston, 406 F.3d 1121, 1123 (9th Cir. 2005) (observing that "[p]roximate cause is not a necessary element of every crime" and distinguishing United States v.

Main, 113 F.3d 1046 (9th Cir. 1997), and other precedents, because "Main's holding does not extend to cases, such as this one, where foreseeability is not 'implicit in the common understanding of the crime' being prosecuted") (quoting Main, 113 F.3d at 1050). Unlike in the contexts of involuntary manslaughter or conspiracy, which "impose criminal culpability only when the consequences of the criminal act are reasonably foreseeable," Houston, 406 F.3d at 1123 (citing cases), here foreseeability is neither expressly nor implicitly a component of the charged offenses because (as explained below) the government has not alleged that any deaths or injuries resulted from defendant's arson.

The text and structure of 18 U.S.C. § 844 confirm that proximate cause is not an element of Counts One and Two. Sections 844(f)(2), 844(f)(3), and 844(i) each contain sentencing enhancements if the arson was the "direct or proximate cause" of an injury (raising the mandatory minimum to seven years, and the statutory maximum to 40 years) or a death (raising the mandatory minimum to 20 years, and the statutory maximum to life imprisonment or the death penalty). 18 U.S.C. §§ 844(f)(2), 844(f)(3), 844(i). So Congress clearly contemplated the causation thresholds when drafting Sections 844(f) and 844(i). But Congress omitted the "direct or proximate cause" requirement from the statutory provisions setting forth the elements of the offenses where no injury or death is alleged to have resulted from the arson. In this context, the mandatory minimum is five years and the statutory maximum is 20 years. See 18 U.S.C. §§ 844(f)(1), 844(i).

Here, the indictment does not allege that defendant caused any injury or death. Thus, the "direct or proximate cause" provisions in Sections 844(f)(2), 844(f)(3), and 844(i) do not apply here. As a result, the government does not have the burden to prove proximate causation.

Because proximate cause is not an element of any of the three counts, the LAFD's response to the fire cannot possibly be relevant to cut off defendant's criminal liability (as it might be in a civil case alleging that defendant was negligent). Whether or not the LAFD's response to the fire was sufficient or inadequate has nothing to do with

defendant's culpability for *starting* the fire.  As explained below, defendant cannot rely on tort concepts such as intervening or superseding causation as a defense in a criminal case; that is especially true where – as here – proximate cause is not an element of the charged offenses.

> **B.    Even if Proximate Cause Were Relevant, the LAFD's Response to the Fire Cannot Be an Intervening or Superseding Cause Because the LAFD Was Responding to Defendant's Conduct**

Even if, despite the foregoing, the Court were to require the government to prove proximate cause – a ruling that would be unprecedented – the LAFD's response to defendant's criminal conduct would still be irrelevant.

"The proximate cause question asks whether the unlawful conduct is closely enough tied to the injury that it makes sense to hold the defendant legally responsible for the injury." Mendez v. Cnty. of Los Angeles, 897 F.3d 1067, 1076 (9th Cir. 2018) (citing W. Page Keeton et al., Prosser and Keeton on Torts § 42 (5th ed. 1984)). "Generally, '[t]o prove proximate cause, the government must establish that the harm was a foreseeable result of the conduct.'" United States v. Pineda-Doval, 614 F.3d 1019, 1028 (9th Cir. 2010) (quoting United States v. Hanousek, 176 F.3d 1116, 1123 (9th Cir. 1999)).

The chain of proximate cause, however, may be broken by a superseding or intervening cause.  "A superseding or intervening cause involves a shifting of responsibility away from a party who would otherwise have been responsible for the harm that occurs." Mendez, 897 F.3d at 1081 (citing W. Page Keeton et al., Prosser and Keeton on Torts § 44 (5th ed. 1984)).

But "[u]nder basic tort principles" – which, to be clear, are inapplicable in this criminal case – something is a superseding cause only if it is 'a later cause of independent origin that was not foreseeable.'" Mendez, 897 F.3d at 1081 (quoting Exxon Co. v. Sofec, 517 U.S. 830, 837 (1996)) (emphasis added).  This means that "[t]o relieve a defendant from criminal liability, an intervening cause or a supervening act

must be 'completely unrelated' and 'disconnected' from any act of the defendant." People v. Staake, 102 N.E.3d 217, 229 (Ill. 2017). Imagine, for example, an assault victim who was transferred to a nursing home to recover from her injuries and killed by a fire in the nursing home. See Brackett v. Peters, 11 F.3d 78, 79 (7th Cir. 1993) (Posner, J.). "She would not have been in the nursing home (in all likelihood), so would not have been killed, but for [the] assault. But as there would have been no greater danger of fire in a nursing home than in her own home, in our hypothetical case the assault would not have placed her in a situation of danger and therefore would not be considered a cause of her death." Id. In contrast, a victim's suicide after a violent assault was not an unforeseeable cause of independent origin, and the defendant was still liable for murder. Id. at 81-82.

