Steven Haney Esq., *Pro Hac Vice*
Haney Law Group, PLLC
22815 Kelly Rd.
Eastpointe, MI 48021
Telephone: (248) 414-1470
E-Mail: steve@haneygroup.net

Attorneys for Defendant

Jacob A. Gillick, Esq., SBN 312336
Gillick Legal, APC
777 S. Alameda, 2nd Floor
Los Angeles, CA 90021
Telephone: (858) 250-0656
E-Mail: JGillick@GillickLegal.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN RINDERKNECHT<br><br>Defendants. | Case No. 2:25-cr-00833-AH<br><br>**DEFENDANT JONATHAN RINDERKNECHT'S NOTICE AND MOTION IN LIMINE NO. 2 TO ADMIT EVIDENCE OF SUPERSEDING INTERVENING NEGLIGENCE OF THE LOS ANGELES FIRE DEPARTMENT AND CALIFORNIA STATE PARKS**<br><br>Hearing Date: May 13th, 2026<br>Hearing Time: 10:00 am<br>Courtroom:  9C<br>Hon. Anne Hwang Presiding |

i

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 13th, 2026, at 10:00 AM, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Anne Hwang, United States District Judge, Central District of California, Defendant Jonathan Rinderknecht, by and through counsel of record, will and hereby does move this Court in limine for an Order:

(1)  Establishing that causation is an essential element of the crime of arson under federal law that the government must prove beyond a reasonable doubt;

(2)  Determining that whether a superseding intervening cause breaks the chain of causation is a question of fact for the jury, not a matter for judicial determination;

(3)  Permitting the Defendant to present evidence and argument to the jury regarding the gross negligence of the Los Angeles Fire Department ("LAFD") and California State Parks in abandoning the smoldering Lachman burn scar on January 2, 2025 — six days before the catastrophic Palisades Fire ignited — as evidence of superseding intervening cause; and

(4)  Precluding the Government from arguing or suggesting to the jury that causation issues or superseding intervening cause determinations are matters of law for the Court rather than questions of fact for the jury.

This Motion is made pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure and Federal Rules of Evidence 401, 402, 403, 702, and 801(d)(2), on the grounds that evidence of the LAFD's and California State Parks' grossly negligent abandonment of an actively smoldering fire hazard is directly relevant to the causation element of the charged offense and constitutes admissible evidence of a superseding intervening cause.

This Motion is based upon the attached Memorandum of Points and Authorities, the Proposed Order filed concurrently herewith, the depositions of LAFD Firefighter Scott Pike, Battalion Chief Michael McIndoe, Battalion Chief

Martin Mullen, and California State Park Ranger Christy Araujo, the records and files in this action, and such further argument and evidence as may be presented at or before the hearing.

Pursuant to Local Rule 7-3, counsel for Defendant conferred with counsel for the Government regarding the substance of this Motion. The parties were unable to reach an agreement.

