TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental Crimes & Consumer Protection Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
DANBEE C. KIM (Cal. Bar No. 350014)
Assistant United States Attorneys
Environmental Crimes & Consumer Protection Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3359/8644/6530
    Email:    mark.williams@usdoj.gov
            matthew. o'brien@usdoj.gov
            danbee.kim2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>JONATHAN RINDERKNECHT,<br>  aka "Jonathan Rinder,"<br>  aka "Jon Rinder,"<br><br>       Defendant. | Case No. 25-833-AH<br><br>TRIAL MEMORANDUM<br><br>Trial Date: June 8, 2026 |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Mark A. Williams, Matthew W. O'Brien, and Danbee C. Kim, hereby files its Trial Memorandum.

Pursuant to the Court's standing order, on April 29, 2026, the parties met and conferred regarding this Trial Memorandum. The defense's positions on the applicable issues are noted herein.

This Trial Memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 29, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division


    /s/
MARK A. WILLIAMS
MATTHEW W. O'BRIEN
DANBEE C. KIM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................1

II.    STATEMENT OF FACTS.............................................................................2

     A.     The Lachman and Palisades Fires ...................................................2

     B.     Origin and Cause of the Lachman and Palisades Fires ..................3

     C.     Additional Expert Testimony ..........................................................3

     D.     The Defendant .................................................................................4

     E.     Defendant's Motive .........................................................................6

     F.     Defendant's Recorded Statements ..................................................6

III.   CHARGES AND ELEMENTS ......................................................................6

IV.   TRIAL ESTIMATE OF GOVERNMENT'S CASE-IN-CHIEF .........................8

V.     RELEVANT LEGAL AND EVIDENTIARY ISSUES.........................................8

     A.     Pending Motions..............................................................................8

     B.     Hearsay ............................................................................................9

          1.     Statements of a Party Opponent ..........................................9

          2.     Then Existing Mental State..................................................9

          3.     Non-Hearsay ........................................................................9

     C.     Digital Evidence ............................................................................10

     D.     Video, Photograph, and 3D Model Evidence ..............................10

     E.     Physical Evidence .........................................................................11

     F.     Prior Consistent Statements ..........................................................12

     G.     Expert Opinions.............................................................................12

     H.     Cross-Examination of Defendant .................................................13

     I.     Summary Charts ............................................................................14

     J.     Business Records...........................................................................15

     K.     Jurisdictional Witnesses ...............................................................15

     L.     Conditionally Admitting Evidence During Opening ...................15

M.    Affirmative Defenses, Reciprocal Discovery, and Jury Nullification .......16

VI.    CONCLUSION.................................................................................................17

# **TABLE OF AUTHORITIES**

DESCRIPTION                                                                                          PAGE

CASES:

Lucero v. Stewart,
    892 F.2d 52 (9th Cir. 1989) ...................................................................................14

Paddack v. Dave Christensen, Inc.,
    745 F.2d 1254 (9th Cir. 1984) ...............................................................................18

Reyes v. United States,
    383 F.2d 734 (9th Cir. 1967) .................................................................................14

Taylor v. Illinois,
    484 U.S. 400 (1988).................................................................................................20

Togonon v. Garland,
    23 F.4th 876 (9th Cir. 2022) ..................................................................................10

United States v. Anekwu,
    695 F.3d 967 (9th Cir. 2012) .................................................................................17

United States v. Antonakeas,
    255 F.3d 714 (9th Cir. 2001) .................................................................................17

United States v. Astorga-Torres,
    682 F.2d 1331 (9th Cir. 1982) ...............................................................................12

United States v. Bishop,
    291 F.3d 1100 (9th Cir. 2002) ...............................................................................12

United States v. Black,
    767 F.2d 1334 (9th Cir. 1985) ..........................................................................14, 16

United States v. Blackwood,
    878 F.2d 1200 (9th Cir. 1989) ...............................................................................14

United States v. Boulware,
    470 F.3d 931 (9th Cir. 2006) .................................................................................17

iii

## TABLE OF AUTHORITIES (CONT'D.)

DESCRIPTION                                                                                          PAGE

United States v. Castillo,
   181 F.3d 1129 (9th Cir. 1999) ...................................................................................16

United States v. Chu Kong Yin,
   935 F.2d 990 (9th Cir. 1991) ....................................................................................14

United States v. Corona,
   108 F.3d 565 (5th Cir. 1997) ....................................................................................10

United States v. David,
   337 F. App'x 639 (9th Cir. 2009) .............................................................................17

United States v. De Peri,
   778 F.2d 963 (3d Cir. 1985)......................................................................................19

United States v. Gere,
   662 F.2d 1291 (9th Cir. 1981) ..................................................................................18

