TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental Crimes & Consumer Protection Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
DANBEE C. KIM (Cal. Bar No. 350014)
Assistant United States Attorneys
Environmental Crimes & Consumer Protection Section
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3359/8644/6530
Email: mark.williams@usdoj.gov
matthew.o'brien@usdoj.gov
danbee.kim2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN RINDERKNECHT,<br>aka "Jonathan Rinder,"<br>aka "Jon Rinder,"<br><br>Defendant. | No. CR 25-833(A)-AH<br><br><u>GOVERNMENT'S MOTION FOR JURY INSTRUCTION REGARDING THE LOS ANGELES FIRE DEPARTMENT; EXHIBIT</u><br><br>Hearing Date: October 21. 2026<br>Hearing Time: 11:00 a.m.<br>Location: Courtroom of the Hon. Anne Hwang |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Mark A. Williams, Matthew W. O'Brien, and Danbee C. Kim, hereby files its motion for a jury instruction regarding the Los Angeles Fire Department.

This motion is based upon the attached memorandum of points and authorities, the Declaration of Mark A. Williams and exhibit thereto filed concurrently herewith, the

files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 23, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division

/s/
MARK A. WILLIAMS
MATTHEW W. O'BRIEN
DANBEE C. KIM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

On May 20, 2026, over defendant's opposition, the Court excluded all evidence and argument regarding the Los Angeles Fire Department's ("LAFD") fire suppression efforts related to the Lachman or Palisades Fire. The Court held:

> Accordingly, because proximate cause is not an element of the offenses as charged here and, therefore, any evidence of the LAFD's response for purposes of establishing an intervening or superseding cause is irrelevant. The risk of confusion, misleading the jury, and undue delay substantially outweigh any probative value, and, therefore, the Court does exclude any evidence or argument.

(5/20/2026 Transcript at 5:8-14.) The risk of this issue confusing and misleading the jury was central to the Court's decision.

Statements made by jurors after the trial revealed that, despite the Court's ruling, the LAFD's response was the proverbial "elephant in the room" during the trial. Jurors said that questions about the LAFD's fire suppression efforts played a part in their deliberations; the jurors did not have a proper understanding of what they could consider during deliberations. The fact that the fire resurfaced caused jurors to infer that the LAFD, rather than defendant, should be held responsible for the resulting holdover. For example, one juror told the media on the Courthouse steps, "Shouldn't the firemen, and, shouldn't they, like, have known?" about the holdover and said that, even if defendant started the Lachman Fire, "I don't see why everybody else's negligence of doing things incorrectly, where he needs to be responsible for the whole Palisades [Fire]."

The defense's tactics at trial also exacerbated the jurors' confusion. For example, on the first day of testimony, the defense questioned the government's case agent (Special Agent Michael Montevidoni) about whether "anybody" did "anything" about "smoke smoldering and coming out of the ground" in the Lachman Fire burn scar. The jury was left with the misimpression – through the defense's cleverly worded

questioning – that the LAFD did not do enough and was to blame for the Lachman Fire developing into the Palisades Fire.

The defense did not stop there. During cross-examination of retired Certified Fire Investigator ("CFI") Derek Hill, the defense posed multiple questions about witnesses observing smoke or smoldering from the ground after January 1, 2025. This gratuitous line of questioning highlighted a legally irrelevant issue. In closing argument, defense counsel drove this impermissible point home by arguing that "Special Agent Montevidoni testified that right after the Lachman Fire, hikers were up there and saw the ground smoking and smoldering. So, again, I'm not going to tell you how that applies to this or how you should take that and tell you how that should satisfy you beyond a reasonable doubt that this is a holdover fire." (6/23/26 Transcript Vol. 10 at 2451:4-15.)

The defense's tactics were effective: jurors admitted after the mistrial that the LAFD's supposed negligence was a part of their deliberations. That cannot be allowed to happen again. Consistent with the Court's ruling excluding this evidence, the government respectfully requests that the Court include the following instruction with the jury instructions at the end of the upcoming trial:

> You are not to consider whether the Los Angeles Fire Department adequately or inadequately put out the Lachman Fire or Palisades Fire. That is not relevant to your deliberations on the charges against the defendant.

The proposed jury instruction is necessary in order to take this irrelevant, misleading, and inadmissible issue off the table.

On September 16, 2026, the government met and conferred with defense counsel regarding this motion. Likely because the defense wants to replicate the jurors' confusion at the retrial, the defense objected to the proposed jury instruction.

## II. THE DEFENSE'S TACTICS REGARDING THE LAFD MISLED AND CONFUSED THE JURY

On the first day of testimony, the defense began to mislead the jury regarding the LAFD's fire suppression efforts. The defense cross-examined Special Agent Montevidoni as follows:

Q: So you know people were up walking through the Lachman burn scar at least sometime after January 1st after the fire happened. Agreed?

