Steven Haney Esq., *Pro Hac Vice*
Haney Law Group, PLLC
22815 Kelly Rd.
Eastpointe, MI 48021
Telephone: (248) 414-1470
E-Mail: steve@haneygroup.net

Attorneys for Defendant

Jacob A. Gillick, Esq., SBN 312336
Gillick Legal, APC
777 S. Alameda, 2nd Floor
Los Angeles, CA 90021
Telephone: (858) 250-0656
E-Mail: JGillick@GillickLegal.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN RINDERKNECHT<br><br>Defendants. | Case No. 2:25-cr-00833-AH<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE PORTIONS OF GOVERNMENT EXHIBIT 1662A - TEXT MESSAGES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF STEVEN A. HANEY, SR.**<br><br>[FED. R. EVID. 104, 106, 401-403, 404(b), 901]<br><br>Hearing Date: October 22, 2026<br>Hearing Time: 10:00 a.m.<br>Courtroom: 9C<br>Hon. Anne Hwang<br>Trial Date: November 2, 2026 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 22, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9C of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California, Defendant Jonathan Rinderknecht, by and through counsel, will and hereby does move this Court in limine, pursuant to Federal Rules of Evidence 104, 106, 401, 402, 403, 404(b), and 901, for an order:

(1) excluding the December 31, 2024 message content of Government Exhibit 1662A, and any testimony, argument, or reference concerning it, including the messages the government attributed to the defendant at the first trial;

(2) in the alternative, excluding Exhibit 1662A in its present, undifferentiated 136-page form and precluding the exhibit from being published wholesale or provided to the jury during deliberations;

(3) requiring the government, within seven days of the Court's order, to designate by report page and individual message each communication within Exhibit 1662A it intends to offer at trial, with defense objections and counter-designations due seven days after the government's designations, and any remaining disputes resolved before trial;

(4) requiring the government, as to each designated message it attributes to the defendant, to establish a message-level foundation under Rule 901 as to authorship, with authentication resolved by the Court under Rule 104(a) outside the presence of the jury and before any reference to the messages is made to the venire or the jury;

(5) excluding outright, and not in the alternative, under Rules 403 and 404(b), and regardless of authentication, the epithets, slurs, and sexually degrading content within the December 31, 2024 stream, in all forms, including through witness testimony, publication, examination, and argument;

(6) directing that any messages admitted be compiled into an excerpt exhibit

limited to those messages, so that the 136-page report is not itself published or provided to the jury, with the usage logs, timestamps, and device-attribution records of Exhibit 1662A preserved and unaffected by this Motion; and

(7) confirming that Rule 106 applies to any designated message, such that other messages from the same thread that in fairness ought to be considered at the same time are admitted contemporaneously upon defense counter-designation, including the November 16, 2024 apology-and-acceptance exchange.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Steven A. Haney, Sr., the pleadings and records on file in this action, including the record of the first trial, and such further evidence and argument as may be presented at or before the hearing. This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on September 16, 2026.

DATED: September 25, 2026

**HANEY LAW GROUP, PLLC**

By: /s/ Steven A. Haney, Sr.
Steven A. Haney, Sr.
(Mich. Bar No. P63947)
Attorney for Defendant Jonathan Rinderknecht

## TABLE OF CONTENTS

I. INTRODUCTION 1

II. FACTUAL BACKGROUND 2

III. ARGUMENT 3

A. The Court Should Resolve Authentication First, Because the Government Cannot Show the Defendant Authored the Messages 3

B. The Absence of an Objection at the First Trial Is No Bar to Exclusion at the Retrial 4

C. The Messages Are Propensity Evidence, and the "Motive" and "State of Mind" Labels Cannot Save Them 5

D. Rule 403 Independently Requires Exclusion, and the Stipulation Offer Eliminates the Claimed Probative Value 6

E. In the Alternative, and Only as to Material Other Than the December 31 Epithets, the Court Should Order Designation, a Rule 104(a) Hearing, and Rule 106 Completeness 8

