STEVEN A. HANEY, SR. (Mich. Bar No. P63947)
Admitted Pro Hac Vice
HANEY LAW GROUP, PLLC
22815 Kelly Road
Eastpointe, Michigan 48021
Telephone: (248) 414-1470
Email: Steve@haneygroup.net

Attorney for Defendant
JONATHAN RINDERKNECHT

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN RINDERKNECHT,<br>aka "Jonathan Rinder,"<br>aka "Jon Rinder,"<br><br>Defendant. | Case No. 2:25-CR-00833(A)-AH<br><br>**DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE TO ADMIT PREVIOUSLY EXCLUDED EVIDENCE (DKT. 273); DECLARATION OF STEVEN A. HANEY, SR.**<br><br>[Fed. R. Evid. 403, 404(b)]<br><br>Hearing Date: October 22, 2026<br>Time: 10:00 a.m.<br>Courtroom: 9C<br>Hon. Anne Hwang<br><br>Trial Date: November 2, 2026 |

Defendant Jonathan Rinderknecht, by and through counsel, submits this Opposition to the Government's Motion in Limine to Admit Previously Excluded Evidence Regarding Defendant's Fixation on Fire (Dkt. 273), which seeks to admit at the retrial four items this Court excluded before the first trial: the July 2024 ChatGPT images, an August 2024 Bible burning, a November 2024 statement

reflecting on it, and, conditionally, an April 2025 threat to burn the house of Mr. Rinderknecht's sister.

This Opposition is based on the attached Memorandum of Points and Authorities, the Declaration of Steven A. Haney, Sr., the Reporter's Transcripts of the June 2026 trial, the files and records of this case, and such further argument as the Court may permit.

Dated: October 7th, 2026

Respectfully submitted,
HANEY LAW GROUP, PLLC
/s/ Steven A. Haney, Sr.
Steven A. Haney, Sr. (P63947)
Attorney for Defendant Jonathan Rinderknecht

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Before the first trial, this Court excluded the July 2024 ChatGPT images under Rule 403, and the August 2024 Bible burning, the November 2024 statement reflecting on it, and the April 2025 threat against Mr. Rinderknecht's sister under Rules 404(b) and 403.

During the first trial the government asked the Court, again and again, to reverse those rulings on the theory that the defense had opened the door. The Court took up that request on at least five occasions, with the transcript in hand and the specific questions before it, and denied it every time. The Court found the door opened once, to one unrelated item, the "kill the billionaires"/DoorDash material, and never to any item now at issue and the subject of the government's Motion.

The government now asks that a different jury see that evidence because of what happened in front of the last one. The motion should be denied for three independent reasons.

First, the exclusion orders are the law of this case, and the government offers none of the recognized grounds for disturbing them.

Second, nothing said to the June 2026 jury can mislead the jury sworn for the second trial in November, so there is nothing for the excluded evidence to correct.

Third, the government's theory has already been decided, by this Court, on this record, against the government.

## II. THE RECORD

The government concedes the starting point, which is that the items, now sought for admission, were excluded before the first trial. Dkt. 273 at 4. What happened to those rulings at trial, quoted from the Reporter's Transcripts:

| Tr. cite | Government's request | The Court's ruling |
|---|---|---|
| Vol. 4, 641:9– | Defense cross elicited "no evidence | "Well, the first two do not because |

