TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Assistant United States Attorney
Chief Assistant United States Attorney &
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental Crimes & Consumer Protection Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
DANBEE C. KIM (Cal. Bar No. 350014)
Assistant United States Attorneys
Environmental Crimes & Consumer Protection Section
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3359/8644/6530
Email: mark.a.williams@usdoj.gov
matthew.o'brien@usdoj.gov
danbee.kim2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN RINDERKNECHT,<br>aka "Jonathan Rinder,"<br>aka "Jon Rinder,"<br><br>Defendant. | No. CR 25-833(A)-AH<br><br><u>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1 TO EXCLUDE PORTIONS OF GOVERNMENT EXHIBIT 1662A; EXHIBITS</u><br><br>Hearing Date: October 22, 2026<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom of the Hon. Anne Hwang |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Mark A. Williams, Matthew W. O'Brien, and Danbee C. Kim, hereby files this opposition to defendant JONATHAN RINDERKNECHT's Motion <u>in Limine</u> No. 1 To Exclude Portions of Government Exhibit 1662A (Dkt. No. 279).

This opposition is based upon the attached memorandum of points and authorities and the exhibits thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 9, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Assistant United States Attorney
Chief Assistant United States Attorney &
Chief, Criminal Division

/s/
MARK A. WILLIAMS
MATTHEW W. O'BRIEN
DANBEE C. KIM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**Table of Contents**


I. INTRODUCTION .......... 1
II. FACTUAL AND PROCEDURAL BACKGROUND .......... 1
A. Defendant's Text Messages to K.A. .......... 1
B. Defendant's Samsung Phone and "Sabrina" .......... 3
C. The Court's Pretrial Ruling That the Messages Were Admissible .......... 5
D. The Court's Admission of Exhibit 1662A at Trial .......... 5
III. EXHIBIT 1662A REMAINS RELEVANT AND ADMISSIBLE .......... 6
A. The Text Messages Are Authentic .......... 6
B. The Text Messages Are Not "Propensity Evidence" .......... 6
C. The Messages Are Not Unfairly Prejudicial Under Rule 403 .......... 7
IV. DEFENDANT'S ALTERNATIVE REQUESTS .......... 8
V. CONCLUSION .......... 8

# TABLE OF AUTHORITIES

DESCRIPTION PAGE

**Federal**

United States v. Parker,
549 F.2d 1217 (9th Cir. 1977) (per curiam) ........ 7-8

United States v. Tank,
200 F.3d 627 (9th Cir. 2000) ........ 6

**Federal Rules**

Rule 104(a) ........ 6

Rule 106 ........ 8

Rule 403 ........ 7

Rule 404(b) ........ 5, 6, 7

Rule 901 ........ 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government opposes defendant JONATHAN RINDERKNECHT's ("defendant") Motion in Limine No. 1 To Exclude Portions of Government Exhibit 1662A (the "Motion," Dkt. No. 279).

Ignoring a wide range of evidence, the defense argues that maybe someone else wrote the angry text messages to defendant's ex-girlfriend on December 31, 2024, the day before the Lachman Fire. As detailed below, there is no doubt that defendant wrote the messages.

The Court already ruled that the messages are relevant and admissible as non-propensity evidence of defendant's state of mind on the day before the Lachman Fire. There is no basis for the Court to reconsider its prior rulings. The text messages are the government's most probative evidence of defendant's extraordinary temper and anger on December 31, 2024. While the government agrees that the messages are prejudicial, the best evidence typically is. The messages remain admissible.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Defendant's Text Messages to K.A.

In the days leading up to the Lachman Fire, defendant grew increasingly angry about not being able to find someone to be with on New Year's Eve. As is relevant here, defendant was upset about his relationship with K.A., a former co-worker whom he had briefly dated in March 2024. (June 10, 2026 Tr. at 371-372.) Between December 26 and 29, 2024, defendant messaged with K.A. about New Year's Eve using his iPhone, and he inputted details of his frustration and anger about K.A. into his ChatGPT account more than fifty times. (Id. at 371-377.)

On December 30, 2024, at 5:20 p.m., defendant again texted K.A. about New Year's Eve plans, again using his iPhone. (See Exh. A (Tr. Exh. 942J).) K.A. responded (from her -7911 phone number), "I'm sorry I kinda want to do something with my

friends and we already have a plan." (Id.) A few seconds later, she texted, "I think we need space right now I'm sorry." (Id.)

