TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental Crimes & Consumer Protection Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
DANBEE C. KIM (Cal. Bar No. 350014)
Assistant United States Attorneys
Environmental Crimes & Consumer Protection Section
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3359/8644/6530
Email: mark.williams@usdoj.gov
matthew.o'brien@usdoj.gov
danbee.kim2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JONATHAN RINDERKNECHT,
aka "Jonathan Rinder,"
aka "Jon Rinder,"

Defendant.

No. CR 25-833(A)-AH

GOVERNMENT'S REPLY TO MOTION FOR JURY INSTRUCTION REGARDING THE LOS ANGELES FIRE DEPARTMENT

Hearing Date: October 21. 2026
Hearing Time: 11:00 a.m.
Location: Courtroom of the Hon. Anne Hwang

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Mark A. Williams, Matthew W. O'Brien, and Danbee C. Kim, hereby files its reply to motion for a jury instruction regarding the Los Angeles Fire Department.

This reply is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 14, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division

/s/

MARK A. WILLIAMS
MATTHEW W. O'BRIEN
DANBEE C. KIM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS


MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. THE COURT SHOULD GIVE THE REQUESTED INSTRUCTION .......... 2

A. The Instruction Is Necessary Because Jurors Admitted That the LAFD's Response Was Part of Their Deliberations .......... 2

B. The Instruction Also Is Necessary Because of the Defense's Improper Emphasis on the Lachman Fire's Smoldering .......... 3

C. The Revised Instruction Is Narrower Than the First One and Will Not Impact Any Legitimate Defenses .......... 5

III. CONCLUSION .......... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

From day one, the defense has publicly blamed the Los Angeles Fire Department ("LAFD") for defendant's crimes. The defense vigorously opposed the Court's exclusion of evidence concerning the adequacy of the LAFD's fire suppression efforts, and now just-as-vigorously opposes a simple, two-sentence jury instruction informing jurors that they are not to consider that inadmissible evidence.

Two jurors confirmed that the LAFD played a role in the jury's deliberations. The Opposition does not contest that fact. Instead, the defense argues that the Court should ignore that fact: "[s]et the juror statements aside and this is the motion the Court already denied." (Opposition at 7.) This misguided argument underscores the defense's trial strategy: to allow the LAFD's response to remain in jurors' minds during deliberations, even if the defense never directly raises the issue. Why else would the defense oppose such a straightforward jury instruction related to inadmissible evidence?

The only arguably legitimate rationale for omitting the government's instruction is moot. The Opposition claims that the proposed instruction is overbroad, but the defense misleadingly refers to a different instruction that the government proposed at the first trial. The revised instruction proposed in the Motion is narrower, rendering the defense's overbreadth argument illusory.

Finally, the Opposition claims that it is "premature" to litigate the requested jury instruction. Instead of addressing an obvious reason for the mistrial, the defense asks the Court to do nothing. Regardless of what the defense argues at the next trial, however, this issue is baked into the case. Jurors from the first trial confirmed that in their post-trial statements. If the jury is never told that they cannot consider this evidence, another mistrial is all but inevitable.

## II. THE COURT SHOULD GIVE THE REQUESTED INSTRUCTION

### A. The Instruction Is Necessary Because Jurors Admitted That the LAFD's Response Was Part of Their Deliberations

The Opposition does not challenge – because it cannot – that jurors improperly considered the LAFD as part of their deliberations. That alone is a sufficient basis to grant the Motion.

Instead of grappling with the jurors' statements, the Opposition claims that the Motion is based on "four-trial related events" (Opposition at 4:16-17) that, conspicuously, do not mention the jurors' post-trial comments. This is textbook misdirection.

In a parallel gambit, the defense seeks to distract the Court by suggesting that federal agents improperly interviewed jurors after the first trial. (Id. at 4-5.) Notably, the defense's argument does not cite a single authority supporting their position. Asking jurors if they would be open to discussing their views on a case after trial is a standard practice in this District. In fact, the Court followed the Ninth Circuit's model instruction and informed the jurors that they were free to, but were not obligated to, discuss the case with others after the first trial:

> Now that the case has been concluded, some of you may have questions about the confidentiality of the proceedings. Now that the case is over, you are free to discuss it with any person you choose. By the same token, however, I would advise you that you are under no obligation whatsoever to discuss this case with any person.

(Trial Transcript, Vol. 13, p. 2570.) Here, the juror at issue provided his/her phone number after the trial, and a federal agent called him/her to discuss the case over the phone. The interview was recorded and a transcript (and the recording) were provided to the defense, along with the date and time of the interview. There was nothing inappropriate, let alone coercive, about the interaction.

More importantly, the evidence of the jurors' improper deliberations was not limited to a single juror's voluntary interview with an agent. The Opposition fails to

address that another juror gave a public interview on camera to the news media confirming that the LAFD's conduct was part of the jury's deliberations.[1] This juror's public statement to the media proves that the jury improperly considered inadmissible evidence. Yet the Opposition does not mention the juror's public statement.

**B. The Instruction Also Is Necessary Because of the Defense's Improper Emphasis on the Lachman Fire's Smoldering**

The jurors' post-trial comments admitting that the LAFD's response was part of their deliberations establishes why the Court should give the government's requested instruction. But if the Court wants additional justification, it can look at the defense's tactics at the first trial that contributed to the jurors' confusion. And if the Court wants further justification, it can look at the defense's admissions regarding its strategy for the next trial.

