TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental Crimes & Consumer Protection Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
DANBEE C. KIM (Cal. Bar No. 350014)
Assistant United States Attorneys
Environmental Crimes & Consumer Protection Section
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3359/8644/6530
Email: mark.williams@usdoj.gov
matthew.o'brien@usdoj.gov
danbee.kim2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN RINDERKNECHT,<br>aka "Jonathan Rinder,"<br>aka "Jon Rinder,"<br><br>Defendant. | No. CR 25-833(A)-AH<br><br><u>GOVERNMENT'S MOTION IN LIMINE REGARDING IMPERMISSIBLE DEFENSE EXPERT TESTIMONY; DECLARATION OF DANBEE C. KIM; EXHIBITS</u><br><br>Hearing Date: October 22. 2026<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom of the Hon. Anne Hwang |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Mark A. Williams, Matthew W. O'Brien, and Danbee C. Kim, hereby files its motion <u>in limine</u> to exclude portions of the proposed defense expert testimony disclosed on October 2, 2026.

//

This motion is based upon the attached memorandum of points and authorities and the exhibits thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 15, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division

/s/
MARK A. WILLIAMS
MATTHEW W. O'BRIEN
DANBEE C. KIM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On October 2, 2026, defense counsel provided superseding expert disclosures for defense experts Thomas Guzman (a retired "Fire Prevention Specialist") and Edward Nordskog (a retired detective).[1] On October 13, 2026, defense counsel provided a supplemental disclosure for defense expert Thomas Guzman. The disclosures expanded both experts' anticipated testimony from the first trial in three impermissible ways.

First, the defense proposes to have both experts testify that investigating agents and experts had "confirmation bias" and "expectation and confirmation bias." Calling a defense expert to testify that a government witness is "biased" is inappropriate. Not only does it invade the province of the jury to weigh and assess the credibility of evidence and witnesses, but it is also tantamount to calling a defense expert to impugn the character of another witness.

Second, Guzman is unqualified to render opinions regarding engineering testing and analysis that were performed at a fire research laboratory. Guzman is not an engineer, has no training as a fire research engineer, has no experience working in a laboratory, and has not conducted research, published papers, or written peer-reviewed work related to fire science. As such, Guzman does not come close to passing the Daubert analysis required to render an opinion regarding engineering testing and analysis.

Third, although Guzman is not qualified to testify regarding behavioral evidence or arson profiling, he renders the opinion that defendant's actions "are actions he has routinely observed from members of the public reporting fires, and that they raise no investigative concern for him." Guzman is not an arson investigator and has never testified as an arson expert; nor is he a behavioral expert. Nothing in his training and

---

[1] Expert disclosures were served after the motions in limine deadline. Thus, this motion is filed as soon as practicable following those disclosures.

experience qualifies him to render this expansive opinion. This opinion, again, fails to satisfy the most basic and foundational Daubert requirements.

## II. PORTIONS OF THE PROPOSED DEFENSE EXPERT TESTIMONY SHOULD BE EXCLUDED

### A. Legal Framework

Under Rule 702, the proponent of expert testimony must demonstrate four things: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th Cir. 1996) ("[I]t is the proponent of the expert who has the burden of proving admissibility").

Expert testimony may be objectionable where it is irrelevant, unduly prejudicial, or unnecessarily confuses or misleads the jury. See Fed. R. Evid. 402, 403; United States v. Spangler, 810 F.3d 702, 707 n.3 (9th Cir. 2016) (relevance is "folded into the Daubert standard under Federal Rule of Evidence 702"). Regardless of the relevance of the proffered expert testimony, a court can also exclude it if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 595 (1993) (quoting Fed. R. Evid. 403). Because expert testimony carries the "aura of special reliability and trustworthiness," it raises a substantial danger of undue prejudice and confusion of the issues so courts must pay particular attention in assessing its admissibility. See United States v. Amaral, 488 F.2d 1148, 1152 (9th Cir. 1973).

The "trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid

and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93. "The trial court acts as a 'gatekeeper' to exclude expert testimony that does not meet the relevancy and reliability threshold requirements." Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007) (construing Daubert and Rule 702). The "gatekeeping" principles of Daubert apply equally to all proffered expert testimony under Rule 702 as they do to scientific testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999); see also Fed. R. Evid. 702, Advisory Comm. Notes ("the amendment [to Rule 702] does not distinguish between scientific and other forms of expert testimony. The trial court's gatekeeping function applies to testimony by any expert.").

