Steven A. Haney, Sr., Esq. (Mich. Bar No. P63947)
*Admitted Pro Hac Vice*
Haney Law Group, PLLC
22815 Kelly Rd.
Eastpointe, MI 48021
Telephone: (248) 414-1470
E-Mail: Steve@haneygroup.net

Attorney for Defendant
JONATHAN RINDERKNECHT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JONATHAN RINDERKNECHT,<br>aka "Jonathan Rinder,"<br>aka "Jon Rinder,"<br>Defendant. | Case No. 2:25-cr-00833-AH<br>**DEFENDANT'S BRIEF IN SUPPORT OF RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT ONE (JURISDICTIONAL ELEMENT); DECLARATION OF STEVEN A. HANEY, SR.**<br>Trial Date: November 2, 2026<br>Courtroom of the Hon. Anne Hwang |

As permitted by the Court on November 12, 2026, Defendant Jonathan Rinderknecht submits this brief in support of his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 on the jurisdictional element of Count One.

## INTRODUCTION

Count One charges a violation of 18 U.S.C. § 844(f)(1), which reaches only property "in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance." Count One concerns only the January 1, 2025 Lachman Fire, which burned approximately eight to ten acres. 11/9 Tr. 200:5–8. No federal land burned, and no witness tied any federal dollar to that land. The government's jurisdictional case rests instead on general testimony that two non-

federal entities have received federal money at various times. That evidence does not permit a rational juror to find the element beyond a reasonable doubt.

**STANDARD**

The question is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

**THE EVIDENCE**

*The burned land.* Derek Hill testified that the Lachman Fire burned eight to ten acres and, using Government Exhibit 142, that portions of a purple area marked as Topanga State Park and a yellow area marked as Mountains Recreation and Conservation Authority ("MRCA") property burned on January 1. 11/9 Tr. 199:14–200:17. No witness from the County Assessor or any land-records custodian testified to ownership of the burned parcels.

*No federal land and no federal money.* Jody Lyle of the National Park Service testified that the Lachman Fire burned no federal land, that her agency has no management authority over Topanga State Park, and that she knew of no federal money received in connection with the January 1 fire. 11/10 Tr. 29:10–30:10, 32:22–25.

*California State Parks.* The State Parks FEMA coordinator, Larissa Ison, testified that FEMA funds become available only after a major disaster declaration. 11/10 Tr. 35:10–17, 38:14–20. She estimated that Topanga State Park received $400,000 to $500,000 in FEMA funds "between 2020 and 2024," but she could not recall the exact amount and gave no date for any payment. *Id.* 37:4–16, 40:17–18. When asked whether any FEMA funds were obligated for the January 1 or January 7 fires, the government objected and the objection was sustained. *Id.* 39:8–15. On redirect she answered "Yes" to whether Topanga State Park received FEMA funds "in 2025," without saying when. *Id.* 43:4–7.

*MRCA*. MRCA's deputy financial officer testified that MRCA is a local joint powers authority, not a federal agency. 11/10 Tr. 96:12–17, 100:4–5. He did "not know that for sure" whether MRCA owns any land in Topanga State Park and could not identify any parcel. *Id.* 100:6–11. He described two sources of federal money: FEMA reimbursements after declared disasters, received in five "rounds" going back to "maybe 2018," without dates or amounts for any round, *id.* 97:19–98:3, 98:22–99:1, 100:20–101:7; and a contract under which the United States Forest Service rents an MRCA facility in Calabasas, with lodging, meals, and support services, for a firefighter training program, *id.* 98:6–21, 101:9–102:12.

## ARGUMENT

### I. The Government Did Not Prove That an Owner of the Burned Property Was Receiving Federal Financial Assistance at the Time of the Fire.

The Court has held that "the entity needs to be receiving federal funds at the time of the arson." 11/10 Tr. 42:3–5; *see id.* 41:11–15. The statute is written in the present tense: "receiving Federal financial assistance." 18 U.S.C. § 844(f)(1). The evidence does not meet that standard.

*State Parks*. The only figures for Topanga State Park cover a five-year window that ended before the fire, with no date for any payment. 11/10 Tr. 37:4–16, 40:17–18. The bare "Yes" to receipt "in 2025" does not say whether the money arrived before or after January 1. *Id.* 43:4–7. FEMA money follows a declared disaster, *id.* 38:14–20; the Palisades Fire began on January 7, 2025, and federal money followed it, *id.* 30:11–13, 32:15–21. The answer is fully consistent with money received after the Palisades Fire, which the government agreed is irrelevant. *Id.* 41:16–18. Finding receipt on January 1 from this record would require speculation.

*MRCA*. The FEMA evidence is undated: five "rounds" over roughly seven years, with no showing that any payment was being received in January 2025. 11/10

Tr. 100:24–101:7. That leaves the Forest Service contract, which does not qualify for the reason set out in Part II.

