Steven A. Haney, Sr., Esq. (Mich. Bar No. P63947)
*Admitted Pro Hac Vice*
Haney Law Group, PLLC
22815 Kelly Rd.
Eastpointe, MI 48021
Telephone: (248) 414-1470
E-Mail: Steve@haneygroup.net

Attorney for Defendant
JONATHAN RINDERKNECHT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JONATHAN RINDERKNECHT,<br>aka "Jonathan Rinder,"<br>aka "Jon Rinder,"<br>Defendant. | Case No. 2:25-cr-00833-AH<br>**DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO THE GOVERNMENT'S MOTION TO STRIKE THE TESTIMONY OF THOMAS D. GUZMAN; DECLARATION OF STEVEN A. HANEY, SR.**<br>Trial Date: November 2, 2026<br>Courtroom of the Hon. Anne Hwang |

As directed by the Court on November 13, 2026, Defendant Jonathan Rinderknecht submits this supplemental brief in opposition to the government's motion to strike the testimony of defense expert Thomas D. Guzman.

## INTRODUCTION

The government's motion rests on a mischaracterization of Mr. Guzman's role. Mr. Guzman did not conduct his own origin-and-cause investigation in this case. He performed what NFPA 921 calls a "technical review" of the government's investigation: he examined the government's 208 page origin-and-cause report and attached materials and evaluated whether the government's investigators followed

the methodology of NFPA 921 and PMS 412 and whether their conclusions were supported by the evidence they gathered.

He performed no physical testing and wrote no report. The basis for every opinion he offered is the government's own investigative file, which the government has always had. The items the government now says it lacked—a training record that predates this case, field notes and readings from a site visit disclosed before trial in his Rule 16 Disclosure, and compensation records—are not the basis for those opinions. Whatever the government's complaints about the timing of production, they do not touch the substance of Mr. Guzman's testimony, and they cannot justify striking it.

The motion should be denied. When the Court ordered production of Mr. Guzman's statements, presumably under Rule 26.2, after his direct examination, the defense produced them at approximately 4 am the following morning. When the government raised specific objections the next morning, the defense produced additional material, even though much of the additional material is not mandated disclosure under Rule 26.2.

That record does not show a discovery violation, and it does not show the willful, tactical misconduct that the law requires before a court may exclude a defense witness. Striking Mr. Guzman's testimony would not cure any prejudice to the government, because the government has the material while Mr. Guzman remains on cross-examination, and had the material all weekend in order to prepare

for Mr. Guzman's return to the stand. Striking this witness's testimony would remove the defense's expert who evaluated whether or not the Government's origin-and-cause experts followed the principles of the NFPA 921 and PMS 412 – which they did not. Mr. Guzman did not conduct any independent investigation on this matter at all – he relied on two scene visits to the site; however, with the exception of a weather reading, of which the results were provided in the Rule 16 disclosure, he did not conduct a scene investigation.

This is arguably the most important witness in Mr. Rinderknecht's defense. Striking this opinion and testimony from the jury's consideration will penalize Mr. Rinderknecht for matters that concern, at most, the timing of counsel's production.

## STATEMENT OF FACTS

The Court's Standing Order directs counsel to "comply promptly with discovery and notice pursuant to Rules 12, 12.1, 12.2, 12.3, 12.4, 15 and 16," and requires the government to produce discovery related to its trial evidence no later than two weeks before trial. Standing Order B (Dkt. 23). It does not address Rule 26.2 statements. Rule 26.2 requires production of a witness's statements only after the witness has testified on direct examination. Fed. R. Crim. P.26.2(a).

Mr. Guzman testified on direct examination at trial. On November 13, 2026, on the government's motion, the Court ordered production of Mr. Guzman's statements under Rule 26.2(a) after learning on cross-examination that there may

be items Mr. Guzman had sent to defense counsel that the Government had not previously received in disclosure.[1]

One item that was highly scrutinized was the potential existence of a "task book" and whether one had existed in this case and had been sent to defense counsel. Given this, and as part of this order, the Court ordered Mr. Guzman turn over to a taint agent his electronic copy of the file, which he testified included everything he had on this case. The Court also directed that defense counsel have no contact with Mr. Guzman while he remains on cross-examination. The defense has complied with both orders.