Similarly, if a defendant injures a victim and the victim "bleeds to death because surgical attention is not available or because, although available, it is delayed by reason of the surgeon's gross neglect or incompetence," the defendant remains liable. People v. McGee, 187 P.2d 706, 714-15 (Cal. 1947). "The delay in treatment is not in fact an intervening force; it cannot in law amount to a supervening cause." Id.; see also United States v. Hamilton, 182 F. Supp. 548, 550 (D.D.C. 1960) ("It is well established that if a person strikes another and inflicts a blow that may not be mortal in and of itself but thereby starts a chain of causation that leads to death, he is guilty of homicide. This is true even if the deceased contributes to his own death or hastens it by failing to take proper treatment.").

Accordingly, courts have emphasized that "negative acts"—responsive actions aimed at mitigating the results of a defendant's conduct—are not superseding causes in criminal cases. See United States v. Swallow, 109 F.3d 656, 660 (10th Cir. 1997) (citing scholars who have "recognize[d] the possibility of a negative act being superseding in a civil case" but only "in very exceptional situations" and noting that there was "no counterpart in criminal cases"). The question with proximate cause is "not what would have happened, but what did happen, and there can be no break in the legally-recognized

11

chain of causation by reason of a possibility of intervention which did not take place, because a 'negative act' is never superseding." Kusmider v. State, 688 P.2d 957, 959 (Alaska Ct. App. 1984) (citation modified).

Swallow provides an illustrative example from a treatise in the context of civil tort law: "[An] [a]utomobile negligently driven by A strikes B, leaving B unconscious on the highway, bleeding to death. C, a passing motorist, stops and surveys the situation, and drives on without rendering aid to B. B bleeds to death." Swallow, 109 F.3d at 660. "*Regardless of whether C is under any duty to B to render such aid,* his failure to do so is not a superseding cause which will relieve A of liability for [B's death]." Id. (emphasis in original). If that sort of negative act does not cut off liability in a civil case, it is certainly the case that a "defendant cannot complain because no force intervened to save him from the natural consequence of his criminal act." McGee, 187 P.2d at 714.

These principles extend to law enforcement responses to crimes. For example, in United States v. Pineda-Doval, the Ninth Circuit explained that "generally a police officer's conduct in pursuing a fleeing perpetrator, even if it was negligently performed and resulted in the death of the officer or a third party, is not deemed conduct so unusual, abnormal or extraordinary as to constitute" a "superseding cause." 614 F.3d at 1029.

Allowing responsive negative acts to cut off liability would lead to absurdities. A defendant who blows up a building could argue that his explosive was simple to disarm, and it was the fault of the bomb squad for failing to do so. A bank robber could argue that he should not be liable for killing a good Samaritan who tried to stop him because police should have responded to his crime faster. A fentanyl dealer could argue that medical personnel were to blame for a victim's death because they failed to administer NARCAN. And any arsonist could argue that the fire department's response was not fast or thorough enough to prevent a fire from spreading. In none of these scenarios are these responsive actions relevant to whether the result of a defendant's act was foreseeable at the time he acted. Accordingly, courts appropriately exclude such

12

evidence from criminal trials.  E.g., McGee, 187 P.2d at 714-15; Kusmider, 688 P.2d at 960.

It is undisputed that the LAFD quickly responded to the Lachman Fire as a result of 911 calls regarding the Lachman Fire (including defendant's 911 calls). Neighborhood residents began calling 911 to report the fire at approximately 12:17 a.m. on January 1.  The LAFD responded, and a fire engine arrived at the scene of the fire at approximately 12:36 a.m.  Air resources were also brought to combat the fire.  The LAFD contained the fire on the morning of January 1 and revisited the scene over the next few days.  Even under defendant's exaggerated account of the LAFD's supposed negligence, nothing that the LAFD did was of an "independent origin" from the ignition of the Lachman Fire.  Mendez, 897 F.3d at 1081 (quoting Exxon Co., 517 U.S. at 837). As a result, the LAFD's response cannot be an intervening or superseding cause, and is irrelevant to defendant's criminal liability.

To allow defendant to try to blame the LAFD for the results of his own arson would require this Court to do what no court has done before.  The government has been unable to locate any case in which a defendant was permitted to blame his arson on the responsive actions of a fire department, whether under the federal statutes at issue here or under state statutes.  That is not surprising.  Unlike tort law, which "focuses on injury," criminal law "emphasizes deterrence and incapacitation" and "focuses on the dangerousness of the defendant's conduct."  Brackett, 11 F.3d at 82.  And the dangerousness of a defendant's conduct does not hinge on the actual or hypothetical reaction of first responders.  Defendants are treated the same under the law whether someone effectively mitigated the harm they caused, imperfectly responded to the harm, or did not respond at all.  This Court should not be the first to open the floodgates of allowing defendants to pin the blame for their crimes on law enforcement's responses to their crimes.