MOTION IN LIMINE # 2

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION IN LIMINE

TABLE OF CONTENTS

TABLE OF AUTHORITIES

I.   INTRODUCTION AND STATEMENT OF THE ISSUE -1

II.   STATEMENT OF RELEVANT FACTS - 4

   A.  The Government's Causal Theory: The Palisades Fire as a "Holdover" - 4

   B.  The Deposition Testimony of LAFD Firefighter Scott Pike - 7

   C.  The LAFD's Failure to Use Thermal Imaging - 9

   D.  The LAFD Did Not Return to the Burn Scar - 10

   E.  The Government's Causal Theory Cannot Be Reconciled With the Evidence - 10

III.  LEGAL ARGUMENT - 11

   A.  Federal Criminal Causation Under 18 U.S.C. § 844(i) Requires Proof of Causation-11

   B.  Superseding Intervening Cause as a Question of Fact for the Jury - 12

   C.  The Question of Superseding Intervening Cause May Not Be Withdrawn From the Jury - 15

     1.  The Founding Principle: Causation Is for the Jury - 15

     2.  Due Process and the Sixth Amendment Guarantee the Defense the Right to Present This Theory - 16

   D.  The Evidence of LAFD Negligence Is Admissible Under the Federal Rules of Evidence - 16

   E.  The Government's "Holdover Fire" Theory Cannot Survive the Weight of the Deposition Evidence - 17

IV.  CONCLUSION - 18

iv

# TABLE OF AUTHORITIES

## Cases

*Holmes v. South Carolina, 547 U.S. 319 (2006)* 16

*In re Winship, 397 U.S. 358 (1970)* 16

*Oberson v. USDA, 514 F.3d 989 (9th Cir. 2008)* 13

*United States v. Gonzalez, 906 F.3d 784 (9th Cir. 2018)* 13

*United States v. Hackett, 311 F.3d 989 (9th Cir. 2002)* 15

*United States v. Hanousek, 176 F.3d 1116 (9th Cir. 1999)* 10, 11

*United States v. Hicks, 217 F.3d 1038 (9th Cir. 2000)* 15

*United States v. Main, 113 F.3d 1046 (9th Cir. 1997)* 12, 15

*United States v. Pineda-Doval, 614 F.3d 1019 (9th Cir. 2010)* 11, 13, 15

*United States v. Rodriguez, 754 F.3d 1122 (9th Cir.)* 11

*Washington v. Texas, 388 U.S. 14 (1967)* 16

*White v. Roper, 901 F.2d 1501 (9th Cir. 1990)* 13

## Federal Statutes

18 U.S.C. § 844(i) 12, 16

## Federal Rules

Fed. R. Crim. P. 12(b)

Fed. R. Evid. 801(d)(2) 17

## I.  INTRODUCTION AND STATEMENT OF THE ISSUE

Defendant Jonathan Rinderknecht moves this Court for a pretrial order establishing that:

(1)  Causation is an essential element of the crime of arson under federal law that the government must prove beyond a reasonable doubt;

(2)  Whether a superseding intervening cause breaks the chain of causation is a question of fact for the jury, not a matter for judicial determination;

(3)  The Defendant is entitled to present evidence and argument to the jury regarding the gross negligence of the Los Angeles Fire Department ("LAFD") and California State Parks in abandoning the smoldering Lachman burn scar on January 2, 2025 — six days before the catastrophic Palisades Fire ignited — as evidence of superseding intervening cause that may have broken the causal chain between the Defendant's alleged conduct and the resulting fire damage; and

(4)  The Government is precluded from arguing or suggesting to the jury that causation issues or superseding intervening cause determinations are matters of law for the Court rather than questions of fact for the jury — and from contending that the question of whether that governmental negligence constitutes a superseding intervening cause breaking the causal chain between the January 1, 2025 Lachman Fire and the January 7, 2025 Palisades Fire may be taken from the jury by pretrial order or judicial instruction.

## THE FICTIONAL PALISADES HOLDOVER FIRE

The Government's criminal complaint expressly describes the Palisades Fire as a "holdover fire," asserting in Paragraphs 9 and 43 of the complaint that the Lachman Fire continued to smolder "underground" and "undetected" in the vegetation root structure and that "this underground burning was not visible to firefighters in the aftermath of the Lachman Fire." **This foundational allegation is demonstrably and materially false and always has been.**

On January 30, 2026, Los Angeles Fire Department Firefighter Scott Pike provided sworn testimony in the civil matter of *Grigsby v. City of Los Angeles*. During that deposition, Firefighter Pike testified that when the Los Angeles Fire Department (LAFD) pulled its hoses and abandoned the Lachman burn scar on the morning of January 2, 2025, the hillside was visibly smoking, audibly crackling with active burning, and so thermally hot that Firefighter Pike — working the scene in full protective gear — declined to place a gloved hand on the ground, instead kicking hot spots and ash pits with his boot. **(Ex. A — Deposition of Scott Pike, pg. 52, Ln. 17–24.)**

During his testimony, Firefighter Pike observed five or more active "smokers" and hot spots in his immediate area alone. Pike voiced his concerns to the on-scene Battalion Chief Mario Garcia and nothing was done. **(Ex. A — Deposition of Scott Pike, pg. 62, Ln. 12–24.)**

Consequently, the entirety of the Lachman Fire firefighting crews went home because it was a holiday weekend.  Despite the known and obvious risk of rekindling, no thermal imaging was employed at any point.  And when the National Weather Service issued a Red Flag Weather warning, forecasting hurricane force winds for the Palisades, the LAFD did not return to the Lachman burn scar at any point between January 2 and January 7, 2025.  Predictably, when forecasted hurricane-force Santa Ana winds raged as forecasted, the Lachman Fire rekindled into the catastrophic Palisades Fire.