United States v. Gullett,
   75 F.3d 941 (4th Cir. 1996) ......................................................................................10

United States v. Harrington,
   923 F.2d 1371 (9th Cir. 1991) .............................................................................14, 15

United States v. Iron,
   13 F. App'x 630 (9th Cir. 2001) ...............................................................................14

United States v. King,
   587 F.2d 956 (9th Cir. 1978) ....................................................................................13

United States v. Matta-Ballesteros,
   71 F.3d 754 (9th Cir. 1995) ......................................................................................14

United States v. Miranda-Uriarte,
   649 F.2d 1345 (9th Cir. 1981) ..................................................................................16

United States v. Oaxaca,
   569 F.2d 518 (9th Cir. 1978) ....................................................................................13

## **TABLE OF AUTHORITIES (CONT'D.)**

DESCRIPTION                                                                                      PAGE

United States v. Powell,
  955 F.2d 1206 (9th Cir. 1992) ...................................................................................20

United States v. Rubino,
  431 F.2d 284 (6th Cir. 1970) ....................................................................................19

United States v. Scharber,
  772 F.3d 1147 (8th Cir. 2014) ...................................................................................10

United States v. Stearns,
  550 F.2d 1167 (9th Cir. 1977) ...................................................................................13

United States v. Tank,
  200 F.3d 627 (9th Cir. 2000) .....................................................................................14

United States v. Velte,
  331 F.3d 673 (9th Cir. 2003) .....................................................................................10

United States v. Watkins,
  600 F.2d 201 (9th Cir. 1979) .....................................................................................18

United States v. Weicks,
  362 F. App'x 844 (9th Cir. 2010) ..............................................................................17

United States v. Wood,
  943 F.2d 1048 (9th Cir. 1991) ...................................................................................17

Zal v. Steppe,
  968 F.2d 924 (9th Cir. 1992) .....................................................................................20

STATUTES:

18 U.S.C. § 844(f)(1) ..............................................................................................9, 10, 18
18 U.S.C. § 844(i) ........................................................................................................9, 10
18 U.S.C. § 1855 ..........................................................................................................9, 10

RULES:

Fed. R. Crim. P. 16(b)(1)(A)................................................................................................19
Fed. R. Crim. P. 16(d)(2)(C)...............................................................................................20
Fed. R. Evid. 104(b)............................................................................................................18
Fed. R. Evid. 611(a)............................................................................................................17
Fed. R. Evid. 611(b)............................................................................................................16
Fed. R. Evid. 801(a)............................................................................................................12
Fed. R. Evid. 801(c)............................................................................................................12
Fed. R. Evid. 801(d)(1)(B)..................................................................................................15
Fed. R. Evid. 801(d)(2)(A) .................................................................................................12
Fed. R. Evid. 803(3)............................................................................................................12
Fed. R. Evid. 901(a).....................................................................................................13, 14
Fed. R. Evid. 901(b)............................................................................................................13
Fed. R. Evid. 902(11)..........................................................................................................18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On January 1, 2025, defendant ignited what came to be known as the Lachman and Palisades Fires.  When he started the fire just after midnight, he was alone in a small clearing on Hidden Buddha Hill in the Pacific Palisades.  He then called 911 and fled the area before the fire department arrived.  When he saw fire trucks responding to the fire, he turned around and followed firefighters back up so that he could take videos of the fire department's response.

Defendant admitted in a recorded interview that he was alone on the hill and that there were no fireworks in the area when the fire started.  He made recorded false statements to investigators when asked where he was when the fire started.  The fire that defendant started became one of largest wildfires in Los Angeles history, destroying thousands of structures and businesses.

After a massive investigation, federal agents discovered evidence related to defendant's obsession with fire, fire-setting behavior, and motive for starting the fire.  For example, a few months before the fire, defendant asked ChatGPT – an AI system that he used as a confidant and diary – to generate and then modify images of a "burning forest" next to "a bunch of people running away."  Defendant also confided to ChatGPT that he had burned a bible and that it felt "liberating."  Later, after he knew he was under investigation for the fire, defendant threatened to burn down his sister's house.

An origin and cause expert will testify that the fire on January 1 was caused intentionally, likely by an open flame applied to combustible material, and that the Palisades Fire on January 7 was a holdover fire that had continued to burn underground.  A location data expert will testify about defendant's precise location before, during, and after the fire, and a DNA expert will testify that defendant's DNA was on a Bic lighter that was found in his car.  An expert in arson behavior will testify that anger- and excitement-driven fire setting is a well-established motive for arson.  Other witnesses will testify about defendant's anger immediately before and after the fire.