A: Yes. We have witnesses that documented smoldering smoke coming out of the ground.

Q: And when did witnesses see smoke smoldering and coming out of the ground?

A: If I recall correctly, it was between the periods of January 1 and January 7. I can recall specifically January 1 and January 2.

Q: So did anybody do anything about it?

MR. O'BRIEN: Objection, Your Honor.

THE COURT: Sustained. The jury is to disregard.

(6/11/2026 Trial Transcript Vol. 4 at 563:2-15.)

At the next break the government objected that the defense was attempting to blame the LAFD in violation of the Court's pretrial ruling. The Court admonished defense counsel that "there is not going to be any evidence or argument about the fire department acting properly or improperly or any insinuation of such." (Id. at 620:6-8.)

Nonetheless, for no legitimate reason, the defense emphasized that witnesses saw smoke or smoldering coming out of the ground during its cross-examination of CFI Derek Hill. In fact, it was the defense's first line of questioning. Defense counsel took a line in a report, which stated that the underground burning in the specific origin area of the Palisades Fire (which was outside the boundaries of the Lachman burn scar) was not visible to witnesses until it surfaced, and questioned CFI Hill about witnesses observing smoke in the ***Lachman burn scar***. This clever framing was an attempt to emphasize an improper question in the jurors' minds that the defense already had planted – under the

guise of impeachment when there was no fact to impeach. In the confusion, the defense asked the following:

> Q: Well, are you aware that there has been testimony from the lead case agent in this case that hikers saw the burn scars still smouldering and smoking in the immediate aftermath of the Lachman Fire?
>
> A: I don't have any information that – that anybody hiking in the area saw that occurring in the specific origin area that we had identified for the Palisades Fire.
>
> Q: So you don't have any test – any knowledge – or personal knowledge that in the immediate aftermath of the Lachman Fire, witnesses saw the burn scars still smoking and smoldering?
>
> A: I can't – that's not really a yes-or-no question. I can elaborate on it, if you'd like.
>
> Q: No I'm just asking you if you have personal knowledge if witnesses in the immediate aftermath of the Lachman Fire still saw the burn scar smoking and smouldering, if you know?
>
> A: In some parts of the burn scar, yes.
>
> Q: And in fact, people took videos of smoking and smouldering, didn't they?
>
> A: Yes.
>
> Q: So you would agree with me that visible is opposite of invisible?
>
> A: But this area – this portion of the report is referring to the specific origin area of the Palisades, not – and the information that we have as part of the investigation does not, I guess, show that there was any identified smouldering or smoking, I guess, as you're referring to it in this area. In other parts of the Lachman burn scar, yes.
>
> Q: So the smoking and smouldering was detected at the burn scar after the fire; am I right?
>
> A: In parts of it, yes.

(6/17/2026 Trial Transcript Vol. 12 at 1346:2-1347:10.)

Notwithstanding the Court's ruling and earlier admonishment regarding the cross examination of Special Agent Montevidoni, the defense then emphasized this very testimony in closing argument[1]:

---

[1] Blaming the LAFD has been consistent theme from defense counsel. For example, in October 2025, he told the press "why are they blaming [defendant] for

(footnote cont'd on next page)

> You know that's not true because Special Agent Montevidoni testified that right after the Lachman Fire, hikers were up there and saw the ground smoking and smoldering. **So, again, I'm not going to tell you how that applies to this or how you should take that and tell you how that should satisfy you beyond a reasonable doubt that this is a holdover fire.** However, visible smoking and smoldering, taking videos the day after the fire or the day -- two days after the fire is not invisible. It's not undetected. It's not unseen. It's the opposite of all of that. It is visible. It is detected, and it is seen in the immediate aftermath of the Lachman Fire.

(6/23/26 Trial Transcript Vol. 10 at 2451:4-15 (emphasis added).)

Jurors heard this and were left confused about how the LAFD's fire suppression efforts impacted defendant's culpability. One juror, who voted not guilty, told the press immediately after the trial:

> I'm not saying I don't think there was enough evidence to say he started the first fire…But say he did? I don't see why everybody else's negligence of doing things incorrectly, where he needs to be responsible for the whole Palisades [Fire].[2]

When asked about the holdover fire, the same juror said "shouldn't the firemen, and, shouldn't they, like, have known?" [3] And when asked about her views of the LAFD, the juror stated:

> I just feel, like, such negligence. Like, honestly, I hate saying that, because it didn't happen to me, but there were so many people up there that said they did see smoldering, so why wasn't it taken care of? [4]

A second juror echoed the first juror's sentiment. She explained after the mistrial that "the holdover fire wasn't confusing, it's just, it, it was more problematic thinking

---

whatever the fire department didn't do?" *See* https://www.reuters.com/legal/government/arson-suspect-deadly-los-angeles-palisades-fire-pleads-not-guilty-2025-10-23/

[2] https://abc7.com/post/jonathan-rinderknecht-judge-declares-mistrial-arson-trial-palisades-fire-suspect/19388660/; *see also* https://www.youtube.com/watch?v=-Hdo7z-lcqI at 0:51.