IV. CONCLUSION 9

# TABLE OF AUTHORITIES

## CASES


*Arizona v. California*, 460 U.S. 605 (1983) 4

*Huddleston v. United States*, 485 U.S. 681 (1988) 5

*Luce v. United States*, 469 U.S. 38 (1984) 4

*Michelson v. United States*, 335 U.S. 469 (1948) 5

*Old Chief v. United States*, 519 U.S. 172 (1997) 7

*United States v. Ayers*, 924 F.2d 1468 (9th Cir. 1991) 5

*United States v. Bailleaux*, 685 F.2d 1105 (9th Cir. 1982) 5, 6

*United States v. Bensimon*, 172 F.3d 1121 (9th Cir. 1999) 4

*United States v. Browne*, 834 F.3d 403 (3d Cir. 2016) 3

*United States v. Hitt*, 981 F.2d 422 (9th Cir. 1992) 7

*United States v. Mayans*, 17 F.3d 1174 (9th Cir. 1994) 6

*United States v. Tank*, 200 F.3d 627 (9th Cir. 2000) 3

*United States v. Vayner*, 769 F.3d 125 (2d Cir. 2014) 3

*United States v. Vizcarra-Martinez*, 66 F.3d 1006 (9th Cir. 1995) 6

*United States v. Vo*, 413 F.3d 1010 (9th Cir. 2005) 5


## STATUTES


18 U.S.C. § 844(f)(1) 5

18 U.S.C. § 844(i) 5


## RULES


Fed. R. Evid. 104(a) 2, 4, 8

Fed. R. Evid. 106 2, 3, 8, 9

Fed. R. Evid. 403 passim

Fed. R. Evid. 404(b) 2, 4, 5, 6

Fed. R. Evid. 901 1, 2, 4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

At the first trial, which ended in a mistrial, the government published Government Exhibit 1662A to the jury, which was a 136-page Cellebrite extraction report containing a stream of text messages the government represented were sent by Defendant Jonathan Rinderknecht.

The centerpiece of this evidence presented to the jury was a December 31, 2024 stream of messages sent to a telephone number, ending more than twenty hours before the Lachman Fire ignited.

It was offered that the timing of these text messages reflected the rage and anger of an arsonist who would commit the charged crimes. These messages were heavily relied upon by the Government to establish the motive and state of mind of the Defendant and were introduced to the jury as such.

No interpretation of those messages changes what they are. Their content is gendered, misogynistic, and sexually degrading, and it includes messages denigrating the female recipient by reference to her immigration status and national origin.

At page 74, the sender uses the phrase “immigrant slave.” The government offered these messages so the jury could conclude that a man who would type those words is a man who would set a hillside on fire. That inference should not be put before the second jury.

Three independent grounds keep that material from the second jury.

First, authentication: the government’s own report records the sending identity of the December 31 messages not as the defendant but as “Sabrina (owner),” while attributing other accounts on the same device to him by name. The report also shows messages reaching the device from a second telephone number, and shows the recipient replying, in real time, that the sender had the wrong number and did not know whom he was addressing. Rule 901 demands

evidence sufficient to support a finding of authorship, not an agent's attribution that is internally inconsistent on its face.

Second, Rule 404(b): cruel words to a person the government identifies as a former girlfriend prove nothing about a fire on public parkland except through the forbidden inference that a bad man does bad things. That is the principle this Court applied when it excluded other evidence offered for the same purpose: the alleged statement about burning his sister's house, the Bible-burning prompts, and the ChatGPT fire images.

Third, Rule 403: the defendant renews his offer to stipulate that the relationship had ended, that its end was acrimonious, and that it was emotionally significant to him on December 31, 2024. That stipulation supplies every legitimate ounce of "state of mind" value the messages could carry and leaves the slurs nothing to do but inflame the jury.

## II. FACTUAL BACKGROUND

Government trial Exhibit 1662A is a Cellebrite Physical Analyzer extraction report of a Samsung Galaxy S24 recovered by law enforcement, generated January 26, 2025, running 136 pages of usage logs, chat records, native SMS records, and account and media records.