| | | |
|---|---|---|
| 643:18 (June 11, 2026) (Montevidoni redirect, sidebar) | about the crime of arson" and no evidence of "payback"; "[t]hat opens the door to the threats to burn down his sister's house as well as the Bible burner." (641:17–22) | they were limited to as of this case." (641:23–24) The Court reserved on "payback" "given the extreme nature of this evidence." (643:4–7) The only door found open was the "kill the billionaires"/DoorDash material. (643:10–18) |
| Vol. 5, 706:19–713:23 (June 12, 2026) (outside the jury) | Having reviewed the transcript, the government argued that the questions at Tr. 527, 529 and 532 "clearly opened the door" to the Bible burning and the sister's-house threat. (707:1–709:13) | "[A]lthough there were questions that were certainly broad, I do not believe that the defense has opened the door such that the testimony should be reopened." (712:15–22) The Court set the boundary for the balance of the trial. (712:23–713:23) |
| Vol. 5, 914:19–917:1 (June 12, 2026) (outside the jury) | "[A]t this point, it's intentional. … [T]he Government renews its request to admit the pieces of evidence that we discussed previously." (915:4–7) | "[T]hat does not open the door to now acts of Bible burning and threats to a sister. That line of questioning does not open the door." (915:24–916:2) |
| Vol. 9, 2032:3–2036:18 (June 22, 2026) (Nordskog cross, sidebar) | The government sought to "go through the data that shows this is arson, which includes search warrant information and ChatGPT messages." (2032:15–2033:1) | "[T]hat doesn't mean now that you open it up to everything else that he could have reviewed." (2033:13–18) "[Y]ou are not going to ask questions that elicit opinions about any evidence that was not admitted." (2034:25–2035:2) |
| Vol. 9, 2053:4–2058:18 (June 22, 2026) (morning recess) | Government counsel: "I don't intend to go into anything that has not been admitted during this trial." (2054:2–5) | The only door found open was the "killing billionaires" evidence. (2055:19–24) "I don't want any issues with excluded evidence. It has no place at this stage in this trial." (2056:25–2057:2) |

The motion quotes the Montevidoni questions at Tr. 527–532 as if they were new. Dkt. 273 at 5, 18, 20–21. They are the same questions the government put before the Court on June 12, and the Court ruled on them. Vol. 5, 707:1–709:13, 712:15–22. The motion does not mention those rulings.

## III. ARGUMENT

### A. The Exclusion Orders Are the Law of This Case, and the Government Identifies No Ground to Revisit Them.

A court's decision on a question governs the same question at later stages of the same case. *Arizona v. California*, 460 U.S. 605, 618 (1983). Courts should be loath to revisit their own prior rulings absent extraordinary circumstances. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).

The Ninth Circuit permits a court to depart from the law of the case only where the first decision was clearly erroneous, an intervening change in the law has occurred, the evidence is substantially different, other changed circumstances exist, or a manifest injustice would otherwise result. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). Departing from the law of the case without one of those conditions is an abuse of discretion. *Id.* And "[i]n this circuit, a mistrial is not cause for an exception." *Id. Alexander* is this case: after a hung jury and a mistrial, the government persuaded the court to revisit a pretrial order excluding evidence and admit that evidence at the retrial. The Ninth Circuit reversed the conviction. *Id.*

A mistrial does not vacate a court's pretrial orders. This is the same case, before the same Court.

**The Bible burning and the November 2024 statement.** On these items the government does not claim a door was opened; it claims the Court was wrong. Dkt. 273 at 16 ("the Court's prior ruling was erroneous").

The argument is not new. The Court excluded these items on May 11. On May 20 the government argued that the ruling should not reach the November 2024 statement, and in the joint filing at Dkt. 182 it offered to redact every reference to the Bible. The Court rejected each argument, including the compromise. Dkt. 273 at 4. The government's disagreement with those rulings is not clear error, and it identifies no new law and no new evidence.

**The sister's-house threat.** The government "is not asking the Court to reconsider its Rule 404(b) ruling as to the arson threat." Dkt. 273 at 20. It asks only for a ruling that the evidence comes in if the defense opens the door at the retrial.

The Court already entered that rule, and the defense asks that it govern the retrial. See Part III.G.

**The images.** The government acknowledges the images were excluded under Rule 403 and argues only that the defense's trial conduct makes the Rule 403 concern "moot." Dkt. 273 at 14. The Court weighed that conduct in real time and adhered to its ruling. Vol. 5, 712:15–22; Vol. 9, 2056:25–2057:2. The prejudice the Court identified has not changed. Part III.D addresses the images further.

**B. There Is No Misimpression Before the Retrial Jury to Correct.**

The government's theory is that the excluded evidence is needed to correct a misleading impression. At the first trial the Court applied that theory to the questions actually asked and held, repeatedly, that no door had been opened to these items. See Part III.C. The jury that heard the first trial was discharged and will not hear the second. Nothing it heard is before the jury that will be sworn on November 2, so there is no impression for the excluded evidence to correct. Under Rule 403, the probative value the government claims, correcting a misimpression, is zero until one exists at the retrial, while the prejudice is the same "extreme" prejudice the Court identified. Vol. 4, 643:4–7.