K.A.'s statements to defendant caused him to leave her several lengthy, rambling voicemails, again using his iPhone. (June 10, 2026 Tr. at 378.) He had crafted the content of voicemails using his ChatGPT account. (Id. at 378-379.)

Defendant's anger continued to grow that evening. At 8:10 p.m., he wrote to ChatGPT, referring to K.A. and her final message to him:

> I thought you were going to be a real friend, and now you start again with this dumb ass shit of I need space. I'm sorry. Like, there's nothing to feel sorry about. You don't need to be sorry. I don't want to fucking hang out with you, you dumb bitch.

(Id. at 380-381.) Defendant reached out to C.S. (another former acquaintance) to make plans, but C.S. told defendant she did not remember who he was. (Id. at 381.) At 8:33 p.m., defendant texted K.A., again from his iPhone, and lied and said that he had plans with C.S. for New Year's Eve, "so I couldn't hang out with you even if I wanted to." (Exh. B (Tr. Exh. 942L).)

Whereas defendant had typically communicated with K.A. using his iPhone, later that night he used his Samsung phone to send more messages to her. This was the same Samsung phone that the government seized from defendant's apartment on January 24, 2025. Defendant had not communicated with K.A. using his Samsung phone since November 17, 2024. (See Exh. C (Trial Exh. 1662A) at 67 of 136).)

At 10:55 p.m., defendant wrote to K.A., "Heeyyyyyy, how've you been?" (Id.) She responded, "Hi who is this?" (Id.) Defendant responded, "So u never saved me in ur phone." (Id.) It appears that K.A. was unfamiliar with the phone number of the Samsung phone (she may have deleted the older text messages with defendant, or she may have gotten a new phone in the interim).

A few hours later, starting at 2:57 a.m. on December 31, 2024, using his Samsung phone, defendant began sending K.A. a series of crude and vile messages. (June 10, 2026 Tr. at 382-385.) K.A. did not respond to most of them, other than telling the

sender that she thought he had the wrong number. Defendant continued sending the angry messages until 3:42 a.m. (See Exh. C at 75 of 136.)

### B. Defendant's Samsung Phone and "Sabrina"

For unknown reasons, defendant used several phone numbers with his Samsung phone. (The Motion acknowledges this: "the usage log reflects extensive use of TextNow, which supplies users additional telephone numbers.") (Motion at 3:9-10.)

One of the phone numbers that defendant used with his Samsung phone ended in -7174. That is the number defendant was using when he sent the angry messages to K.A. (See Exh. C at 79-86 of 136.) It was the primary number associated with that phone. (See id. at 1 of 136 (listing the -7174 number as "Current SIM Phone Number").) For unknown reasons, defendant saved this phone number under the name "Sabrina." (See id. at 79-86 of 136.) Another number that defendant used with the Samsung ended in -9151. He also saved that number as "Sabrina." In his Google contacts, he listed both numbers (and a third number) as "Sabrina." (See Exh. D (excerpts of Tr. Exh. 1663) at 4 of 73).)[1]

The messages that the Samsung phone's Cellebrite report lists as coming from "Sabrina" (under the -7174 and -9151 numbers) were written and sent by defendant. To illustrate, the government will address an example cited multiple times in the Motion. (E.g., Motion at 2:19-21; id. at 3:7-10.) On November 16, 2024, defendant used the Samsung phone (and his alternative number, ending in -9151) to send an apology to K.A. (Exh. C at 59 of 136.) The Cellebrite report identifies the sender as "Sabrina (owner)." (Id.) But the message was from defendant; he was apologizing to K.A. for his prior conduct and blaming his "super religious" background. (Id.) If there were any doubt (there should be none), the content for that message came from defendant's own ChatGPT account. Defendant used ChatGPT to compose the message for K.A. on his iPhone (he signed the message, "Take Care, Jonathan"); he then sent the message from

[1] The Motion points to an additional number in the text messages, ending in -0454. (Motion at 3:8.) That was the phone number of defendant's iPhone.

his iPhone (-0454) to his Samsung phone (-9151 ("Sabrina (owner)")) at 7:20 p.m. on November 16, 2024 (Exh. E (excerpts of Tr. Exh. 1662) at 338 of 1140); and a few minutes later he sent a slightly edited version of the same message to K.A. from the Samsung phone (-9151 ("Sabrina (owner)")) (Exh. C at 59 of 136). The defense's feigned doubts regarding authenticity and authorship are the result of defendant's use of two phones and three phone numbers; but a close examination (and common sense) proves that defendant wrote and sent the message to K.A. on November 16, 2024.