At the first trial, the defense questioned two government witnesses about the undisputed fact that the Lachman Fire smoldered. Through that questioning, the defense telegraphed (not so subtly) to the jury that the LAFD failed to put out the Lachman Fire. Cross-examining ATF Special Agent Montevidoni, defense counsel drove this point home: "So did anybody do anything about it?" (6/11/2026 Trial Transcript Vol. 4 at 563:2-15.) The Court sustained the government's objection, but the damage was done.

Questions about visible smoldering serve no purpose other than to highlight the LAFD's supposed negligence, an irrelevant defense that the Court rightly excluded from trial. As the government explained in its Motion, evidence that the Lachman Fire continued to smolder after it was thought to be contained actually supports the government: the evidence proves that underground materials in the Lachman Fire's burn scar continued to burn after January 1, 2025, and thus corroborates that the fire that resurfaced on January 7th was a holdover fire. (See Motion at 7:13-24.) Although this evidence is inculpatory on its face because it proves the holdover fire, the defense seeks

[1] See https://www.youtube.com/watch?v=-Hdo7z-lcqI at 2:01 and 8:11.

to mislead and confuse the jury by using it to suggest that the LAFD did not properly extinguish the Lachman Fire

The defense now seeks to use "scene security" as a way to backdoor the irrelevant smoldering evidence, so that the defense can telegraph to jurors that the LAFD should have done something about the smoldering. Having obtained a mistrial following the jury's deliberations regarding the LAFD's response, the defense seeks to highlight the smoldering even more at the next trial. The Opposition says the quiet part out loud:

> Whether and when the Lachman Fire kept burning is the central disputed fact in this case, and the jury is entitled to hear evidence about it, including from the park ranger the government mentions.

(Opposition at 7.)

The fact that there was smoldering in the Lachman Fire's burn scar is not disputed. Nor is it a central fact in this case. The defense is using the pretext of "scene security" to backdoor evidence that the Court already found was irrelevant and inadmissible. The defense successfully misled the jury regarding smoldering in the first trial and transparently seeks to do the same (to an even greater degree) in the second trial.

The defense recently disclosed that it is planning to call California State Parks Sergeant Christy Araujo at the upcoming trial. The defense boasted about her "outrageous malfeasance" in its briefing seeking to make the LAFD's response the centerpiece of the first trial. (See, e.g., Dkt. No. 91 at 18:12.) As the Court may recall, the defense made numerous false and misleading statements to the Court about Sergeant Araujo's limited role on January 1, 2025. (See, e.g., Dkt. 103 at 4:16-5:10.) In truth, Sergeant Araujo visited the Lachman Fire burn scar for about 10 minutes at around 8:00 a.m. on January 1, 2025, to take a few photographs (one of which happened to show smoldering). (See id.) The Court correctly barred the defense from calling witnesses such as Sergeant Araujo because the LAFD's alleged failure to respond to the smoldering was irrelevant to defendant's criminal liability.

Undeterred, the defense now is rebranding Sergeant Araujo as a witness supposedly relevant to the "scene security," even though it is undisputed (and unsurprising) that nobody at California State Parks sought to shut down the 11,525-acre Topanga State Park due to an 8-10 acre fire that was thought to be contained within a few hours on January 1, 2025 (the government is willing to stipulate to that fact). The defense wants to call Sergeant Araujo to testify that the Lachman Fire burn scar continued to smolder. Her testimony would be irrelevant, confusing, and misleading because it suggests that the Lachman Fire was not properly extinguished (and has nothing to do with "scene security").

Given the misleading nature of this evidence, if the defense is permitted to question witnesses and introduce percipient witness testimony (over the government's objection) that the Lachman Fire was smoldering, an additional limiting instruction would be needed. This is the same approach that the Court would take for any evidence, like this, that is admitted for a limited purpose. The government proposes the following language to be read contemporaneously with any testimony about smoldering allowed by the Court:

> You just heard evidence that the Lachman Fire continued to smolder after it was initially contained. You are not to consider whether the Los Angeles Fire Department adequately or inadequately put out the Lachman Fire. That is not relevant to the charges in this case.

Without a limiting instruction, jurors will be misled (again) into thinking that the defendant might not be guilty if the LAFD is to blame for the holdover fire. The Court specifically excluded that defense, so a jury instruction is needed to give effect to the Court's ruling.

### C. The Revised Instruction Is Narrower Than the First One and Will Not Impact Any Legitimate Defenses

The Opposition claims that the proposed instruction "is the same overbroad instruction the Court already rejected." (Opposition at 2.) That is false.

The instruction the government proposed in June was:

> You must not consider the response of the fire department or city to the Lachman or Palisades Fire as part of your deliberations. The response by the fire department or city is irrelevant to the charged crimes.

(Dkt. No. 233 at 24.)

In response to concerns expressed by the Court, the government narrowed the instruction proposed in this Motion:

> You are not to consider whether the Los Angeles Fire Department adequately or inadequately put out the Lachman Fire or Palisades Fire. That is not relevant to your deliberations on the charges against the defendant.

(Motion at 2:17-19.) The Opposition ignores the foregoing. Instead, the defense quotes the old instruction.

The new proposed instruction is limited in scope and does not relate to "scene security," the government's investigation, whether or not the Palisades Fire was a holdover fire, or other claimed defenses. Indeed, the Opposition does not explain how this revised instruction would impact any legitimate trial defenses.

## III. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court give the requested jury instruction at the upcoming trial.