Daubert articulated a two-step guide for district courts to follow in executing their gatekeeping function: first, the trial court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue"; and second, the court must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. Daubert, 509 U.S. at 592-95. Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. Id. at 591.

In determining reliability, the Court examines a variety of non-exclusive factors: "(1) whether a scientific technique 'can be (and has been) tested,' (2) 'whether the theory or technique has been subjected to peer review and publication,' (3) 'the known or potential rate of error' of a particular scientific technique,' and (4) 'general acceptance' in the relevant scientific community." Christopher Clarke v. Air & Liquid Sys. Corp., No. 2:20-CV-00591-SVW-JC, 2021 WL 1534975, at *3 (C.D. Cal. Mar. 18, 2021) (quoting Daubert, 509 U.S. at 592-96). In determining relevance, the Court asks whether the testimony "logically advances a material aspect of the proposing party's case." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1315 (9th Cir. 1995).

**B. Guzman's Opinions Are Inadmissible Under Rule 702, <u>Daubert</u>, and Rule 403**

Guzman repeatedly strays from his disclosed area of expertise in "wildland fire origin-and-cause investigations." (Exhibit A (Defense Expert Disclosure: Thomas Guzman) at 1.) He is not a scientist qualified to evaluate human cognition, human behavior, engineering tests, or forensic methodology in unrelated fields. Yet, according to the disclosure provided by the defense, Guzman is expected to testify to exactly that.

1. <u>Guzman's Accusations of Confirmation Bias Permeating the Investigation Are Inadmissible</u>

Guzman is expected to criticize the investigation by asserting that the Fire Research Laboratory's ("FRL") open-flame testing as well as the investigators' handling of investigative leads reflect "confirmation bias."[2] (Opinion #8.) Guzman's proposed testimony accusing investigators of confirmation bias is not scientific, technical, or otherwise specialized knowledge within the meaning of Rule 702. Rather, it is a speculative critique of investigator credibility and mental processes (subjects that fall squarely within the province of the jury). It should be excluded.

Although Guzman cites NFPA 921's general admonition that investigators should guard against confirmation bias, NFPA 921 does not supply any scientific methodology by which Guzman is qualified to diagnose cognitive bias in other investigators or investigations. Guzman has no training or education in forensic psychology, cognitive psychology, or decision-science disciplines that study cognitive bias. Allowing Guzman to attack the credibility of other experts and make accusations of bias falls well outside the scope of his "wildland fire origin-and-cause" expertise.

Moreover, Guzman's opinion is baseless. His conclusion that investigators were biased rests on nothing more than the timing of FRL testing. But this sequencing is neither unusual nor improper; confirmatory testing is common in fire investigations. His

[2] The word "bias" appears nine times in the two expert disclosures.

opinion reflects speculation, not specialized knowledge. He further attacks the investigators for having confirmation bias for not following up on a specific lead without regard for the totality of the investigation. A sweeping diagnostic opinion that any investigative step Guzman disagrees with was a product of confirmation bias is not scientific and is merely defense argument presented as expert opinion.

Permitting Guzman to introduce incendiary terminology such as "confirmation bias" would serve only to confuse and mislead the jury by implying government misconduct without any reliable foundation, thus implicating Rule 403 (an independent reason to exclude his "confirmation bias" testimony). This tactic invites jurors to substitute buzzwords for evidence and improperly elevates an unqualified witness's speculation into purported expert analysis.[3]

2. Guzman's Critiques of Engineering Tests Are Inadmissible

Guzman's criticisms of the FRL's engineering tests should be excluded because he is not qualified under Rule 702 to evaluate laboratory engineering work. He is a wildland fire investigator, not an engineer, chemist, laboratory analyst, or trained ignition-testing specialist. He admits he simply accepts the FRL's engineering data "as presented," with no ability to assess test design, calibration, or execution. That alone makes his opinions unhelpful to the jury.

His assertions that the FRL testing "did not replicate" field conditions (Opinion #8) or that "site conditions could not be recreated" (Opinion #11) are speculative, unsupported by data, and offered without any methodology. He identifies no basis for these claims and does not even specify what "physical evidence" he supposedly needed but lacked. These opinions and others like them rest on no facts, no analysis, and no coherent method, and are inadmissible under Daubert. His methodology independently fails under Rules 702(c) and (d). He applies no peer-reviewed framework for evaluating

[3] If the Court permits Guzman to attack government experts as biased, the government reserves the right to call experts in a rebuttal case to testify regarding confirmation bias with respect to the defense expert opinions.

controlled laboratory experiments and ignores the FRL's ignition criteria and testing objectives. He repeatedly conflates a laboratory ignition test (designed to measure ignition energy) with real-world sustained fire spread or behavior, a topic he is not qualified to quantify.