Ownership is a separate gap. The government had to prove that the burned property was "owned or possessed by, or leased to" the funded entity. 18 U.S.C. § 844(f)(1). MRCA's own witness could not say that MRCA owns land in Topanga State Park. 11/10 Tr. 100:6–11. The only evidence of MRCA ownership is an investigator's reading of a map, with no land-records witness and no testimony about who prepared the map or from what source. 11/9 Tr. 199:14–200:17.

## II. A Fair-Value Contract to Rent a Facility and Sell Services Is Not Federal Financial Assistance.

The statute distinguishes property "leased to" the United States from property of an organization "receiving Federal financial assistance." 18 U.S.C. § 844(f)(1). The Forest Service contract is a commercial arrangement: the government pays MRCA to rent a facility in Calabasas and to provide lodging, meals, and support services for a training program. 11/10 Tr. 98:6–12, 101:9–102:12. That is the United States buying goods and services, not assisting MRCA. The agency definitions of "Federal financial assistance" collected in *United States v. Hersom*, 588 F.3d 60, 66 (1st Cir. 2009), describe grants, loans, transfers of federal property, the services of federal personnel, and leases of federal property for nominal consideration. None describes a market-rate purchase of services from the recipient. Reading the phrase to cover every vendor that sells to the federal government would extend § 844(f)(1) to virtually any property in the country.

## III. At a Minimum, the Statute Requires a Connection Between the Federal Assistance and the Burned Property.

The First Circuit has construed § 844(f)(1) to avoid serious constitutional questions. Where federal aid is tied to particular property, the statute reaches arson of that particular property; it reaches all of an organization's property only where the

organization's operations are substantially federally funded. *Hersom*, 588 F.3d at 65–67. The Supreme Court has construed the neighboring subsection, § 844(i), narrowly for the same reason. *Jones v. United States*, 529 U.S. 848, 857–58 (2000).

The constitutional question is now sharper. In *United States v. Lung'aho*, 144 F.4th 1026, 1028 (8th Cir. 2025), the Eighth Circuit upheld § 844(f)(1) as applied to the destruction of police vehicles that had not been purchased with federal funds, reasoning that their destruction depleted the resources of police departments receiving federal financial assistance. The Supreme Court granted certiorari, vacated the judgment, and remanded for further consideration in light of *Landor v. Louisiana Department of Corrections & Public Safety*, 609 U.S. 59 (2026). *Lung'aho v. United States*, 146 S. Ct. 2813 (2026) (mem.). *Landor* held, in the context of personal-capacity damages claims under RLUIPA, that conditions imposed under the Spending Clause bind only those who knowingly and voluntarily accept them by agreement with the federal government.

This case rests on the same theory the Supreme Court has now sent back for reconsideration: that property no federal dollar purchased falls within § 844(f)(1) because its owner has received federal money for something else. And this record lacks even the link the Eighth Circuit relied on. The National Park Service witness knew of no federal money connected with the January 1 fire. 11/10 Tr. 32:22–25. None of the government's funding witnesses testified that the January 1 fire depleted the resources of MRCA or California State Parks, and when the defense asked whether any FEMA funds were obligated for the fires, the government's objection was sustained. *Id.* 39:8–15. Mr. Rinderknecht accepted no federal funds and made no agreement with the United States. Applying § 844(f)(1) to him on this record would impose a Spending Clause condition on a stranger to the funding arrangement, which is the question *Landor* raises. The Court should construe the statute to avoid that question, as the Supreme Court did with § 844(i) in *Jones*, and

require proof connecting the federal assistance to the burned property.

Under any version of a nexus requirement, the evidence fails. The record contains no budget for either entity and no evidence that either one's operations are substantially federally funded. The government established only that two non-federal entities have received federal money at various times for unrelated purposes, including a training facility in another city. 11/10 Tr. 102:7–12. Mr. Rinderknecht raises this point to preserve it.

## CONCLUSION

The Court should enter a judgment of acquittal on Count One. Mr. Rinderknecht renews his Rule 29 motion on all counts and elements, as the Court has already heard it, and will renew it at the close of all the evidence.

Dated: November 15, 2026

Respectfully submitted,

HANEY LAW GROUP, PLLC

/s/ Steven A. Haney, Sr.
STEVEN A. HANEY, SR. (P63947)
Attorney for Defendant
JONATHAN RINDERKNECHT

## DECLARATION OF STEVEN A. HANEY, SR. REGARDING USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

I, Steven A. Haney, Sr., declare as follows:

1. I am counsel of record for Defendant Jonathan Rinderknecht in this matter, admitted pro hac vice. I make this declaration under Section A.5 of the Court's Standing Order for Criminal Cases. I have personal knowledge of the facts stated in this declaration.

2. In preparing Defendant's Brief in Support of Rule 29 Motion for Judgment of Acquittal on Count One (Jurisdictional Element), I used a generative artificial intelligence tool to assist in drafting it.

3. I have reviewed the document and verified that the content generated with the assistance of artificial intelligence is accurate and complies with my Rule 11 obligations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 15, 2026, at Los Angeles, California.

/s/ Steven A. Haney, Sr.
STEVEN A. HANEY, SR. (P63947)