That evening, counsel searched his email and in the early hours of November 14, 2026, produced Mr. Guzman's emails with redactions to the Government, with their attachments. Counsel withheld two categories: (1) counsel's own messages and notes, which are not statements of the witness, and (2) portions of Mr. Guzman's emails that do not relate to the subject matter of his testimony.

On November 14, 2026, after the government questioned particular redactions, the defense reviewed and served a corrected production. Although many of the modified redactions were determined not to be the subject of the required disclosure, counsel agreed to un-redact them in a showing of good faith and

[1] It should be noted, this was not the first time the government had learned of this information. In fact, they asked the same line of questions of this witness in the first trial and were on notice of the existence of some of these items and choose not to ask for it after the first mistrial.

transparency. It removed the redactions from Mr. Guzman's "short replies" and from an email the government specifically identified, and it produced the records of Mr. Guzman's compensation, a fee capped at $500, and his travel reimbursements, which had been inadvertently redacted.

*Mr. Guzman's technical review.* Mr. Guzman performed a technical review of the government's investigation. Mr. Guzman did not conduct his own origin-and-cause investigation in this case. He testified that he was asked "to look at the origin and cause report and assess how the investigators gather data, follow that methodology, how they came to their conclusion, and whether or not the conclusion was based on the data and evidence." 11/13/26 Tr. 166:21–25.

He explained that NFPA 921 "calls it a . . . technical review," and that he was "not trying to redo the entire origin and cause." *Id.* 167:3–6. He conducted that review the way he evaluates trainees, comparing the investigators' actions with the methodology of NFPA 921 and PMS 412 and testing whether their conclusion matched the evidence they gathered. *Id.* 167:12–21; 168:11–18. It was his first technical review. *Id.* 255:9–15.

The defense did not ask Mr. Guzman to write a report or to prepare any materials other than his Rule 16 disclosure. *Id.* 291:1–3; 293:2–4. Defense counsel prepared the disclosures for Mr. Guzman, and reviewed them with Mr. Guzman, who acknowledged them before they were served on the Government. *Id.* 291:11–17.

Mr. Guzman visited the general area on December 17, 2025, and took weather readings there. *Id.* 168:20–169:18. The defense disclosed that examination and those readings to the government before trial. Am. Disclosure of Thomas D. Guzman ¶ 14 (Oct. 2, 2026). Mr. Guzman kept his handwritten notes, photographs, and video from that visit in his own digital file on a USB drive. 11/13/26 Tr. 267:3–7; 275:19–25; 283:10–14. He testified that he has no clear memory of sending those records to counsel. *Id.* 290:3–9.

The "task book" is a training record, opened around 2009 and completed around 2011, that documents Mr. Guzman's qualification as a wildland fire investigator. *Id.* 276:17–19; 289:6–8. It existed before this case and contains no information about this prosecution; in his words, it is a "historical document." *Id.* 266:4–10; 289:9–22. Mr. Guzman keeps no logbook of his work for the defense. *Id.* 289:23–25.

*The defense has produced everything in its possession.* Out of an abundance of caution, the defense has produced every email Mr. Guzman sent to defense counsel or copied to him from December 5, 2025 through November 13, 2026 — 76 emails, with every attachment — redacting only counsel's own notes and items not subject to disclosure. When Mr. Guzman's own files came to light on cross-examination, defense counsel told the Court, "I'd be willing to do whatever we need to do," and did not object to the procedure the government proposed. 11/13/26 Tr. 296:19–20; 298:22–23. The Court ordered Mr. Guzman to produce his files directly

to the government. *Id.* 298:24–299:6.

## ARGUMENT

### I. Rule 26.2(e) Does Not Apply, Because the Defense Did Not Disobey the Court's Order.

Rule 26.2 ties its sanction to a court order: "If the party who called the witness disobeys an order to produce or deliver a statement, the court must strike the witness's testimony from the record." Fed. R. Crim. P. 26.2(e). The sanction turns on disobedience of an order. There was none.

The defense's obligation began with the Court's order. Rule 26.2 applies "[a]fter a witness other than the defendant has testified on direct examination," and only "on motion of a party who did not call the witness." Fed. R. Crim. P. 26.2(a). Here, the Court ordered production, and the defense, through its witness, produced the case file for download by a taint agent.