13

**C.      Evidence Regarding the LAFD's Response to the Fire Should Be Excluded Under Rule 403**

Even if evidence regarding the LAFD's response to the fire were relevant (it is not), the Court should exclude such evidence and argument pursuant to Rule 403.

As set forth in Part II.A.1, <u>supra</u>, the defense has been transparent that it seeks to put the LAFD on trial.   Defense counsel has promised the media that the trial will be "an epic war" and "a street fight" in response to this prosecution being "[o]ne of the most shameful attempts at deflecting civil and criminal liability in the nation's history."  The defense seeks to call as witnesses firefighters who purportedly will claim they were ordered off of the Lachman Fire's burn scar on January 2, 2025, despite allegedly obvious signs that the fire was still smoldering.  And the defense has noticed two experts to testify about the LAFD's response to the Lachman Fire.  The defense has boasted to the media that the LAFD's response will be "heavily litigated." (Exh. C at 5.)

A mini-trial about the LAFD's allegedly negligent response to the fire would be a consummate example of what Rule 403 is designed to preclude.  The probative value of evidence regarding the LAFD's response is nonexistent, because, as explained above, it is not relevant to defendant's criminal liability.  The probative value would be vastly outweighed by the dangers of unfair prejudice, jury confusion, and undue delay.  <u>See</u> Fed. R. Evid. 403.

Evidence is unfairly prejudicial when it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instincts to punish, or triggers other mainsprings of human action." <u>United States v. Blackstone</u>, 56 F.3d 1143, 1146 (9th Cir. 1995) (internal quotation marks omitted).  Here, the defense seeks to distract the jury from defendant's criminal responsibility for starting the fire by focusing on the LAFD's purported mistakes in responding to the fire.  The defense is claiming that even if defendant started the Lachman Fire, he should not be blamed for the holdover fire.  The defense openly seeks to paint defendant as a scapegoat who should not be punished for

14

the LAFD's supposed failures.  Such an argument is unfairly prejudicial as well as an impermissible attempt at jury nullification.

A defendant has no right to present evidence that is not based on a legal defense to, or an element of, the crime charged.  See Zal v. Steppe, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring).  "[N]either a defendant nor his attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an element of, the crime charged.  Verdicts must be based on the law and the evidence, not on jury nullification."  Id. (emphases in original); see also United States v. Thomas, 116 F.3d 606, 615 (2d Cir. 1997) ("courts have consistently recognized that jurors have no right to nullify") (emphasis in original); United States v. Funches, 135 F.3d 1405, 1409 (11th Cir. 1998) ("the potential for nullification is no basis for admitting otherwise irrelevant evidence").

The Court has "a duty to forestall or prevent" jury nullification, including by preventing "impermissible" defense questioning or argument and affirmatively instructing jurors that "they should not substitute their own sense of justice for their duty to find facts pursuant to the law."  United States v. Lynch, 903 F.3d 1061, 1079-80 (9th Cir. 2018) (citation omitted); United States v. Funches, 135 F.3d 1405, 1409 (11th Cir. 1998) (collecting cases).

The defense's attempt to put the LAFD on trial would create a lengthy mini-trial at defendant's trial, wasting the Court's time and jurors' time.  See Tennison v. Circus Circus Enterprises, Inc., 244 F.3d 684, 690 (9th Cir. 2001) (affirming exclusion of evidence under Rule 403 that "might have resulted in a 'mini trial'" because "[t]he trial court could reasonably conclude this would be an inefficient allocation of trial time."); see also United States v. Henderson, No. 23-828, 2024 WL 4345300, at *2 (9th Cir. Sept. 30, 2024) (holding that "district court did not abuse its discretion in its Rule 401 and Rule 403 analysis because [excluding evidence] avoided a 'mini trial.'").

There is no need for any firefighters to testify at defendant's trial; as set forth above, their actions after defendant set the fire are irrelevant to his criminal liability.

Likewise, there is no need for defense experts to testify as to the LAFD's purported mistakes.  Such a sideshow would add at least several days to what will already be a lengthy trial: not only would the defense be calling unnecessary witnesses, but the government would need to call its own LAFD witnesses and fire or emergency response experts to explain why the LAFD's response was reasonable and foreseeable (in contrast to the misleading narrative that defense counsel has been peddling to the media).  All such testimony is unnecessary given the actual charges here.

Finally, the danger of juror confusion is high.  As noted in Section II.A, _supra_, the defense wants to tell jurors, for example, that the Palisades Fire was "proximately caused by the gross negligence" of the LAFD, and have a defense expert testify that "government's case against Jonathan Rinderknecht depends on establishing that the Palisades Fire was the natural and probable consequence of the Lachman Fire."  Legally, this is nonsense:  there can be more than one proximate cause of an event, and, as explained above, defendants do not get to blame first responders for the consequences of their own crimes.  But jurors are likely to be confused if they think they are tasked with weighing the alleged negligence of the LAFD against defendant's mens rea days earlier.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court grant this motion in its entirety.

16