Firefighter Pike's testimony was corroborated by Los Angeles Fire Department Chief Mike McIndoe, who also observed the burn scar smoldering and, like Pike, expressed to the on scene Emergency Incident Technician it was a "bad idea" to pull the hoses from the unextinguished fire and that with hot weather and high winds forecasted, a potential rekindling was possible and foreseeable. **(Ex. B — Deposition of Chief McIndoe, pg. 21–22.)**

When Chief McIndoe was directed by the EIT to voice his concerns to the

on-site Battalion Chief Mario Garcia, he reiterated to Chief Garcia that he thought it was a "bad idea" to pull the hoses from the still-smoldering Lachman burn scar. **(Ex. B — Deposition of Chief McIndoe, pg. 25–26.)** Just like Firefighter Pike, Chief McIndoe's concerns went ignored by Chief Garcia, and six days later, as predicted, high winds caused the January 1, 2025 Lachman Fire to rekindle into the January 7, 2025 Palisades Fire — one of the worst fire disasters in American history.

In addition to the testimony of the two LAFD firefighters, California State Park Ranger Christy Araujo also inspected the Lachman Fire burn scar after the LAFD abandoned its firefighting efforts. She too saw a hot, smoldering, still-active burn scar and even photographed the smoking hillside, which evidenced fire emanating from the ground in an area that still contained vegetation and deadly fuel subject to rekindling. **(Ex. C — Deposition of Park Ranger Araujo, pg. 33, Ln. 9–14; pg. 34, Ln. 18–25.)**

Despite these observations, Park Ranger Araujo took no action whatsoever. She did not call her supervisor, did not call Cal Fire, did not call the LAFD, made no attempt to extinguish the hot spot.  Park Ranger also did not close or rope off the area or the Topanga State Park. She simply took a picture and went home.

MOTION IN LIMINE # 2



**PHOTO TAKEN BY CALIFORNIA STATE PARK RANGER CHRISTY ARAUJO BURN SCAR SMOLDERING IN PRESENCE OF IGNITABLE FLUIDS**

On January 7, 2025 — six days later — this area very predictably, and foreseeably, rekindled, causing the devastating Palisades Fire for which the Defendant is now charged.

This conduct — the conscious decision by **multiple** government fire agencies to abandon a known, visibly and audibly active smoldering wildfire burn scar in advance of a red-flag wind event, in violation of standard wildfire protocol — is precisely the type of gross, unforeseeable negligence that the law recognizes as a superseding intervening cause capable of breaking the causal chain in a criminal prosecution. The evidence is squarely admissible and the question is unambiguously one for the jury. The defense moves this Court to so rule.

## II.  STATEMENT OF RELEVANT FACTS

### A.  The Government's Causal Theory: The Palisades Fire as a "Holdover"

The government's theory of prosecution, as set out in the criminal

4

complaint, is that the Palisades Fire was a "holdover fire" — a continuation of the January 1, 2025 Lachman Fire — and that Mr. Rinderknecht is therefore criminally liable for the destruction caused by both events. Specifically, Paragraph 9 of the complaint alleges: "Although the Los Angeles City Fire Department quickly suppressed the Lachman Fire on January 1, **unbeknownst to anyone, the fire continued to smolder and burn underground within the root structure of dense vegetation.** On January 7, 2025 heavy winds caused the underground fire to surface and spread above ground in what became the Palisades Fire." **(Ex. D — Criminal Complaint.)**

Paragraph 43 of the complaint repeats the theory: "The investigative team determined that the Palisades Fire was a holdover fire, defined as a fire that remains dormant for a considerable time. Investigators determined that during the Lachman Fire a firebrand became seated within the dense vegetation and continued to smolder and burn within the root structure of the vegetation. **This underground burning was not visible to firefighters in the aftermath of the Lachman Fire and was not visible to members of the public who visited the hillside** after the Lachman Fire." **(Ex. D — Criminal Complaint.)**