1

Trial is scheduled to begin on June 8, 2026.  Although the government has made its best efforts to estimate the number of witnesses and length of trial in this memorandum, those estimates depend more than usual on the Court's rulings on several motions in limine discussed below.

## II.     STATEMENT OF FACTS

### A.     The Lachman and Palisades Fires

In the days leading up to the Lachman Fire, defendant exhibited extreme anger, indignation, and frustration about being unable to find companionship on New Year's Eve.  Defendant was upset about his relationship with K.A., a former co-worker whom he had briefly dated in March 2024.  Between December 26 and 29, 2024, defendant messaged with K.A. about New Year's Eve, and he inputted details of his feelings about K.A. into ChatGPT more than fifty times.  When, on December 30, 2024, K.A. requested space from defendant, he had a visceral reaction: he left her two manic voicemails and entered prompts into ChatGPT expressing his extreme displeasure of her treatment of him.  Defendant reached out to at least two other people to make plans, but one did not remember who defendant was, and the other had plans for which defendant was not invited.

On New Year's Eve 2024, defendant was alone again.  He drove several Uber passengers, almost all of whom remembered (weeks later) that their driver was angry that night.  He dropped off his final Uber passenger in Pacific Palisades and drove to The Summit, a neighborhood where he had lived a few years earlier (during happier times) with his ex-lover.  He parked near the trailhead and messaged his ex-lover, who did not reply.  Just before midnight, defendant hiked up the trail leading to the Hidden Buddha clearing.  Defendant is the only person seen in surveillance videos hiking up the trail; he later told investigators, in a recorded interview, that he was alone on Hidden Buddha Hill – he did not see or hear anyone else.  He recorded a short video on his phone just before midnight showing that he was alone, and listened to a French rap song about despair (parts of the music video for the song, which defendant had watched many times, show

2

the singer lighting things on fire).

Defendant told investigators that he did not see any fireworks on the Hidden Buddha Hill that night.  At around 12:12 a.m., defendant lit the fire in the chapparal just below the Hidden Buddha clearing.  He then watched the fire grow while standing in the Hidden Buddha clearing.  He then started calling 911 multiple times, hiked down the hill, and fled the area in his car before firefighters arrived.  Defendant returned to the area after he saw fire trucks arriving and then took videos of the firefighting efforts.  Defendant did not leave the area until after 2:00 a.m. that morning.

Many of defendant's Uber passengers on December 31, 2024 and January 1, 2025, described defendant as angry, intense, driving erratically, and ranting about being "pissed off at the world" and Luigi Mangione, capitalism, and vigilantism.  On January 24, 2025, when investigators asked defendant why someone might commit arson in the Pacific Palisades, he responded that it would be out of resentment of the rich enjoying their money as "we're basically being enslaved by them" and compared such an act of "desperation" to the murder for which Mangione was charged.

When interviewed by investigators, defendant falsely claimed that he first saw the fire after he was already halfway down the hill walking back to his car.  Based on the geolocation data for defendant's phone, he was still in Buddha Hill clearing (at the top of the hill) watching the fire grow when he called 911.

**B.      Origin and Cause of the Lachman and Palisades Fires**

Derek Hill, an ATF Special Agent and Certified Fire Investigator, will testify that the Lachman Fire started shortly after midnight on January 1, 2025, about 30 feet from where defendant first called 911.  Hill concluded that the fire was started by an open flame applied to combustible material such as a bush.  He will also testify that the Palisades Fire on January 7, 2025, was a holdover from the Lachman Fire that continued to burn underground.

**C.      Additional Expert Testimony**

Jonathan Butta, an ATF Senior Fire Research Engineer, will testify that he

performed various testing and analysis related to the origin and cause analysis.  Butta conducted extensive testing with cigarettes and vegetation (approximately 500 tests) and found that although discrete smoldering was observed in a small portion of the trials (3.8%-12% of the trials), none of the trials resulted in a cigarette igniting a fire.   Butta also conducted field tests to determine the minimum fire size that would have been identifiable on the fire-sensing cameras that captured the start of the Lachman Fire, in order to assess the size of the fire in the footage.  He also analyzed defendant's Bic lighter and found that only 14-38% of the ignitable fluid remained.

ATF Special Agent Kevin Miner, a fireworks expert, will testify as to his opinion that fireworks did not cause the Lachman Fire.  ATF electrical engineer Michael Abraham will testify as to his opinion that powerlines or related causes did not start the fire.  ATF Technical Surveillance Expert Joshua Pickens will testify about his review and analysis of geospatial data, cell site data for defendant's iPhone, 911 caller location data, and RTT/timing advance data in connection with the fire.  DNA expert Heather Leversen will testify regarding her analysis and comparison of the DNA on the Bic lighter seized from defendant's car and DNA seized on a buccal swab from defendant.