[3] *See* https://www.youtube.com/watch?v=-Hdo7z-lcqI at 2:01.

[4] *See* https://www.youtube.com/watch?v=-Hdo7z-lcqI at 8:11.

about the fire department and their…Their negligence in it, you know?" (Exhibit 1 at 5.[5])

## III. THE PROPOSED JURY INSTRUCTION IS NECESSARY

"A trial court is given substantial latitude in tailoring jury instructions so long as they fairly and adequately cover the issues presented." *United States v. Soulard*, 730 F.2d 1292, 1303 (9th Cir. 1984); *Gilbrook v. City of Westminster*, 177 F.3d 839, 860 (9th Cir. 1999) (same); *United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir. 1992) (same); *People of Territory of Guam v. McGravey*, 14 F.3d 1344, 1346 (9th Cir. 1994) (even imperfect jury instructions "are not a basis for overturning a conviction absent a showing that they constitute an abuse of the trial court's discretion"). "A trial judge has considerable discretion in choosing the language of an instruction so long as the substance of the relevant point is adequately expressed." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

Trial courts also have a duty to clear up juror confusion:

> [W]hile it is certainly true that '[w]hen a jury makes explicit its difficulties' by, for example, asking a question, the trial court 'should clear [the jury's difficulties] away with concrete accuracy,'…the precise manner by which the court fulfills this obligation is a matter committed to its discretion.

*Arizona v. Johnson*, 351 F.3d 988, 994 (9th Cir. 2003) (cleaned up). Jury nullification would necessarily result (as it did here) without adequate jury instructions to guide deliberations. In emphasizing this point, courts have noted that:

> Inasmuch as no juror has a right to engage in nullification—and, on the contrary, it is a violation of a juror's sworn duty to follow the law as instructed by the court—trial courts have the duty to forestall or prevent such conduct, whether by firm instruction or admonition…

*Merced v. McGrath*, 426 F.3d 1076, 1079-80 (9th Cir. 2005) (citing *United States v. Thomas*, 116 F.3d 606, 616 (2d Cir. 1997)).

---

[5] Exhibit 1 is the draft transcript from the interview with the juror. It has been marked subject to the protective order and is filed under seal for the Court's review.

The LAFD's conduct became a confusing and misleading issue during trial that impacted the jury's deliberations. During witness testimony and again in closing, the defense alluded to the LAFD's fire suppression efforts and told the jury "I'm not going to tell you how that applies to this or how you should take that and tell you how that should satisfy you beyond a reasonable doubt that this is a holdover fire." (6/23/26 Trial Transcript Vol. 10 at 2451:4-15.) Two jurors indicated that during deliberations, the jury considered how the LAFD's conduct might impact defendant's liability. One of the jurors, who voted not guilty, bluntly stated "I don't see why everybody else's negligence of doing things incorrectly, where he needs to be responsible for the whole Palisades [Fire]." This juror adopted the intervening/superseding cause defense that the Court excluded from trial because, in her own words, she did not "see why" she could not do so.

The defense's convoluted closing argument confirmed its strategy. The fact that witnesses saw smoke or smoldering above the ground **supports** the government's theory that the subsequent fire was a classic holdover. Despite this logical inference **favoring** the government, the defense highlighted the smoldering in closing because by doing so, he could remind the jury that someone should have intervened to put out the holdover fire. Indeed, stating "I'm not going to tell you how that applies to this or how you should take that" was the defense's attempt to stop shy of explicitly saying the LAFD (not defendant) was at fault for improperly responding to (in the defense's words) a "not invisible," "not undetected," "not unseen," "visible" fire that continued to burn and spread. This was a transparent attempt to circumvent the Court's ruling prohibiting such argument and to influence the verdict with an impermissible and excluded defense theory.

The same issue will be present in the retrial. Recently, the defense informed the government that it may be calling a state park ranger to testify about smoldering in the Lachman Fire burn scar. Even if the park ranger's testimony were somehow relevant (the government has serious doubts), the park ranger's testimony would again raise the

possibility in jurors' minds that the LAFD did something wrong or is to blame for the fires. The jury must be instructed that they are not to consider the adequacy of the LAFD's fire suppression efforts when deliberating about the case.

The proposed jury instruction is narrowly tailored and directed at the LAFD's fire suppression efforts, which will not impact the defense's other arguments. The instruction will ensure that the jury is not misled and confused regarding inadmissible defenses (i.e., superseding/intervening negligence), the key concern that the Court had when it excluded this evidence from trial.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court give the requested jury instruction at the upcoming trial.