Two clusters of material matter. The first is a November 16, 2024 exchange in which the sender transmits a lengthy apology that the recipient accepts, writing that she wishes him well and holds no hard feelings.

The second is the December 31, 2024 messages: from 2:57:47 a.m. to 3:42:44 a.m., a stream of abusive outgoing messages, punctuated by incoming replies stating that the sender had the wrong number. The last of them precedes ignition of the Lachman Fire, at approximately 12:12 a.m. on January 1, 2025, by more than twenty hours. No message in either references fire, ignition, the Pacific Palisades, Topanga State Park, or any charged conduct.

Four features of the government's own exhibit bear on authentication. First,

every outgoing row in the native-messages section records the sending participant as a number ending in -7174, labeled "Sabrina (owner)." The same report attributes the Facebook Messenger account on that device to "Jonathan Rinderknecht (owner)" and the ChatGPT account to "J R (owner)." The report thus assigns one device three owner identities, and the government has never explained the one attached to the messages at issue.

Second, the November 16 apology arrived at the device as an incoming message from a different number, ending in -0454, at 7:20:43 p.m., and went out from the device ten minutes later. Third, the usage log reflects extensive use of TextNow, which supplies users additional telephone numbers.

Fourth, and most directly, the recipient did not know who was writing to her. On November 16 she wrote that the number was unfamiliar; on December 30 she asked who was texting her; and on December 31, twice within four minutes, she wrote that the sender had the wrong number and was describing someone else.

## III. ARGUMENT

### A. The Court Should Resolve Authentication First, Because the Government Cannot Show the Defendant Authored the Messages.

Authentication presents two questions not addressed prior to or at Trial One. First, whether the device and phone number can be attributed to the defendant. Second, whether authorship of particular messages can be. The first does not prove the second. *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000), requires a foundation connecting the defendant to the communications offered against him. *United States v. Vayner*, 769 F.3d 125, 131–32 (2d Cir. 2014), reversed where the government offered a page bearing the defendant's name and photograph without proof he created it; and *United States v. Browne*, 834 F.3d 403, 410–13 (3d Cir. 2016), requires circumstantial evidence of authorship beyond account association. Devices are shared and threads contain the words of every participant; authorship is a factual question requiring evidence

"sufficient to support a finding." Fed. R. Evid. 901(a).

The government cannot clear that bar without contradicting its own exhibit, which labels the sending identity "Sabrina," records a second number the government has never tied to the defendant, reflects a second-number application on the device, and captures the recipient writing in real time that the sender had the wrong number.

The defense does not ask the Court to find that the defendant authored nothing. It asks the Court to hold the government to its Rule 901 burden and to decide the question under Rule 104(a) outside the jury's presence, before the words are offered to the jury in open court. The sequencing is the relief: if the foundation fails afterward, no instruction unrings the bell.

**B. The Absence of an Objection at the First Trial Is No Bar to Exclusion at the Retrial.**

The government may argue that the defense waived this objection by not raising it at the first trial. It did not. No objection means no ruling. The Court was never asked to decide whether the December 31 content of Exhibit 1662A was authenticated, or whether it was admissible under Rules 403 and 404(b), and it did not decide those questions. The law-of-the-case doctrine carries a decision forward to "the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). It has nothing to carry forward on an issue no one presented.

Nor would an in limine posture from the first trial bind the Court now. In limine rulings are preliminary and remain subject to change as the case unfolds. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce v. United States*, 469 U.S. 38, 41–42 (1984)). Here there is no prior ruling to revisit at all; the question is presented for the first time.

What has changed is the record. Counsel's post-trial review of the exhibit surfaced the "Sabrina (owner)" attribution, the second telephone number, and the

recipient's contemporaneous statements that the sender had the wrong number. The government addressed none of them when it attributed the messages to the defendant through agent testimony at the first trial.