Closing argument is not evidence and does not change that analysis; the jury was so instructed. The "fragments" theme addressed the admitted evidence and the government's selection from it. Nor does the government's wish to show "what the ATF agents learned about defendant and when," Dkt. 273 at 13, make excluded other-act evidence admissible. Why agents focused on Mr. Rinderknecht is not an element, and investigative background is not a vehicle for evidence the Court excluded under Rule 404(b). If the government believes a door is opened at the retrial, it has the remedy it had at the first trial: an objection and a sidebar, on the record actually before the second jury.

**C. On Its Own Terms, the Government's Theory Has Already Been**

**Decided.**

On June 12 the government came to Court having reviewed the transcript and identified the questions at Tr. 527, 529 and 532 that it said "clearly" opened the door. Vol. 5, 707:1–709:13. The Court ruled that the evidence is Rule 404(b) evidence and that the defense had not opened the door. Vol. 5, 712:15–22. The government renewed the request the same day, calling the defense conduct "intentional," and the Court ruled again: "That line of questioning does not open the door." Vol. 5, 915:24–916:2. The Court confined the Nordskog cross to admitted evidence, Vol. 9, 2033:13–18, 2034:25–2035:2, and declared that excluded evidence "has no place at this stage in this trial," Vol. 9, 2056:25–2057:2. The government's complaints about Dr. Nordskog's testimony, Dkt. 273 at 7–8, 18–19, were raised and resolved at the time.

The government will quote the Court's caution that the questioning "need[s] to be tightened up or we will revisit this." Vol. 5, 713:6–7. The Court did revisit it on June 12 and June 22, and denied the request each time. And the Court defined the line. The defense would not elicit testimony about whether Mr. Rinderknecht has a history of setting fires, would not insinuate that there is no evidence he ever threatened to burn something, and would not argue that he has no history of burning or threatening to burn things. Vol. 5, 712:23–713:23.

The defense will abide by that rule at the retrial and ask that it be entered as the order governing the second trial.

**D. The Images: The First Trial Confirmed the Court's Rule 403 Judgment.**

The government is correct that Agent Montevidoni described the saved images on June 11 without objection. Vol. 4, 506:15–24. Counsel's statement at the closing sidebar that the description had not come in was mistaken. But the Court's response was the standard instruction that the jury's recollection controls and that argument is not evidence, Vol. 10, 2416:22–24, not a finding against the

government. The episode shows the problem with the images, not a reason to admit them. A verbal description already in evidence generated a dispute at the most sensitive point of the trial. The images themselves would become its center.

The first trial otherwise confirmed the Court's balancing. The government's behavioral expert began narrating the images from the witness stand until the Court stopped him. Vol. XII, 1451:20–1455:12. And government counsel told the jury that "the defense objected to the pictures," which the jury was instructed to disregard. Vol. 10, 2505:1–4. The first trial showed how easily the images become the focus of the case, which is the prejudice the Court found.

To remove any claim of unfairness, the defense proposes, as part of the order governing the retrial, that it will not ask any witness what the ChatGPT prompts or images did not request or depict, and will not characterize the content of the images beyond the testimony admitted at the retrial. That answers the government's complaint, Dkt. 273 at 6, 14–15, without placing the images before the jury.

**E. The Motion Follows the Government's Post-Trial Interviews of Discharged Jurors.**

After the mistrial, the government's case agents interviewed discharged jurors, and the government then filed this motion. The government produced its draft transcript of one interview under the Protective Order (Dkt. 28), USA_00005108–5142, and the defense will provide it to the Court in camera at the hearing or as the Court directs.

**F. The Principle Runs Both Ways.**

The Court found one door opened at the first trial: the "kill the billionaires"/DoorDash ChatGPT material. Vol. 4, 643:10–18; Vol. 9, 2055:19–24. The defense does not contend that ruling carries forward, for the same reason the government's motion fails. Whether any door is open at the retrial will be decided on the retrial record not on the first trial's record. The defense will likewise comply

with the Court's standing order governing the form of objections.

**G. The Appropriate Order.**

The defense requests that the Court (1) deny the motion; (2) confirm that the pretrial orders excluding the ChatGPT images, the Bible burning, the November 2024 statement, and the sister's-house threat remain in effect for the retrial; (3) enter the boundary set at Vol. 5, 712:23–713:23, together with the image limitation in Part III.D, as the order governing the defense; (4) direct that any contention that a door has been opened be raised at sidebar, on the retrial record; and (5) direct that no witness or counsel describe or allude to the excluded items before the jury unless the Court so rules, and that the government so instruct its witnesses.