A trove of additional evidence shows that the Samsung phone belonged to defendant, and that he was using it in late 2024 and early 2025. Most obviously, the Samsung phone was seized from his apartment a few weeks later, on January 24, 2025. During an interview earlier that day at his apartment, defendant showed the investigators the Samsung phone and videos he had taken using that phone. (See Exh. F (excerpts of ATF Report of Investigation No. 141) ¶ 85.) Later that day, during the search of his apartment, defendant admitted to law enforcement that he owned the Samsung phone (and other digital devices). (See id. ¶ 340.)

The Samsung phone was full of evidence showing that he was using it. For example, using the -7174 number (as "Sabrina (owner)"), defendant texted photos of the interior of his apartment to K.A. on November 17, 2024. (Exh. E at 326 of 1140.) And the Samsung phone was full of "selfie" photographs that defendant took of himself in December 2024 and January 2025. (See, e.g., id. at 646 of 1140 (selfies on January 7 and 13, 2025); id. at 647-648 of 1140 (selfies from December 3, 2024).)

Other evidence corroborates that defendant had the Samsung phone with him on December 31, 2024. For example, the Samsung phone's Cellebrite report shows that on the afternoon of December 31, the geographical coordinates for the Samsung phone were located within 500 feet of defendant's apartment in North Hollywood. (See id. at 508 of 1140.) And defendant used the Samsung phone to attempt to communicate with his former lover, P.F., at 11:42 p.m. on December 31, 2024 (just before he lit the fire), and

again at 12:25 a.m. on January 1, 2025 (just after he lit the fire). (See id. at 54-55 of 1140.)

The government is not aware of any evidence suggesting that anyone other than defendant possessed or used the Samsung phone from November 2024 through January 24, 2025. The Motion does not point to any such evidence.

**C. The Court's Pretrial Ruling That the Messages Were Admissible**

Oddly, the Motion does not mention the Court's prior ruling as to the text messages' admissibility. On April 8, 2026, the government filed a motion in limine to admit evidence regarding defendant's mental state. (Dkt. No. 88.) The evidence that the government sought to admit included evidence of "Defendant's Anger and Loneliness on New Year's Eve 2024," which included defendant's messages to K.A. on December 31, 2024. (Id. at 10:16-27; id. at 22:12-23:8.)

On May 11, 2026, the Court granted the government's motion as to this evidence. (May 11, 2026 (Sealed) Tr. at 11-12.)

> The Court agrees with the Government that this evidence is relevant to show Mr. Rinderknecht's state of mind during the commission of the offenses and is inextricably intertwined, or alternatively as admissible as 404(b) evidence of motive and the 403 concerns do not substantially outweigh the probative value.

(Id. at 12:2-7.) The Motion does not address the Court's ruling, and instead simply rehashes the same (rejected) Rule 404(b) arguments as to this evidence.

**D. The Court's Admission of Exhibit 1662A at Trial**

At trial, the government admitted Exhibit 1662A; the defense did not object. (June 10, 2026 Tr. at 327-328.) Defense counsel now claims, under oath, that the exhibit "was published to the jury at the first trial." (Motion, Haney Decl. ¶ 2.) That is false. The government did not publish the exhibit, but instead asked Special Agent Montevidoni to read a few examples of the messages that defendant sent to K.A. early in the morning of December 31, 2024, and to summarize the rest. (June 10, 2026 Tr. at 381-385.) The defense did not object to any of this testimony. (See id.)

## III. EXHIBIT 1662A REMAINS RELEVANT AND ADMISSIBLE

### A. The Text Messages Are Authentic

As explained above, the text messages sent from defendant's Samsung phone to K.A. on December 30 and 31, 2024, were written and sent by defendant. Evidence from other sources – specifically, defendant's iPhone and ChatGPT account – proves that he was furious at K.A. for not agreeing to spend time with him on New Year's Eve. A few hours later, defendant used his Samsung phone to send K.A. the text messages at issue.