Exclusion is also warranted under Rule 403. Allowing Guzman to testify would risk misleading the jury into thinking laboratory ignition testing must mirror field conditions, elevating his subjective expectations into supposed scientific requirements. Any legitimate challenge to the FRL's methods must come through cross-examination of the government's relevant witness or testimony from a properly qualified defense expert, not from a witness without the training or data necessary to critique laboratory analyses. The Court should therefore exclude Guzman's testimony targeting the FRL's engineering work.

3. Guzman's Baseless Opinions Regarding Defendant's Behavior Are Inadmissible

Guzman's claim that the defendant's actions were "routinely observed" and raised "no investigative concern" does not qualify as expert testimony. (Opinion #14.) It offers no specialized insight. Any layperson knows that people frequently call 911. What he is really doing is vouching for the defendant's innocence, not providing technical knowledge. His opinion also lacks any factual foundation. He cites no data, no systematic observations, and no analytical framework to define what qualifies as "routine" behavior. At best, his assessment is anecdotal, and anecdote is not a sufficient basis for generalizing patterns of human conduct. The methodology fails for the same reason: there is none. He applies no behavioral-science principles and no evaluative model for interpreting human actions. An origin-and-cause investigator is not qualified to opine about what is and is not relevant in a criminal arson investigation, much less draw inferences about a person's intentions from their behavior. Despite disclaiming any opinion on behavioral, motive, or state of mind evidence, he provides exactly that

and tells the jury that defendant's behavior lacks evidentiary value, precisely a question the jury must decide in an arson case.

The Rule 403 problem is equally serious. Presenting this testimony would mislead jurors into treating an origin-and-cause investigator as an authority on human behavior and guilt, when his views add no probative value and risk significant prejudice. Opinion # 14 should therefore be excluded in full.

### C. Nordskog's Opinions Regarding Confirmation Bias Are Inadmissible Under Rule 702, Daubert, and Rule 403

Nordskog is expected to criticize the investigation by asserting that investigative steps (interviews, testing, analysis) taken after a suspect is identified are "subject to confirmation bias". (Exhibit B (Defense Expert Disclosure: Edward Nordskog, Opinion #8).) This confirmation-bias opinion should be excluded, first, because it is not an expert opinion at all. It is simply another backdoor attempt to argue the defense case through an unqualified witness. Opinion #8 rests entirely on Nordskog's personal impressions and anecdotes, not on any scientific method, specialized training, or established discipline for identifying cognitive bias in investigative work. Nothing in his disclosure comes close to a methodology: he cites no criteria for diagnosing bias, no research validating his approach, and no technique capable of being tested, replicated, or measured for error. His "analysis" is nothing more than the assertion that any investigative step taken after a suspect is identified is inherently biased. That is not science, much less an expert opinion that satisfies Daubert.

Because his opinion is not grounded in any reliable reasoning or methodology, it cannot be applied to the facts in any meaningful way. Nordskog has not reviewed investigators' internal decision-making processes, conducted any structured analysis, or used any recognized behavioral-science tools. He simply identifies bias whenever the defense disagrees with an investigative choice. Allowing such conjecture into evidence would convert Rule 702 into a license for an expert to accuse investigators of misconduct without any foundation.

Nor does this testimony offer anything useful to the jury. It does not explain technical concepts or illuminate unfamiliar subject matter. It merely tells jurors what inferences the defense thinks they should draw about the investigation. This is an argument defense counsel is free to make, but not one an expert is permitted to launder as "analysis." The jury does not need an expert to tell them that investigators could have pursued other avenues; that is well within the jurors' everyday reasoning. Opinion #8 adds nothing except an unwarranted veneer of authority.

Finally, the danger of unfair prejudice under Rule 403 is clear. Allowing Nordskog to opine about "confirmation bias" would invite the jury to believe that investigators acted improperly based solely on the say-so of a witness with no scientific grounding in bias detection. His testimony would mislead the jury into crediting an accusation of investigative impropriety that has no basis in expertise and no place in expert testimony. Opinion #8 should therefore be excluded in its entirety.

## III. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court exclude portions of the defense experts' proposed testimony without a Daubert hearing.