The Court additionally ordered cooperation between the government and defense to ensure the defense team could review the contents of the file for any privileged information. Further, counsel for the defense produced the emails from Mr. Guzman to Mr. Haney in the early hours the next day, providing the Government two full weekend days to review the disclosure. The defense cooperated with the Government's request for a review at some specific pages of the redacted disclosure, and then made a further disclosure, noting the redacted portions were justified under the rule and if there was a dispute that an *in camera*

review would be the next step.[2]

The withheld material is also outside the rule. A "statement" is a written statement "that the witness makes and signs, or otherwise adopts or approves." Fed. R. Crim. P. 26.2(f)(1). Counsel's own messages to a witness are not the witness's statements. They are counsel's work product, which Rule 16(b)(2)(A) protects, and which applies with full force in criminal cases. *United States v. Nobles*, 422 U.S. 225, 238 (1975). When a defense witness testifies, disclosure reaches the material that relates to that testimony, not the rest of the defense file. *Id.* at 239–40; Fed. R. Crim. P. 26.2(a), (c).

The only material the defense has withheld is counsel's own work or information not subject to Rule 26.2. Counsel's notes, questions, and outline text are not Mr. Guzman's statements. They are defense work product, which the rules protect. Fed. R. Crim. P. 16(b)(2)(A); *Nobles*, 422 U.S. at 238. The defense has produced every word Mr. Guzman wrote, redacting only items not subject to disclosure, including his answers within counsel's outlines, and has redacted only text counsel wrote. If the government disputes any redaction, Rule 26.2(c) supplies the procedure: the Court inspects the material in camera and excises anything privileged or unrelated. Fed. R. Crim. P. 26.2(c).

[2] Counsel for the defense notes that it has prepared a flash drive to provide the Court that includes the redacted version of the emails sent to the Government along with an unredacted version of the emails, if requested.

## II. The Remaining Issues Do Not Justify Excluding a Defense Witness.

The compensation records, the emails and text messages, and the site files are Rule 16 matters. For those, the Court may order discovery, grant a continuance, prohibit the evidence not disclosed, "or enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2). Excluding a defense witness is the most severe of those options, and it implicates the Sixth Amendment. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988); *see Washington v. Texas*, 388 U.S. 14, 19 (1967). *Taylor* recognized that "alternative sanctions are adequate and appropriate in most cases," 484 U.S. at 413, and it approved exclusion where the omission "was willful and motivated by a desire to obtain a tactical advantage," *id.* at 415.

*Taylor* itself shows how far this case is from one that warrants exclusion. There, on the second day of trial, defense counsel made an oral motion to amend the witness list to add a witness never previously disclosed. After an extensive colloquy, the trial judge determined that the surprise witness's anticipated testimony contradicted defense counsel's own representations, and excluded it. The Supreme Court affirmed, but only after rejecting both extremes: it refused to read the Compulsory Process Clause as an absolute bar to preclusion, and it refused to treat preclusion as a routine remedy. It held that a trial court may "insist on an explanation" for a discovery omission, and that exclusion is justified when that

explanation reveals that the omission was "willful and motivated by a desire to obtain a tactical advantage." 484 U.S. at 415. The Court identified that kind of advantage as one that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence. *Id.* It added that "if a pattern of discovery violations is explicable only on the assumption that the violations were designed to conceal a plan to present fabricated testimony, it would be entirely appropriate to exclude the tainted evidence…." *Id.* at 414.

*Taylor* also directs a balancing inquiry. A trial court "may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor," and against that right it weighs "[t]he integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process." *Id.* at 414–15. The Ninth Circuit applies those considerations before excluding a defense witness, together with the effectiveness of less severe sanctions, the impact of preclusion on the evidence at trial and the outcome of the case, the extent of prosecutorial surprise or prejudice, and whether the violation was willful. *United States v. Bahamonde*, 445 F.3d 1225, 1231-1232 (9th Cir. 2006). The most significant consideration is how important the witness is. *Id.*at 1231.