5

MOTION IN LIMINE # 2

| INCIDENT DETAILS | |
|---|---|
| INCIDENT #: | 0695 |
| ADDRESS: | REDACTED |
| RFS: | 23 |
| INCIDENT MAP: | 34°04'29.8"N 118°32'43.5"W<br>View larger map<br>THE SUMMIT<br>Public Adjusters<br>Google<br>Map data ©2025  Report a map error |
| LAT/LONG: | 34.074945, -118.54542 |
| LAFD MAP CODE: | 489.1464 |
| ZONE: | WLA |
| TYPE CODE: | GRASS |
| TYPE NAME: | |
| TYPE DESC: | |
| INCIDENT DATE: | 01/03/2025 |
| INCIDENT TIME: | 11:51:44 AM |
| PHONE: | REDACTED 3539 |
| GENDER: | |
| AGE: | |
| CALL TAKER: | 41445 |
| CALL TAKER CONSOLE: | P19 |
| DISPATCHER: | 41445 |
| DISPATCHER CONSOLE: | P19 |
| DISPATCH CHANNEL: | 7 |
| TAC CHANNEL: | 13 |
| DISPATCH UNITS: | E(1) T(0) RA(0) RA-800(0)<br>E23  E269  BC9 |
| UNITS STILL ATTACHED TO INCIDENT: | E(0) T(0) RA(0) RA-800(0) |
| INITIAL 911 TIME: | |
| 1ST UNIT DISPATCH TIME: | 11:56:09 AM |
| 1ST UNIT ONSCENE TIME: | 12:06:52 PM |
| LAST UNIT AVI TIME: | 12:40:01 PM |
| PROCESSING TIME (911->WRS): | |
| RESPONSE TIME (WRS->ONS): | 10:43 |
| COMMENT: | 11:51:44  WHAT3WORDS LOCATION: MAPLE.PINT.FANTASTIC<br>11:51:44  LAT: 34.049092 LONG: -118.251156<br>11:53:01  * BRUSH AREA<br>11:53:01  INCIDENT LOCATION ON MAP MAY NOT MATCH ACTUAL INCIDENT ADDRESS<br>11:53:52  CALLER STATES WISP OF SMOKE ABOUT 1/2 MILE SOUTH/PREVIOUS BRUSH/OVERCAST CONDITIONS<br>11:56:08  FLR CAPT APPROVAL<br>11:56:53  RP WILL PHONE ON REDACTED 3539<br>11:57:51  WHAT3WORDS PUT INC IN 9'S FIRST IN<br>12:08:07  E23 RPTS N/S<br>12:08:36  CB VM<br>12:14:13  E23 CXL E269<br>12:20:16  489.1464 100 SPLIT ROCK FIRE RD ...LA COUNTY FIRE CAMP 14 WORKING IN THE AREA UNTIL THIS AFTERNOON (01/03 OP10035) |

Shockingly, the Government openly and blatantly made false representations in its charging document that the "underground burning was **not visible to firefighters in the aftermath of the Lachman Fire**" and "**not visible to members of the public who visited the hillside after the Lachman Fire**" when the Government was in possession of multiple hiker videos and photos of the Lachman Fire still burning in the days just prior to its rekindling into the Palisades Fire, and multiple emergency services calls from members of the public reporting exactly that.

6

In fact, two witnesses reported that after the LAFD pulled its hoses and left the Lachman burn scar, they accessed the burn scar and visibly saw smoldering and hot spots. Both of these civilians were interviewed by the ATF, which documented their findings and took possession of a video taken on January 3, 2025, of the Lachman burn scar smoking and smoldering just days before the Palisades Fire. **(See Ex. E — USAO_00028041; Ex. F — USAO_00003974.)** All of this information was known by the Government before they filed their criminal complaint and before their October 8th, 2025 press conference stating the polar opposite.

The level of deceit in the charging document belies what anyone would fathom of the United States of America. As noted, the defense will demonstrate at trial that each of the above-quoted representations are false.

**The burning was not underground and was not invisible. It was above ground, visible to the naked eye, seen by many, audible, and thermally detectable by touch. The LAFD, California State Parks, and even Palisades residents knew of the continuing fire hazard and abandoned the scene anyway.** None of this is even up for debate and has been supported by numerous witness statements, eyewitness accounts, and sworn deposition testimony.

**B. The Deposition Testimony of LAFD Firefighter Scott Pike**

As noted above, Los Angeles Fire Department Firefighter Scott Pike was deposed on January 30, 2026, in the civil matter of *Grigsby v. City of Los Angeles*, which arises from the Palisades Fire. Firefighter Pike testified he was working an overtime shift at the Lachman burn scar on the morning of January 2, 2025 — the day the LAFD ordered its crews to pull hoses and leave the scene. His testimony is direct, detailed, and devastating to the government's "holdover" narrative. Firefighter Pike testified to the following material facts:

**1. Ordered to Pull Hoses Despite Active Smoldering.** On the morning of January 2, 2025, Firefighter Pike was working the Lachman burn scar when

7

the order came from the on-scene Battalion Chief to pull hoses off the hill. This was done so that the crews could be released and go home. **(Ex. A — Deposition of Scott Pike, pg. 33, Ln. 1–5.)**

**2. Five or More Active Hot Spots Personally Observed.** In his immediate area alone, Firefighter Pike personally observed five or more active smokers — visibly burning, smoking, and smoldering hot spots and ash pits. **(Ex. A — Deposition of Scott Pike, pg. 51, Ln. 4–17.)**