**D.    The Defendant**

In December 2024, before the fire, defendant was living alone in an apartment in North Hollywood and working as an Uber driver.  In the months leading up to the fire, he had become increasingly angry with his life and society at large.  For example, in the weeks and hours leading up to the fire, defendant fixated on Luigi Mangione, who allegedly murdered the UnitedHealthcare CEO in New York City on December 4, 2024.  That case triggered polarizing public opinion, with some revering Mangione as a "modern-day Robin Hood" and his conduct as an expression of righteous anger towards the profits made by insurance companies.  On December 12 and 13, 2024, defendant searched the internet for Mangione-related news, using the search terms "free Luigi Mangione," "lets take down all the billionaires," and "reddit lets kill all the billionaires." On January 3, 2025, defendant took a screenshot of an article about Mangione pleading

not guilty.

In April 2025, defendant moved out of his North Hollywood apartment and into his sister's house in Florida because she refused to continue supporting him financially while he lived in California (she is married, with two small children, and has a serious medical condition).  Within two days of moving to Florida, defendant got into a dispute with his sister about a lawsuit he was involved in.  In response, defendant "blew up" and threatened to burn her house down, while yelling statements like "why did you bring me here."  (His sister's family called 911 regarding defendant multiple times during his stay with her, and police responded to the house.)

Defendant's fascination with fire dates back to at least 2018. On November 8, 2018, the massive Woolsey Fire ignited, ultimately burning portions of Los Angeles and Ventura Counties over the next two weeks.  Defendant recently had arrived in Los Angeles with his girlfriend A.M. (the unfortunate circumstances of that move are discussed in the sealed Rule 404(b) briefing).  On November 9, 2018, defendant drove through the Santa Monica and Winnetka areas with A.M. to admire the Woolsey Fire. Defendant told A.M. that he was in awe of the fire and that it was part of history; he told her to take a video of the fire, which she did.

Defendant grew up in a devoutly religious household and he was in frequent conflict with his parents as a result.  In August 2024, defendant burned a bible and later described the act in ChatGPT as "necessary" and "amazing."  On November 17, 2024, defendant photographed the infotainment screen in his car showing a news alert for the FBI offering a $25,000 reward for information about a suspect behind the Northwest ballot box fires.  (When investigators searched defendant's phone pursuant to federal warrants, they found no other images of defendant's infotainment screen depicting news alerts.)  On December 5, 2024, defendant accessed media files of the Line Fire, a wildfire that was ignited by an arsonist on September 5, 2024, and blazed through the San Bernardino area for 110 days, burning over 43,000 acres of land.

On December 29, 2024, just two days before the Lachman Fire, defendant

recorded three videos of fire engines departing LAFD Station No. 27 in the Hollywood area. While recording, defendant said out loud (apparently to himself), "They're coming for you bro, I'm telling you, you got to get that mental fuckin brains in order, and not be liking this craziness, they're on their way, don't worry."

### E.   Defendant's Motive

Dr. Kevin Kelm, an expert in arsonist behavior, will testify that there is a well-established framework, based on various studies and FBI research, that provides several motives related to arsons and commonly observed themes, such as desire to assert power or control. Dr. Kelm will explain – in the hypothetical – why certain behavioral responses or circumstances are consistent with revenge- and excitement-driven arson behavior and are thus relevant in an arson investigation.

### F.   Defendant's Recorded Statements

The government will introduce audio recordings of defendant's statements to law enforcement agents on January 24, 2025 (and, potentially, from his arrest). Those statements are relevant and admissible on a variety of issues at trial, including defendant's location and conduct at the time of the fire as well as his knowledge, intent, plan, and motive.

## III.   CHARGES AND ELEMENTS [1]

Defendant is charged in a three-count indictment with Destruction of Property by Means of Fire in violation of 18 U.S.C. § 844(f)(1) (Count One), Arson Affecting Property Used in Interstate Commerce in violation of 18 U.S.C. § 844(i) (Count Two), and Timber Set Afire in violation of 18 U.S.C. § 1855 (Count Three). (Dkt. 7.)

The elements to prove Destruction of Property by Means of Fire in violation of 18 U.S.C. § 844(f)(1) (Count One) are: (1) defendant maliciously damaged or destroyed by means of fire; (2) a building, vehicle, or other real or personal property; and (3) the building, vehicle, or other real or personal property was, in whole or in part, owned or

---

[1] The parties' are filing both joint and disputed proposed jury instructions.