**C. The Messages Are Propensity Evidence, and the "Motive" and "State of Mind" Labels Cannot Save Them.**

Rule 404(b)(1) forbids other-acts evidence offered to show action in conformity with character. The rule is one of inclusion except where the evidence tends to prove only criminal disposition. *United States v. Ayers*, 924 F.2d 1468, 1472–73 (9th Cir. 1991). That exception decides this motion. The government's theory is linear. It asserts that defendant allegedly sent cruel messages to a former girlfriend, so he was an angry, hateful man. Therefore, he is the kind of man who would ignite a hillside more than twenty hours later. Every link in that chain is character. *See Michelson v. United States*, 335 U.S. 469, 475–76 (1948).

Under *Huddleston v. United States*, 485 U.S. 681, 686 (1988), and *United States v. Vo*, 413 F.3d 1010, 1018–19 (9th Cir. 2005), before admitting other-act evidence, the threshold inquiry a court must make is whether that evidence is probative of a material issue other than character.

The December 31 messages fail materiality and similarity outright. Other-act evidence must be offered "to prove an element of the charged offense that is a material issue in the case." *United States v. Bailleaux*, 685 F.2d 1105, 1110 (9th Cir. 1982). Anger and hateful language toward a former girlfriend is not an element of 18 U.S.C. § 844(f)(1) or 18 U.S.C. § 844(i), and no message references fire or anything resembling the charged conduct. Motive means motive to do the charged act. Anger at a person with no connection to Topanga State Park is not a motive to burn a hillside.

The government must also "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994) (citation omitted). Where the

government's theory turns on the defendant's mental state, the Ninth Circuit requires a logical connection between the other act and the mental state at issue in the charged offense. *Id.* (knowledge); *see also United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1014 (9th Cir. 1995).

The Court has already applied these principles in this case, excluding under Rules 403 and 404(b) the alleged statement concerning the defendant's sister's house, the ChatGPT prompts concerning Bible burning, and the ChatGPT fire images.

The December 31 messages, which the government has not shown the defendant wrote, are less relevant than that excluded evidence and at least as inflammatory. They reference burning nothing, they are directed at a person with no connection to any property at issue, and their content invites a verdict on the sender's character rather than on the evidence of arson.

Consistency compels the same ruling. Rule 404(b)(3) also obliges the government to articulate the permitted purpose and the supporting reasoning, and the defense asks the Court to hold it to that obligation message by message, using Exhibit 1662A. The chain does not survive being written down, because every version passes through "he is a hateful man."

**D. Rule 403 Independently Requires Exclusion, and the Stipulation Offer Eliminates the Claimed Probative Value.**

Unfair prejudice is "that aspect of the evidence which makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir. 1982) (emphasis omitted).

That describes this material exactly. Slurs denigrating a woman by immigration status and national origin carry prejudice of a categorically different kind than ordinary profanity. They in fact invite and encourage jurors to convict a

bigot rather than adjudicate an arson. That is the "undue tendency to suggest decision on an improper basis" Rule 403 exists to prevent. *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Fed. R. Evid. 403 advisory committee's note).

Against that prejudice stands no probative value the defendant has not already conceded. *Old Chief* directs the Court to weigh the availability of alternative means of proof and to discount the probative value of the government's preferred item of evidence where a less prejudicial alternative supplies the same probative value. *Id.* at 182–85, 191–92.

The defendant offers to stipulate: (1) that his relationship with the recipient had ended before December 31, 2024; (2) that its end was acrimonious; and (3) that the relationship and its end were emotionally significant to him on December 31, 2024. That gives the government the whole of any legitimate emotional-state evidence. The government will answer that it is ordinarily entitled to prove its case with evidence of its own choosing. *Id.* at 186–89. That principle protects evidence that tells a part of the story a stipulation cannot. Here, once the stipulation is in, the only thing the words themselves add is the slurs. Under Rule 403, relevant evidence is excluded when its probative value is "substantially outweighed" by the danger of unfair prejudice or misleading the jury; and where the evidence is of "very slight (if any) probative value, it is an abuse of discretion to admit it if there is even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

**E. In the Alternative, and Only as to Material Other Than the December 31 Epithets, the Court Should Order Designation, a Rule 104(a) Hearing, and Rule 106 Completeness.**

The relief requested in this section is directed to the remainder of a 136-page extraction report. To be clear, it is not directed to the December 31, 2024 epithets, slurs, and sexually degrading content. As to that content the defense does

not ask the Court to sanitize, redact, excerpt, or limit. It asks the Court to exclude it, in every form, and nothing in this section may be read as consent to its admission in any form, redacted or otherwise.