## IV. CONCLUSION

The motion should be denied and the order described in Part III.G entered.

Dated: October 7th, 2026

Respectfully submitted,
HANEY LAW GROUP, PLLC
/s/ Steven A. Haney, Sr.

Steven A. Haney, Sr. (P63947)
Attorney for Defendant Jonathan Rinderknecht

**DECLARATION OF STEVEN A. HANEY, SR.**

I, Steven A. Haney, Sr., declare as follows:

1. I am counsel of record for Defendant Jonathan Rinderknecht, admitted pro hac vice. I make this declaration in support of Defendant's Opposition to the Government's Motion in Limine to Admit Previously Excluded Evidence (Dkt. 273). I have personal knowledge of the facts stated and could testify competently to them.

2. I tried the first trial in June 2026. I have reviewed the Reporter's Transcripts of that trial for June 11 (Vol. 4), June 12 (Vol. 5), June 17 (Vol. XII), June 22 (Vol. 9) and June 23, 2026 (Vol. 10). The transcript quotations and citations in the accompanying Memorandum are true and correct, and I have verified each against the transcript text.

3. The government produced in discovery its draft transcript of a post-trial telephone interview of a juror from the first trial conducted by ATF Special Agents Michael Montevidoni and Matthew Beals, USA_00005108–5142. Because the government designated it under the Protective Order (Dkt. 28), it is not attached, and this Opposition does not describe its contents. The defense will provide it to the Court in camera at the hearing or as the Court directs.

4. On September 16, 2026, I conferred with counsel for the government pursuant to Local Rule 7-3. The government advised that it intended to move to admit the items at issue at the retrial. The parties were unable to resolve the matter.

5. Pursuant to the Court's Standing Order, I disclose that an artificial intelligence tool was used in the preparation of this Opposition. I have personally reviewed and verified every authority and every citation to the record set forth herein, and I take full responsibility for the contents of this filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 7, 2026, at

Eastpointe, Michigan.

/s/ Steven A. Haney, Sr.
Steven A. Haney, Sr. (P63947)
Attorney at Law

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the memorandum of points and authorities in this Opposition contains 2,146 words, which complies with the word limit of L.R. 11-6.1 and the Court's Standing Order [Dkt. 23].

Dated: October 7th, 2026

/s/ Steven A. Haney, Sr.
Steven A. Haney, Sr. (P63947)
Attorney at Law

## PROPOSED ORDER

The Court having considered the Government's Motion in Limine to Admit Previously Excluded Evidence (Dkt. 273), the Opposition, and the record of the June 2026 trial, the Court finds as follows. The Court excluded these items before the first trial and, during that trial, repeatedly held that the defense had not opened the door to them. Vol. 4, 641:23–24; Vol. 5, 712:15–22, 915:24–916:2; Vol. 9, 2056:25–2057:2. A mistrial does not displace those rulings, and the government has not shown a recognized ground to revisit them. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). Good cause appearing, IT IS HEREBY ORDERED:

1. The motion is DENIED.

2. The Court's pretrial orders excluding the July 2024 ChatGPT images, the August 2024 Bible burning, the November 2024 statement concerning it, and the April 2025 threat concerning the defendant's sister remain in effect for the retrial.

3. The defense shall not elicit testimony concerning whether the defendant has a history of setting fires, shall not suggest that there is no evidence that the defendant has ever threatened to burn anything, and shall not argue that the defendant has no history of burning or threatening to burn anything. The defense shall not ask any witness what the ChatGPT prompts or images did not request or depict, and shall not characterize the content of the images beyond the testimony admitted at the retrial.

4. Any contention by either party that the door has been opened to excluded evidence shall be raised at sidebar, outside the presence of the jury, on the record of the retrial.

5. No witness or counsel shall describe, characterize or allude to the excluded items before the jury unless and until the Court so orders. The government shall so instruct its witnesses in advance of their testimony.

IT IS SO ORDERED.

Dated: ____________________, 2026

____________________________
HON. ANNE HWANG
United States District Judge