As set forth above, it is beyond dispute that the Samsung phone belonged to defendant and that he was using it on December 31, 2024. The fact that the Samsung phone's Cellebrite report at times lists "Sabrina (owner)" next to the Samsung's -7174 and -9151 numbers does not mean that someone other than defendant was writing and receiving those messages. As explained above, "Sabrina" was the name defendant used for himself in his Google contacts. And the fact that defendant used two different phone numbers with his Samsung phone (-7174 and -9151) does not mean that someone else was using his phone. Equally irrelevant is the fact that K.A. did not recognize the -7174 number as belonging to defendant when he used it to text her, on December 30 and 31, 2024, for the first time in six weeks.

The defense is asking the Court to believe that someone else was somehow using defendant's Samsung phone for a few hours on December 30 and 31, 2024, and that same unknown person happened to be furious at K.A. at exactly the same time that defendant was enraged with K.A. If the defense wants to make that argument to the jury, it is free to do so. But such an argument does not preclude the admission of the messages under Rules 104(a) or 901. Cf. United States v. Tank, 200 F.3d 627, 630 (9th Cir. 2000) (the "government need only make a prima facie showing of authenticity") (citing United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985)).

### B. The Text Messages Are Not "Propensity Evidence"

The Court already ruled that the text messages were not "propensity evidence" under Rule 404(b). (See Part II.C, supra.) The Motion does not address the Court's

ruling, but simply reargues that the text messages are inadmissible under Rule 404(b). (See Motion at 5-6 ("the evidence tends to prove only criminal disposition").)

The text messages vividly illustrate defendant's anger less than 24 hours before he committed the crime. This is critical evidence of defendant's state of mind. The messages also evidence how defendant quickly could become extremely angry in a manner that was disproportionate to his underlying grievance. Here, K.A. politely told defendant that she did not want to be with him on New Year's Eve; in response, defendant launched into a vile tirade against K.A., which lasted for hours.[2] Defendant continued to send insulting messages to K.A. long after she stopped responding to his insults. This is not propensity evidence; it is evidence of defendant's raging state of mind shortly before he committed the crime.

**C. The Messages Are Not Unfairly Prejudicial Under Rule 403**

Again, the Court already ruled the messages were not barred by Rule 403. (See Part II.C, supra.) At the first trial, the government reasonably presented the messages. Contrary to the defense counsel's sworn claim (Motion at 1:3; Haney Decl. ¶ 2), the government did not publish the messages to the jury. Instead, Special Agent Montevidoni described the messages and read a sampling of them. There was no unfair prejudice to the defense.

The defense's proposed stipulation is unacceptable. (Motion at 7:10-13.) The defense seeks to sanitize defendant's angry messages and (yet again) deprive the jury of vivid evidence of defendant's troubled state of mind, in a case where the government must prove he acted maliciously less than 24 hours later. The prejudicial nature of the messages does not mean they need to be sterilized. See, e.g., United States v. Parker, 549 F.2d 1217, 1222 (9th Cir. 1977) ("evidence relevant to a defendant's motive 'is not rendered inadmissible because it is of a highly prejudicial nature. . . . The best evidence

[2] Defendant's habit of becoming disproportionately angry in response to minor grievances is also evidenced by his threat to burn down his sister's home in April 2025. His threat to commit arson was made in response to a discussion about a lawsuit in which defendant was involved.

often is.'") (quoting United States v. Mahler, 452 F.2d 547, 548 (9th Cir. 1971) (per curiam)). The government should not have to try this case with one hand tied behind its back, particularly where the defense is that the government is relying on so-called fragments of evidence.

## IV. DEFENDANT'S ALTERNATIVE REQUESTS

The defense also objects to the admissibility of much of the remainder of Exhibit 1662A. (Motion at 7-9.) The defense ignores that exhibit 1662A is itself a distillation of the 1,140-page Cellebrite report for the Samsung phone (Tr. Exh. 1662). At any rate, the government is amenable to redacting whatever portions of Exhibit 1662A are not used or relied upon at the upcoming trial.

The government does object to the defense's request that the Court admit K.A.'s text messages to defendant (and text messages from defendant to K.A. that the government does not seek to introduce). (Motion at 8.) The messages the defense seeks to introduce are from November 16, 2024. (E.g., Exh. C at 59.) They are irrelevant hearsay. The defense cannot invoke Rule 106 to admit messages from six weeks before the relevant messages. No additional context is needed because the government will be admitting the communications between defendant (on his iPhone) and K.A. on December 29 and 30, 2024 (see Exh. A (Tr. Exh. 942J) and Exh. B (Tr. Exh. 942L)).

## V. CONCLUSION

The government respectfully requests that the Court deny the Motion in its entirety.