Every *Taylor* factor favors Mr. Rinderknecht. First, there was no surprise witness and no concealed testimony: Mr. Guzman was disclosed, his opinions and

bases were disclosed, and his December 17, 2025 site examination and weather readings were disclosed months before trial. Second, the explanation the Court may insist upon is on the record and is the opposite of tactical. Counsel produced Mr. Guzman's emails within hours of the Court's order and expanded the production when the government raised concerns. Third, there is no pattern of violations and nothing suggesting fabricated testimony; Mr. Guzman's technical review rests on the government's own report and materials. Fourth, exclusion would not protect the integrity of the adversary process or the truth-determining function of trial; it would undermine both, by keeping from the jury the only defense evaluation of whether the government's investigators followed NFPA 921 and PMS 412. Fifth, lesser measures are fully effective, because the government has the materials while Mr. Guzman remains on cross-examination. And because Mr. Guzman is the defense's sole origin-and-cause witness, the most significant consideration - the importance of the witness - weighs decisively against exclusion. *Taylor* upheld exclusion for deliberate, tactical concealment of a witness; it does not support striking a disclosed expert over the timing of counsel's post-order production.

Applying *Taylor*, the Ninth Circuit has observed that the Supreme Court "has upheld the drastic remedy of excluding a witness only in cases involving 'willful and blatant' discovery violations," and it held the exclusion of a defense expert impermissible where "no willful and blatant discovery violations occurred." *United States v. Peters*, 937 F.2d 1422, 1426 (9th Cir. 1991). It reached the same result in

*United States v. Finley*, 301 F.3d 1000, 1018–19 (9th Cir. 2002), reversing the exclusion of a defense expert where any omission was neither willful nor tactical and the lesser measures of Rule 16(d)(2) were available, noting that the "severe sanction of total exclusion of the testimony was disproportionate to the alleged harm suffered by the government." *Id.* at 1018.

None of the issues here approaches that standard. The disclosure error specific to any emails or documents sent by Mr. Guzman was counsel's. When sought, after direct examination, disclosure of these records overstated, rather than concealed, Mr. Guzman's information. And it should be stated that none of the information disclosed changes the opinion of Mr. Guzman regarding whether the Government's expert complied with NFPA 921 and PMS 412.

**III. The Defense Cannot Be Sanctioned for Materials It Never Possessed.**

Each obligation the government invokes is limited to what the defense holds. Rule 16 reaches documents, and the results or reports of a scientific test, only if "the item is within the defendant's possession, custody, or control." Fed. R. Crim. P. 16(b)(1)(A)(i), (B)(i). Rule 26.2 reaches only a statement of the witness "that is in their possession." Fed. R. Crim. P. 26.2(a). Neither rule requires a party to produce what it does not have. The Ninth Circuit reads Rule 16's discovery obligations symmetrically and treats physical possession as the dispositive trigger: "the triggering requirement under rule 16 . . . is that the papers, documents, and tangible

objects be in the actual possession, custody or control" of the party. *United States v. Fort*, 472 F.3d 1106, 1118 (9th Cir. 2007) (quoting *United States v. Gatto*, 763 F.2d 1040, 1049 (9th Cir. 1985)).

Mr. Guzman's notes, photographs, and video from his site visit stayed in his own file have been disclosed. The task book predates this case by more than a decade and was not sent to counsel. What was in counsel's possession - Mr. Guzman's emails and their attachments - has been produced in full, and its substance, the December 17 site examination and weather readings, was disclosed to the government months before trial. Am. Disclosure ¶ 14. When the remaining items surfaced, the defense did not resist their production; it agreed to the government's proposed procedure, and the Court ordered them produced directly to the government.

Nor do these materials bear on the core of Mr. Guzman's testimony. His technical review rests on the government's own origin-and-cause report, photographs, interviews, and engineering reports, all of which the government has always had. 11/13/26 Tr. 167:23–168:10. Even if the Court concluded that any item should have been produced earlier, exclusion would not follow. *See* Part II, *supra*. The record shows a defense that disclosed the site examination before trial, produced its expert's emails within hours of the issue arising and agreed to every production procedure the government proposed. That is the opposite of an omission that is "willful and motivated by a desire to obtain a tactical advantage." *Taylor*,

484 U.S. at 415.

**IV. The Government Has Suffered No Prejudice, and Any Remedy Must Be the Least Severe.**

Even where a witness statement has been withheld, striking testimony is not automatic. In the Jencks Act context, the Ninth Circuit considers the culpability of the party and the prejudice to the other side, and "when there is no prejudice, a witness's testimony need not be stricken." *United States v. Riley*, 189 F.3d 802, 806 (9th Cir. 1999) (citation omitted).