**3. Ground Temperature So Extreme Pike Would Not Place a Gloved Hand on It.** The temperature of the ground at the burn scar was so extreme that Firefighter Pike — a trained firefighter in full protective gear — testified that he did not place a gloved hand on the ground. Instead, he kicked the hot spots with his boot to assess them. **(Ex. A — Deposition of Scott Pike, pg. 52, Ln. 1–25.)**

**4. Active Audible Burning at the Moment of Abandonment.** Firefighter Pike testified that when the hoses were pulled and the LAFD crews left the burn scar, the ground was so hot that he could audibly hear vegetation burning and crackling beneath his feet. **(Ex. A — Deposition of Scott Pike, pg. 52, Ln. 1–25.)**

**5. Concerns Voiced to the Battalion Chief — Nothing Done.** Firefighter Pike expressed his concerns about abandoning the smoldering burn scar to the on-scene Battalion Chief. No action was taken. The decision to pull hoses and leave was not reversed. **(Ex. A — Deposition of Scott Pike, pg. 62, Ln. 12–24.)**

**6. It Was a Holiday Weekend; Crews Wanted to Go Home.** The decision to abandon the active burn scar was made on New Year's Day 2025 — a holiday weekend. The desire to release fire crews contributed to the decision to leave the scene despite the ongoing fire hazard.

Firefighter Pike's testimony is corroborated by multiple hiker videos (in the

8

possession of the Government) taken on the Lachman hillside between January 2 and January 7, 2025, showing visible smoke rising from the burn scar area, and by multiple witnesses who visited the hillside and observed the same smoke and heat.



On January 30, 2026, Battalion Chief Michael McIndoe was also deposed. During his deposition he stated that he advised the on-site Battalion Chief Mario Garcia that he thought it was a "bad idea" to pull the hoses and leave the Lachman burn scar on the morning of January 2, 2025, because of the increasing hot weather and the Red Flag Weather Warning calling for hurricane-force winds.

## C.  The LAFD's Failure to Use Thermal Imaging

The deposition of Battalion Chief Martin Mullen, taken on January 13, 2026, establishes that the LAFD did not deploy thermal imaging at any point during the Lachman Fire mop-up operation. Chief Mullen acknowledged that thermal imaging cameras — known to be highly effective in detecting sub-surface and concealed hot spots in wildland fire mop-up — were not used. **(Ex. G —**

9

**Deposition of Battalion Chief Mullen, pg. 39, Ln. 7–15.)**

He further acknowledged that the standard methodology for his battalion did not include thermal imaging in brush fire mop-up operations. **(Ex. G — Deposition of Battalion Chief Mullen, pg. 39, Ln. 17–25.)**

**D.  The LAFD Did Not Return to the Burn Scar**

After abandoning the Lachman burn scar on the morning of January 2, 2025, neither the LAFD nor California State Parks returned to the burn scar to monitor, assess, or suppress any continuing fire activity at any point during the six days between January 2 and January 7, 2025. Moreover, California State Parks, despite an express policy mandate to do so, did not close Topanga State Park after the wildfire.

This six-day period included forecast red-flag conditions — specifically, the Santa Ana wind event that both the LAFD and the National Weather Service knew was approaching. When it arrived on January 7, it drove hurricane-force gusts through the Palisades area. The LAFD took no precautionary action at the Lachman burn scar — no monitoring, no additional suppression, no thermal assessment — in advance of the known wind event.

**E.  The Government's Causal Theory Cannot Be Reconciled With the Evidence**

The government's complaint states that "this underground burning was not visible to firefighters." Firefighter Pike's and Park Ranger Araujo's testimonies directly refute this: the burning was visible, audible, and thermally severe — so severe that an experienced firefighter on the scene found the ground too hot to touch with a gloved hand. The burn scar was not an invisible, dormant underground smolder. It was an actively burning, smoking, crackling fire hazard that the LAFD observed, that the State Parks observed, and that numerous civilians observed and even videotaped. The fire was addressed inadequately, and then abandoned.

10

The Palisades Fire was not a product of Defendant Rinderknecht's conduct; it was the product of the LAFD's and California State Parks' conscious, documented decision to leave a known fire hazard on a hillside above one of the most vulnerable communities in Los Angeles in advance of a predicted extreme and catastrophic wind event. Those reckless decisions were not just unforeseeable — they were unthinkable.