6

possessed by, or leased to, the United States or any institution or organization receiving federal financial assistance.  18 U.S.C. § 844(f)(1); Togonon v. Garland, 23 F.4th 876, 878 (9th Cir. 2022).

The elements to prove Arson Affecting Property Used in Interstate Commerce in violation of 18 U.S.C. § 844(i) (Count Two) are: (1) defendant maliciously damaged or destroyed by means of fire; (2) a building, vehicle, or other real or personal property; and (3)  the building, vehicle, or other real or personal property was used in interstate or foreign commerce, or in any activity affecting interstate or foreign commerce.  18 U.S.C. § 844(f)(1); Togonon v. Garland, 23 F.4th 876, 878 (9th Cir. 2022).

For purposes of Counts One and Two, an act was done "maliciously" if the defendant either intentionally damaged or destroyed a building, vehicle, or other real or personal property, or if the defendant acted with willful disregard of the likelihood that such damage or destruction would result from his act.  See Togonon v. Garland, 23 F.4th 876, 878 (9th Cir. 2022); United States v. Scharber, 772 F.3d 1147, 1150 (8th Cir. 2014) ("Maliciously" means to act "with willful disregard of the likelihood that damage or injury would result."); United States v. Corona, 108 F.3d 565, 571 (5th Cir. 1997) (noting that maliciously means "acting 'intentionally or with willful disregard of the likelihood that damage or injury would result'"), as modified on denial of reh'g (Apr. 7, 1997); United States v. Gullett, 75 F.3d 941, 947 (4th Cir. 1996) ("the first element of section 844(i) is satisfied if the defendant acted intentionally or with willful disregard of the likelihood that damage or injury would result from his or her acts").

The elements to prove Timber Set Afire in violation of 18 U.S.C. § 1855 (Count Three) are: (1) defendant willfully and without authority set on fire; (2) any timber, underbrush, grass, or other inflammable material; (3) the timber, underbrush, grass, or other inflammable material was upon the public domain or upon any lands owned or leased by, or under the partial, concurrent, or exclusive jurisdiction of, the United States. 18 U.S.C. § 1855; United States v. Velte, 331 F.3d 673, 680 (9th Cir. 2003) (approving § 1855 jury instruction stating that "[t]he government is not required to prove that the

7

defendant knew that [his] acts or omissions were unlawful").

## IV.    TRIAL ESTIMATE OF GOVERNMENT'S CASE-IN-CHIEF [2]

The government presently anticipates calling approximately forty to fifty witnesses during its case-in-chief, which the government estimates will take approximately 7-10 court days.  With stipulations, that number will likely be closer to thirty trial witnesses and 5-7 court days.  The number of witnesses depends heavily on the Court's ruling on the parties' motions in limine related to the Los Angeles Fire Department and the Bonhomme Richard case.  If the Court permits that evidence, the government will need to add numerous additional witnesses to the witness list (likely resulting in several additional trial days).

The defense anticipates calling witnesses, including experts, during the defense case.  The defense estimates that the defense case will take approximately 4-6 court days.

Based on the defense estimates, the government may need to call additional witnesses in rebuttal.  The government does not anticipate that any government witness will require the assistance of an interpreter.

## V.    RELEVANT LEGAL AND EVIDENTIARY ISSUES

### A.    Pending Motions

There are six pending motions in limine: (1) the government's motion to exclude evidence related to the Los Angeles Fire Department; (2) the government's motion to partially exclude defense expert testimony; (3) the government's motion to admit Rule 404(b), state of mind, and inextricably intertwined evidence; (4) the defense's motion to admit evidence related to the Los Angeles Fire Department; (5) the defense's motion to exclude expert testimony related to Dr. Kevin Kelm; and (6) the defense's motion to admit evidence related to the Bonhomme Richard trial.

The motions are all set to be heard on May 13, 2026, at 10:00 a.m.

---

[2] The parties agree.

**B.**    **Hearsay**

The government intends to introduce out of court statements throughout the trial, including defendant's statements.  These statements are either admissible as non-hearsay because they are not offered for the truth of the matter asserted, or they are admissible as an exception to the hearsay rule.  The government also anticipates defendant will seek to introduce certain out of court statements that are inadmissible hearsay, such as his own statements.

1.    Statements of a Party Opponent [3]

A statement offered against an opposing party and was made by the party is admissible as an exclusion from the rule against hearsay under Federal Rule of Evidence 801(d)(2)(A).  For example, defendant's ChatGPT entries, text messages, instant messages, and verbal statements are admissible as statements of a party opponent when offered by the government.  Fed. R. Evid. 801(d)(2)(A).