If the Court is not prepared to exclude the remaining message content outright, that material still cannot come in as a unit, because it is not a unit. A 136-page extraction report is hundreds of discrete out-of-court statements, each with its own author, its own relevance, and its own hearsay posture. Blanket admission asks the Court to rule on all of them at once and hands the deliberating jury a browsing file no witness ever addressed.

The government should therefore be required to designate, by report page and record number, each message it intends to offer, on a schedule that permits objection and counter-designation before trial rather than at sidebar.

As to each designated message the government attributes to the defendant, authorship should be resolved by the Court under Rule 104(a), outside the presence of the jury, and before the message is shown or read to the venire or the jury. Authentication is a question for the Court, and words of this kind cannot be unheard once a juror has heard them.

The incoming messages carry an added defect. They are a third party's out-of-court statements, and to the extent the government offers them for their truth, it has identified no hearsay exception. The defense relies on the recipient's replies for a different purpose: not for the truth of anything she wrote, but for what they show about her state of mind at the time, namely that she did not know who was writing to her.

Rule 106 applies to any message the government designates. Other messages in the same thread that in fairness ought to be considered at the same time should be admitted contemporaneously upon defense counter-designation, including the November 16, 2024 exchange in which the sender apologized, the recipient accepted, wrote that she wished him well, and said she held no hard

feelings. That exchange sits six weeks before the charged conduct, and it is contained in the government's own exhibit.

The defense does not move to exclude the exhibit's usage logs, timestamps, or device-attribution records, and Exhibit 1662A identifies every entry by page and record number, so the Court may adopt this relief with precision.

## IV. CONCLUSION

The Court should exclude the December 31, 2024 message content of Government Exhibit 1662A, which would include the epithets, slurs, and sexually degrading content, together with any testimony, argument, or reference to it, in every form. As to the remainder of the exhibit, and only in the alternative, the Court should order the designation, authentication, and completeness relief described above.

DATED: September 25, 2026

HANEY LAW GROUP, PLLC

By: /s/ *Steven A. Haney, Sr.*
Steven A. Haney, Sr. (Mich. Bar No. P63947)
*Attorney for Defendant Jonathan Rinderknecht*

**DECLARATION OF STEVEN A. HANEY, SR.**

I, Steven A. Haney, Sr., declare:

1. I am counsel of record for Defendant Jonathan Rinderknecht, admitted pro hac vice before this Court. I have personal knowledge of the facts stated below and could competently testify to them.

2. Government Exhibit 1662A is a 136-page Cellebrite Physical Analyzer extraction report generated January 26, 2025. It was published to the jury at the first trial, which ended in a mistrial.

3. The defendant offers to stipulate that his relationship with the recipient of the December 31, 2024 messages had ended before that date, that its end was acrimonious, and that it remained emotionally significant to him on that date.

4. Pursuant to Section A.5 of this Court's Standing Order for Criminal Cases Assigned to Judge Anne Hwang, generative artificial intelligence was used to generate portions of the foregoing, including formatting of the Notice of Motion and Memorandum of Points and Authorities.

5. I have reviewed the source material for all content so generated and have verified that it is accurate, including by independently confirming the existence, citation, holding, and pinpoint page of every legal authority cited. The artificially generated content complies with my obligations under Rule 11.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 25, 2026, at Eastpointe, Michigan.

/s/ Steven A. Haney, Sr.
Steven A. Haney, Sr. (Mich. Bar No. P63947)