There is no prejudice here. Mr. Guzman's cross-examination has not concluded. The government has his emails, their attachments, and text messages, and after in camera review, will determine whether any portion of his file must be produced. The government can use all of it. If the Court finds that more is required, the remedy is the one the rules already provide: production of any additional portion the Court orders, additional time for cross-examination, or preclusion of testimony regarding any evidence not disclosed.

Nor can the government claim surprise. Its motion rests on a premise the record refutes: that it first learned of Mr. Guzman's site materials during cross-examination at this trial. That is not accurate. It learned of them at the first trial, five months ago. There, Mr. Williams during cross-examination elicited that Mr. Guzman visited the site on December 17, 2025 and was "documenting the scene and taking weather readings." Trial 1 Tr. (June 22, 2026) 2249:17–21. He elicited

that Mr. Guzman relied on that inspection and "did not write a full detailed origin and cause report." Trial 1 Tr. (June 23, 2026) 2288:15–2289:11. He elicited that Mr. Guzman "was not redoing the origin and cause" and was not doing a full origin-and-cause analysis. *Id.* 2325:13–18. And he asked about the task book by name and established that Mr. Guzman never gave it to defense counsel. *Id.* 2293:2–2294:6. In the five months between trials, the government never asked the defense or the Court for the site notes, photographs, or task book. It raised them for the first time in the middle of Mr. Guzman's cross-examination at the retrial and moved to strike in the same breath. 11/13/26 Tr. 251:5–11. The government cannot claim surprise or prejudice from materials it has known about since June and chose not to request.

*United States v. Rhynes*, 218 F.3d 310 (4th Cir. 2000) (en banc), confirms that the sanction should fit the problem. There, the trial court excluded a defense witness's testimony because of defense counsel's conduct. The en banc court vacated the conviction. It held that excluding the testimony "in its entirety was thus unduly severe," that there was "no requirement that Rhynes be sanctioned for his lawyer's conduct," and that "courts should impose the least severe sanction justified under the circumstances." *Id.* at 322-23. It pointed to remedies that address the actual concern, including thorough cross-examination and a credibility instruction. *Id.* Although *Rhynes* arose under a sequestration order, its reasoning applies with equal force here.

Every issue the government raises concerns what counsel produced and

when. None concerns the substance of Mr. Guzman's opinions or the basis for the same. Striking his testimony would not restore anything to the government; it would only harm Mr. Rinderknecht from having his only listed Origin and Cause[3] expert witness, who completed a review of the government's origin-and-cause expert's opinion and rendered opinions about the same, from the jury. In *Finley*, where the excluded expert was the defendant's only evidence on the point, the Ninth Circuit held that "the prejudice resulting from the error cannot be construed as harmless." 301 F.3d at 1018.

## V. The Record Does Not Support a Finding of Egregious Misconduct.

The government has described these events as egregious discovery violations. The record shows the opposite. The defense produced on the day the Court ordered production. It produced additional material the next morning when the government raised specific concerns. The defense has not disobeyed any order of the Court concerning witness statements, and it has honored the order not to communicate with Mr. Guzman during his cross-examination. No finding of willfulness, bad faith, or disobedience of an order is warranted.

## CONCLUSION

The Court should deny the government's motion to strike. This type of severe sanction is inappropriate in this case and not supported by the law.

[3] According to the Court order regarding expert witnesses in this case specific to the origin and cause, each side was allowed to offer one expert only on this topic.

Dated: November 15, 2026

Respectfully submitted,

HANEY LAW GROUP, PLLC

/s/ Steven A. Haney, Sr.
STEVEN A. HANEY, SR. (P63947)
Attorney for Defendant
JONATHAN RINDERKNECHT

## DECLARATION OF STEVEN A. HANEY, SR. REGARDING USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

I, Steven A. Haney, Sr., declare as follows:

1. I am counsel of record for Defendant Jonathan Rinderknecht in this matter, admitted pro hac vice. I make this declaration under Section A.5 of the Court's Standing Order for Criminal Cases. I have personal knowledge of the facts stated in this declaration.

2. In preparing Defendant's Supplemental Brief in Opposition to the Government's Motion to Strike the Testimony of Thomas D. Guzman, I used a generative artificial intelligence tool to assist in drafting it.

3. I have reviewed the document and verified that the content generated with the assistance of artificial intelligence is accurate and complies with my Rule 11 obligations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 15th, 2026, at Los Angeles, California.

/s/ Steven A. Haney, Sr.
STEVEN A. HANEY, SR. (P63947)