## III.  LEGAL ARGUMENT

### A.  Federal Criminal Causation Under 18 U.S.C. § 844(i) Requires Proof of Causation

A basic tenet of criminal law is that, when a criminal statute requires that the defendant's conduct has resulted in an injury, the government must prove that the defendant's conduct was the legal or **proximate cause** of the resulting injury. Proof of **proximate cause** requires a showing that the harm suffered by the victim was a foreseeable outcome of the defendant's conduct. The **proximate cause** showing is more easily met when the intervening event is not a coincidence or unrelated to the defendant's prior conduct, but rather was a response to that conduct. When the intervening event is a response to the defendant's conduct, the question is whether the intervening act was abnormal — that is, whether, looking at the matter with hindsight, it seems extraordinary. *United States v. Rodriguez*, 754 F.3d 1122, 1125.

In *United States v. Hanousek*, 176 F.3d 1116 (9th Cir. 1999), the court reiterated that proximate cause requires the harm to be within the risk foreseeably created by the defendant's conduct, and that the conduct must also be a substantial factor in causing the harm. **This principle is particularly relevant in arson cases where the government must establish that the fire or explosion foreseeably caused the resulting injury or death.**

In *United States v. Pineda-Doval*, 614 F.3d 1019 (9th Cir. 2010), the Ninth Circuit held that the government must prove that the defendant's conduct was the

11

legal or proximate cause of the resulting injury or harm. Proximate cause requires a showing that the harm suffered was a foreseeable outcome of the defendant's conduct. The court emphasized that causation in criminal law includes both cause-in-fact and proximate cause, and the government must demonstrate that the defendant's actions were a substantial factor in bringing about the harm.

Similarly, in the context of arson under 18 U.S.C. § 844(f)(2), the statute explicitly requires that the defendant's conduct directly or proximately cause personal injury or death to trigger enhanced penalties. This statutory language underscores the necessity of proving causation as an essential element of the offense. 18 U.S.C. § 844.

Critically, 18 U.S.C. § 844(i) imposes criminal liability for damage or destruction caused "by means of fire." The causal link between the Defendant's act and the charged property destruction must be proven beyond a reasonable doubt. Where the Government charges that the Defendant's fire at Location A became, six days later, the fire that destroyed property at Location B — after the intervention of a Government agency's grossly negligent decision to abandon a smoldering fire hazard at Location A — the Government must establish that the defendant's original act, and not the intervening governmental negligence, was the proximate cause of the destruction at Location B.

## B.  Superseding Intervening Cause as a Question of Fact for the Jury

The Ninth Circuit has consistently held that whether a superseding intervening cause breaks the chain of causation is a question of fact for the jury. In *United States v. Main*, 113 F.3d 1046 (9th Cir. 1997), the court explained that causation in criminal law requires both cause-in-fact and proximate cause, and the question of proximate cause must be submitted to the jury. The court further noted that the jury must determine whether the resulting harm was within the risk created by the defendant's conduct, and that failure to instruct the jury on this issue constitutes reversible error.

MOTION IN LIMINE # 2

Similarly, in *United States v. Gonzalez*, 906 F.3d 784 (9th Cir. 2018), the court highlighted the importance of jury instructions requiring a finding of proximate cause when enhanced penalties are sought based on resulting harm.

In *United States v. Pineda-Doval*, 614 F.3d 1019 (9th Cir. 2010), the Ninth Circuit clarified that occasional negligence by a third party that should have been anticipated by the defendant does not defeat proximate cause. For a third party's negligence to constitute a superseding cause, it must be so extraordinary that it would be unfair to hold the defendant responsible for the resulting harm. The court emphasized that this determination — whether the intervening act was abnormal or extraordinary — is a factual question for the jury to resolve.

The Ninth Circuit has also addressed the foreseeability of intervening acts in cases involving negligence. In *White v. Roper*, 901 F.2d 1501 (9th Cir. 1990), the court held that foreseeable intervening causes do not supersede the defendant's responsibility. The court explained that whether an intervening act was foreseeable or abnormal is a factual issue that must be decided by the jury, particularly when reasonable persons could differ on the matter.

Furthermore, in *Oberson v. USDA*, 514 F.3d 989 (9th Cir. 2008), the court reiterated that an independent intervening act will not bar liability if it is one that the defendant might reasonably foresee as probable under the circumstances. The foreseeability of the intervening act and its impact on causation are factual determinations for the jury.