2.    Then Existing Mental State

A statement of "the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)" is admissible as an exception to the rule against hearsay.  Fed. R. Evid. 803(3).  See, e.g., United States v. Bishop, 291 F.3d 1100, 1110 (9th Cir. 2002) ("Statements of intent to perform a future act are admissible 'state of mind' testimony under Rule 803(3)."); United States v. Astorga-Torres, 682 F.2d 1331, 1336 (9th Cir. 1982) ("Evidence of that intent can then be considered by the jury in determining whether the declarant subsequently performed the intended act.").

3.    Non-Hearsay

Finally, hearsay is an out of court statement offered to prove the truth of the matter asserted in the statement.  Fed. R. Evid. 801(c).  A statement is a person's assertion, which can be oral, written, or nonverbal if intended to be an assertion.  Fed. R. Evid.

---

[3] The defense is not prepared to agree at this time.

9

801(a). Thus, voicemail recordings or text messages from K.A. and others to defendant offered to show the effect on the listener or reader and contextualize defendant's statements are admissible non-hearsay.

### C.      Digital Evidence [4]

The government will seek to introduce a variety of digital evidence throughout trial, including ChatGPT materials, messaging materials, location data, cell phone evidence, and evidence seized from computers. Like other evidence, electronic data, including data seized from digital devices, can be authenticated in a variety of ways, including by an investigator with knowledge of the investigation or by someone with firsthand knowledge of the content or circumstances captured in the data. See Fed. R. Evid. 901(a). Indeed, a witness can authenticate text messages that she personally sent or received. See Fed. R. Evid. 901(b) (a party may authenticate evidence through "[t]estimony [of a witness with knowledge] that a matter is what it is claimed to be").

### D.      Video, Photograph, and 3D Model Evidence [5]

The government intends to introduce videos, photographs, and a 3D model of the Hidden Buddha Hill as evidence at trial. A recording is admissible upon a showing that it is "accurate, authentic, and generally trustworthy." United States v. King, 587 F.2d 956, 961 (9th Cir. 1978). The government need not necessarily call a specific witness to admit a particular video or photograph. Rule 901(a) simply requires that a proponent of evidence make a prima facie showing of authenticity so that a reasonable juror could find "that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Similarly, photographs are generally admissible as evidence. See United States v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977) (photographs of crime scene admissible). Photographs, and the 3D model derived from satellite imaging and other data, should be admitted so long as they fairly and accurately represent the event or object in question. United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978). Photographs may be authenticated by a

---

[4] The defense is not prepared to agree at this time.

[5] The defense is not prepared to agree at this time.

witness who "identif[ies] the scene itself [in the photograph] and its coordinates in time and place."  See Lucero v. Stewart, 892 F.2d 52, 55 (9th Cir. 1989) (internal quotation marks omitted).

### E.   Physical Evidence [6]

In this case, the government's physical evidence includes a Bic lighter and digital devices.  Federal Rules of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Rule 901(a) only requires the government to make a prima facie showing of authenticity or identification "so that a reasonable juror could find in favor of authenticity or identification."  United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991); United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989); United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).  Once the government meets this burden, "the credibility or probative force of the evidence offered is, ultimately, an issue for the jury."  Black, 767 F.2d at 1342.

To be admitted, real evidence (i.e., a physical exhibit) must be in substantially the same condition as when the crime was committed.  The court may admit the evidence if there is "a reasonable probability the article has not been changed in important respects."  United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991).  "The foundational requirement is met by evidence sufficient to allow a reasonable juror to find that the evidence is what its proponent claims."  United States v. Iron, 13 F. App'x 630, 633 (9th Cir. 2001); United States v. Tank, 200 F.3d 627, 630 (9th Cir. 2000).

The government is not required, in establishing chain of custody, to call all persons who may have come into contact with the piece of evidence.  Reyes v. United States, 383 F.2d 734 (9th Cir. 1967).  Alleged defects in the chain of custody go to the weight of the evidence rather than to its admissibility.  United States v. Matta-

---

[6] The defense does not object.

11

Ballesteros, 71 F.3d 754, 769 (9th Cir. 1995), amended on denial of reh'g and reh'g en banc, 98 F.3d 1100 (9th Cir. 1996).  In the absence of evidence of tampering, there is a presumption that public officers have properly discharged their official duties. Harrington, 923 F.2d at 1374.

**F.    Prior Consistent Statements**

Prior consistent statements of a testifying witness may be admissible either to rebut an express or implied charge of recent fabrication or improper motive or influence if the statements were made before the lie arose, or to rehabilitate a witness whose credibility has been attacked on another ground, such as faulty memory.  Fed. R. Evid. 801(d)(1)(B).