As in this case, the gross negligence by both the LAFD and California State Parks in knowingly leaving a hot, burning, still-smoldering burn scar is a textbook example of a superseding cause that allowed for the entirely preventable tragedy associated with the January 7, 2025 Palisades Fire. Where a Defendant's alleged initial act creates a finite hazard, and the Government then independently and negligently transforms that contained hazard into a catastrophe that the Defendant had no reason to anticipate — and over which the Defendant had no control — the

13

Governmental negligence breaks the causal chain as a matter of law or, at minimum, creates a jury question on causation.

***The LAFD's Conduct Satisfies Every Element of Superseding Intervening Cause***

The LAFD's abandonment of the Lachman burn scar on January 2, 2025 satisfies every element of the superseding intervening cause doctrine:

**a. Un-Foreseeability.** Even accepting the government's theory that Mr. Rinderknecht was responsible for the January 1, 2025 Lachman Fire (not a concession by any means), it was not foreseeable that a trained Government fire agency — arriving at a burn scar with hoses, personnel, and equipment — would observe active smoldering, receive on-scene firefighters' expressed concerns about fire conditions, and then order the crew to pull hoses and abandon the scene because it was a holiday weekend. The failure to take reasonable precautions by an entity entrusted with public safety — particularly when that entity has actual knowledge of a hazard — constitutes the type of independent act that unquestionably constitutes a superseding cause.

**b. Independence.** The LAFD's decision to pull hoses and abandon the smoldering Lachman burn scar was entirely independent of any act or conduct of Mr. Rinderknecht. Mr. Rinderknecht was not present on January 2, 2025. He had no role in the LAFD's fire suppression operations. He exercised no influence, control, or input over the LAFD's decision-making. The LAFD's decision was made by government personnel acting under their independent professional judgment — or its absence.

**c. Gross Negligence.** The evidence establishes that the LAFD's abandonment was grossly negligent by any standard. The agency left an active, visibly smoking and audibly crackling fire hazard — without thermal imaging, without any monitoring plan, without returning for six

14

days — immediately in advance of a predicted red-flag wind event. A trained firefighter on the scene, who touched the ground's heat with his boot because it was too hot for his gloved hand, expressed concern and was ignored. This is not a close case of ordinary negligence — it is an extraordinary institutional failure of precisely the kind that superseding cause doctrine is designed to address.

**d.  The LAFD's Negligence, Not Rinderknecht's Alleged Conduct, Was the Direct Cause of the Palisades Fire's Destruction.**  Had the LAFD performed basic mop-up protocol — thermal imaging, complete extinguishment to mineral earth, and monitoring in advance of the approaching wind event — the Palisades Fire would not have occurred. It was the Government's abandonment of its professional duty, not any act of Defendant Rinderknecht, that directly caused the January 7, 2025 Palisades Fire.

## C.  The Question of Superseding Intervening Cause Is a Question of Fact for the Jury and May Not Be Withdrawn From the Jury

### 1.  The Founding Principle: Causation Is for the Jury

A basic tenet of criminal law is that the government must prove that the defendant's conduct is the legal or proximate cause of the resulting injury. Causation in criminal law has two requirements: cause in fact and proximate cause. The question of proximate cause must go to the jury. *United States v. Main*, 113 F.3d 1046, 1047 (9th Cir. 1997).

Whether a superseding intervening cause breaks the chain of causation is a question of fact for the jury, particularly when the alleged intervening act involves negligence. These principles are well-supported by Ninth Circuit case law and statutory authority, including *United States v. Pineda-Doval*, 614 F.3d 1019 (9th Cir. 2010); *United States v. Main*, 113 F.3d 1046 (9th Cir. 1997); *United States v. Hackett*, 311 F.3d 989 (9th Cir. 2002); *United States v. Hicks*, 217 F.3d 1038 (9th

15

Cir. 2000); and 18 U.S.C. § 844.

Accordingly, in a federal criminal case in the Central District of California, the defense should generally expect superseding-cause disputes to be resolved by the jury when the evidence permits competing reasonable inferences about causation. Such determinations relative to intervening actions and the foreseeability of harm are not questions for the court, but determinations to be made by the jury.

### 2. Due Process and the Sixth Amendment Guarantee the Defense the Right to Present This Theory to the Jury

The Constitution guarantees a criminal defendant the right to present a complete defense. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."). A pretrial order precluding the defense from presenting evidence that the LAFD's gross negligence was a superseding intervening cause — or preventing counsel from arguing that theory to the jury — would deny Mr. Rinderknecht his constitutional right to present a complete defense.