**G.    Expert Opinions**

The government will be calling the following experts at trial: (1) Derek Hill to testify regarding the origin and cause of the Lachman and Palisades Fires; (2) Jonathan Butta to testify about testing and analysis he performed in connection with the origin and cause analysis; (3) Michael Abraham to testify that the Lachman and Palisades Fires were not caused by power lines; (4) Joshua Pickens to testify regarding cell site and location data; (5) Heather Leversen to testify regarding her DNA analysis of defendant's Bic lighter; (6) Kevin Miner to testify that fireworks did not cause the Lachman Fire; and (7) Dr. Kevin Kelm to testify regarding his arson behavioral analysis.  Absent a stipulation, the government will also call a French interpreter to translate the French rap song that defendant listened to repeatedly before and after the fire.

The defense has not objected to testimony from Hill, Butta, Abraham, Pickens, Leversen, and Miner, but has filed a motion *in limine* challenging Kelm's testimony.

The defense will be calling two experts to testify at trial: (1) Edward Nordskog regarding fire origin and cause, the LAFD's fire suppression efforts, and arson behavior analysis; and (2) Thomas Guzman regarding the fire origin and cause and the LAFD's fire suppression efforts.  The government has filed a motion *in limine* challenging portions of the proposed expert testimony.

12

**H.** **Cross-Examination of Defendant** [7]

A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues he or she puts in dispute during direct examination. "A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence." United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981). See also, e.g., United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver. Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.") (internal quotations and citation omitted). The scope of cross-examination is within the discretion of the trial court. Fed. R. Evid. 611(b).

Here, if defendant claims he did not start or intend to start the fire, the government will seek to cross-examine defendant about his fire-setting behavior, prior bad acts, state of mind, intent, and other motives which were briefed for the Court in the government's motion in limine related to Rule 404(b), statement of mind, and motive evidence, including his relationships with his ex-girlfriends if defendant claims he has a history of non-violence, peacefulness, or otherwise disclaims intent.

Under the doctrine of impeachment by contradiction, which emanates from Federal Rule of Evidence 607, a party may admit relevant, extrinsic evidence to impeach specific errors or falsehoods in a witness's direct testimony. United States v. Castillo, 181 F.3d 1129, 1132-33 (9th Cir. 1999). The occasion to impeach by contradiction may arise when, on direct examination, a defendant broadly disclaims misconduct, "open[ing] the door for extrinsic evidence to contradict even though the contradictory evidence is otherwise inadmissible under Rules 404 and 608(b) and is, thus, collateral." Id. (quoting 2A Charles A. Wright, et al., Fed. Practice and Procedure, § 6119 at 116–17 (1993)).

Should defendant elect to testify and disclaim misconduct, the government should

---

[7] The defense is not prepared to agree at this time.

13

be allowed to cross examine defendant with extrinsic evidence of defendant's prior bad acts. See, e.g., United States v. Weicks, 362 F. App'x 844, 849-50 (9th Cir. 2010) (defendant's prior arrests for illegal possession of firearms were admissible for impeachment after defendant testified and portrayed himself as someone who avoided being around firearms); United States v. David, 337 F. App'x 639, 640 (9th Cir. 2009) (holding that defendant's "blanket statement . . . that he 'would have never told anyone to falsify a document' opened the door to impeachment with details regarding a prior conviction involving the falsification of receipts"). And if defendant attempts to portray himself as generally law-abiding, the government should be permitted to present evidence directly contradicting such statements. Cf. United States v. Antonakeas, 255 F.3d 714, 724-25 (9th Cir. 2001) (introducing extrinsic evidence testimony about defendant's cocaine sales was not abuse of discretion where defendant "opened the door" to rebuttal testimony by holding himself out as legitimate professional and disavowing any involvement with drugs).

### I.     Summary Charts [8]

The Ninth Circuit has long endorsed the use of summary charts as a "testimonial aid" for the jury. United States v. Wood, 943 F.2d 1048, 1053-54 (9th Cir. 1991). It has also acknowledged that there is no "bright-line rule against admission of summary charts as evidence." United States v. Anekwu, 695 F.3d 967, 981-82 (9th Cir. 2012). Rather, it is within a "district court's discretion" under Federal Rule of Evidence 611(a) to determine whether such exhibits can be admitted. Id. at 982 (citing United States v. Boulware, 470 F.3d 931, 936 (9th Cir. 2006)).

The government anticipates moving into evidence summary charts, including summaries of location data, a summary of defendant's use of the French rap song celebrating fire in December 2025 and January 2025, and defendant's digital search histories. Because the underlying information contained within these charts is

---

[8] The defense is not prepared to agree at this time.

admissible and has been provided to defendant, the charts themselves are admissible as well.  See Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1259 (9th Cir. 1984) (proponent of a summary must establish a foundation that (1) the underlying materials upon which the summary is based are admissible in evidence; and (2) the underlying documents were made available to the opposing party for inspection).