This is particularly true where, as here, the causation evidence the defense seeks to introduce goes to an element of the charged offense that the government must prove beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). The government cannot simultaneously insist on its burden to prove causation beyond a reasonable doubt and also prevent the defendant from presenting evidence that breaks the causal chain. Such a course would be constitutionally intolerable.

### D. The Evidence of LAFD Negligence Is Admissible Under the Federal Rules of Evidence

The deposition testimony of Firefighter Scott Pike, the deposition testimony of Battalion Chief Martin Mullen, hiker videos depicting visible smoke rising

16

from the Lachman burn scar after January 2, 2025, and any expert testimony on wildland fire mop-up protocols and the LAFD's departure from those standards are all admissible under the Federal Rules of Evidence.

This evidence is relevant under Federal Rule of Evidence 401, as it makes the existence of a superseding intervening cause — and thus the absence of proximate causation between Mr. Rinderknecht's alleged conduct and the Palisades Fire — more probable than it would be without the evidence. It is admissible under Federal Rule of Evidence 402. No hearsay bar applies to the Pike deposition testimony, which constitutes a party admission by the City of Los Angeles under Rule 801(d)(2) and is alternatively admissible as a recorded recollection or present sense impression. Expert testimony on wildland fire protocol and the departure therefrom is admissible under Federal Rule of Evidence 702.

None of this evidence is subject to exclusion under Rule 403, as its probative value — which is extraordinary — is not substantially outweighed by any danger of unfair prejudice to the government.

**E.  The Government's "Holdover Fire" Theory Cannot Survive the Weight of the Deposition Evidence and May Not Be Shielded From Scrutiny**

The government's criminal complaint describes the Palisades Fire as caused by "underground burning" that "was not visible to firefighters." This characterization — which was the factual predicate presented to the grand jury — has been directly refuted by the sworn testimony of a government fire agency's own employee. Firefighter Pike testified that the burning was visible above ground, audible, and thermally extreme at the time of the LAFD's departure. This is not a minor evidentiary detail; it is the central factual premise of the causal theory underlying this prosecution.

The defense does not move this Court to resolve the factual dispute between Firefighter Pike and the Government's theory.   The defense moves this Court to

17

allow the jury to resolve it — which is precisely the function the Constitution assigns to a jury. Where the Government's own case depends on a contested factual account of causation, the Defendant has every right to present the competing account and allow the jury to decide.

## IV.  CONCLUSION

The sworn deposition testimony of LAFD Firefighter Scott Pike and Chief Michael McIndoe — Government employees who were ordered to pull hoses and abandon an actively smoldering, visibly burning, audibly crackling Lachman fire scar on January 2, 2025, who both expressed concerns that were ignored — is among the most powerful exculpatory evidence in this case that the Defendant Jonathan Rinderknecht COULD NOT HAVE CAUSED the Palisades Fire. This evidence combined with the outrageous malfeasance of the California State Parks, LAFD's complete failure to use thermal imaging, its failure to return to the burn scar for six days, and its failure to take any precautionary action in advance of a predicted red-flag wind event, establishes a textbook case of a superseding intervening cause that breaks the chain of causation between the two fires.

Even assuming, arguendo, that the jury were to find Mr. Rinderknecht responsible for the January 1, 2025 Lachman Fire — a finding the defense vigorously contests — the question of whether the LAFD's, and the California State Parks, grossly negligent abandonment of the burn scar constitutes a superseding intervening cause that breaks the causal chain between that fire and the January 7, 2025 Palisades Fire is a question of fact for the jury. It may not be taken from the jury by pretrial order, pretrial ruling, or exclusion of evidence. The Constitution requires no less.

The defense respectfully requests that this Court:

(1)  Rule that evidence of the LAFD's and California State Parks' negligent abandonment of the Lachman burn scar is admissible at trial on the issue of superseding intervening cause;

(2) Rule that the question of whether that negligence constitutes a superseding intervening cause breaking the causal chain between the Lachman Fire and the Palisades Fire is a question of fact for the jury;

(3) Confirm that the defense is entitled to argue the superseding intervening cause theory to the jury in opening statement, at trial, and in closing argument; and

(4) Direct the Government to produce all LAFD and California State Parks records, reports, communications, and documentation concerning the January 2, 2025 pullout decision and the monitoring — or lack thereof — of the Lachman burn scar between January 2 and January 7, 2025, to the extent not already produced.

/s/ Steven A. Haney
Steven A. Haney (Pro Hac Vice)
Counsel for Defendant
22815 Kelly Road
Eastpointe, Michigan 48021
(248) 414-1470

19

MOTION IN LIMINE # 2