These charts, which the government will provide to defense counsel once completed, will aid the jury in understanding this important evidence.

### J.   Business Records

The government intends to admit certain records under Rule 902(11), including records from Verizon, T-Mobile, AT&T, Uber, OpenAI, YouTube / Google, Meta, Avis, and Apple.  Certified domestic records of regularly conducted activities can be self-authenticating and may therefore be admitted under Rule 803(6), provided certain requirements are met.  See Fed. R. Evid. 902(11).

### K.   Jurisdictional Witnesses [9]

Absent stipulations, the government will be calling a variety of witnesses to testify regarding interstate commerce and federal funding to establish the jurisdictional aspects of 18 U.S.C. §§ 841(f)(1) and (i) and 1855.

### L.   Conditionally Admitting Evidence During Opening [10]

Federal Rule of Evidence 104(b) gives the trial court the discretion to conditionally admit evidence dependent on proof of later facts by the moving party.  Fed. R. Evid. 104(b); see also United States v. Gere, 662 F.2d 1291, 1294 (9th Cir. 1981) ("The trial judge may make a preliminary determination of admissibility or may admit the testimony conditionally, subject to 'connecting up' with the foundation to be eventually laid by the prosecution.").  If the government fails to establish the required foundation for the conditionally admitted evidence, the evidence would be subject to a later motion to strike.  See, e.g., United States v. Watkins, 600 F.2d 201, 204 (9th Cir.

---

[9] The defense is not prepared to agree at this time.

[10] The defense is not prepared to agree at this time.

15

1979).

Here, however, there will be no reasonable dispute that the government will be able to lay the necessary foundation as to the admissibility of its evidence.  Therefore, the government may seek to show certain exhibits in opening statement or with early witnesses prior to seeking to admit the exhibits in order to present a streamlined case. Exhibits may be used by the government in the opening statement, and so long as the opening statement "avoids references to matters that cannot be proved or would be inadmissible, there can be no error, much less prejudicial error." United States v. De Peri, 778 F.2d 963, 979 (3d Cir. 1985); see also United States v. Rubino, 431 F.2d 284, 290 (6th Cir. 1970).  The government intends to identify the photographs and/or videos that it will use in its opening statement for the defense prior to trial.

**M.    Affirmative Defenses, Reciprocal Discovery, and Jury Nullification [11]**

The government requested notice of affirmative defenses (including an entrapment, mental condition or duress, and/or alibi defense) and reciprocal discovery by letter on November 7, 2025, December 12, 2025, January 7, 2026, January 28, 2026, February 4, 2026, March 13, 2026, March 17, 2026, April 1, 2026, April 2, 2026, April 9, 2026, April 13, 2026, and April 24, 2026.  To date, defendant has only provided the government with expert witness disclosures, notice of a "mere presence" defense, and depositions of certain firefighters.

Rule 16 of the Federal Rules of Criminal Procedure creates certain reciprocal discovery obligations on the part of defendants to produce three categories of materials that they intend to introduce as evidence at trial: (1) documents and tangible objects; (2) reports of any examinations or tests; and (3) expert witness disclosure.  Rule 16 imposes on defendants a continuing duty to disclose these categories of materials.  Fed. R. Crim. P. 16(b)(1)(A), (b)(1)(C), and (c).  In those circumstances where a party fails to produce discovery as required by Rule 16, the rule empowers the district court to "prohibit that

---

[11] The defense agrees to comply with its notice and discovery obligations. The defense agrees not to argue for nullification or refer to punishment during trial.

party from introducing the undisclosed evidence," or it may "enter any other order that is just under the circumstances."  Fed. R. Crim. P. 16(d)(2)(C) and (D).  To the extent defendant may attempt to introduce or use any evidence at trial that he has not produced to the government, such documents should be excluded.  See Taylor v. Illinois, 484 U.S. 400, 415 (1988) (defendant's failure to comply with, or object to, government's discovery request before trial justified exclusion of unproduced evidence).

The government also reserves the right to object to any evidence and/or argument relating to any possible jury nullification defense, including concerning punishment or that this is a case that should be tried in state court.  A defendant has no right to present evidence relevant only to such a defense.  United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992); Zal v. Steppe, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring) ("[N]either a defendant nor his attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an element of, the crime charged.").

## VI.    CONCLUSION

The government respectfully requests leave to modify the information this Trial Memorandum, as necessary, in either a supplemental trial memorandum or during the upcoming motion hearing and pretrial conference.

17