TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental Crimes & Consumer Protection Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
DANBEE C. KIM (Cal. Bar No. 350014)
Assistant United States Attorneys
Environmental Crimes & Consumer Protection Section
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3359/8644/6530
Email: mark.williams@usdoj.gov
matthew.o'brien@usdoj.gov
danbee.kim2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN RINDERKNECHT,<br>aka "Jonathan Rinder,"<br>aka "Jon Rinder,"<br><br>Defendant. | No. CR 25-833(A)-AH<br><br><u>GOVERNMENT'S SUPPLEMENTAL BRIEF REGARDING SANCTIONS FOR DEFENDANT'S WILLFUL DISCOVERY VIOLATIONS</u> |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Mark A. Williams, Matthew W. O'Brien, and Danbee C. Kim, hereby files its supplemental brief regarding the availability of sanctions for defendant's willful discovery violations.

//

//

Dated: November 16, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division

/s/
MARK A. WILLIAMS
MATTHEW W. O'BRIEN
DANBEE C. KIM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS


MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. RULE 16 APPLIES ........ 1

A. The Ninth Circuit interprets Rule 16(b)(1)(C)'s "bases and reasons" requirement to encompass data underlying an expert's opinions. ........ 1

B. The undisclosed materials also contained "results and reports" that Rule 16(b)(1)(B) required defendant to disclose. ........ 4

C. Rule 16(b)(1)(A)'s broad requirements also apply. ........ 5

D. Willful violation of any of Rule 16's requirements justify exclusion. ........ 6

II. RULE 26.2 ALSO APPLIES ........ 7

III. CONCLUSION ........ 7

# MEMORANDUM OF POINTS AND AUTHORITIES

The government submits this supplemental brief regarding the bases for the Court's contemplated sanctions for defendant's willful discovery violations. In short, because Rules 16(b)(1)(C), (b)(1)(B), and (b)(1)(A) all apply and require disclosure, and because defendant willfully violated those rules' requirements, Rule 16(d) authorizes the Court to grant "appropriate relief," including striking Guzman's testimony. Similarly, the government maintains that Rule 26.2 applies and independently authorizes sanctions due to defendant's continued noncompliance with the Court's order.

## I. RULE 16 APPLIES

As set forth in the government's motion for sanctions (Dkt. 364) and incorporated here, the government obtained 56 GB (15,565) files from Guzman following the Court's order that he turn over case files. Though the government's review is ongoing, Guzman's undisclosed materials appear to include weather data, photographs of Guzman's scene examination, video recording with narration of Guzman's scene examination, testing, and analysis that Guzman relied on in forming his opinions in this case. (*Id*. at 7.) Three different provisions of Rule 16's reciprocal discovery requirements applied to Guzman's undisclosed files.

The government is contemporaneously submitting a drive to the Court containing a representative sampling of materials discoverable under Rule 16 that the defense failed to produce, in flagrant violation and disregard of its discovery obligations. The materials have been categorized according to the specific Rule 16 provision under which they are discoverable. Many of the materials are discoverable under multiple provisions.

### A. The Ninth Circuit interprets Rule 16(b)(1)(C)'s "bases and reasons" requirement to encompass data underlying an expert's opinions.

The first rule requiring disclosure is Rule 16(b)(1)(C), which required defendant to disclose a "complete statement of all opinions" that Guzman would offer as well as the "bases and reasons for them." Fed. R. Crim. P. 16(b)(1)(C)(iii).

Both the Ninth Circuit and district courts have interpreted Rule 16(b)(1)(C) to require disclosure of underlying data when necessary to evaluate the "bases and reasons" for an expert's opinion. In *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008), for example, the Ninth Circuit affirmed a district court's order requiring disclosure of the "documents or information that the expert reviewed in preparing his or her report." *Id.* at 513. While *W.R. Grace* involved a pretrial order rather than post-violation sanctions, the Ninth Circuit went on to explain that even if the district court's pretrial orders *had* been "a sanction, they still would not be an abuse of the court's discretion." *Id.* at 514. That is because under Rule 16's plain text, disclosure of the underlying data is "well within Rule 16's requirement that expert disclosures describe 'the bases and reasons for'" an expert's opinions, and disclosure is "clearly" authorized by Rule 16. *Id.* at 513. Put even more simply, when a defendant has "provided none of the underlying documents" that an expert relied on," he "failed to provided the 'bases and reasons' for the opinions of his experts as required by Rule 16(b)(1)(C)." *United States v. Naegele*, 468 F. Supp. 2d 175, 176 (D.D.C. 2007).

If Ninth Circuit case law weren't enough, the Committee Advisory Notes further explain why Rule 16(b)(1)(C) applied and required disclosure of Guzman's data, photographs, and analyses. The Committee's 1993 amendments first required fulsome expert disclosure. As the Committee explained then, the amendments were "intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16, advisory committee notes to 1993 amendments. To that end, the Committee explained that expert disclosures should "cover not only written and oral reports," but also "*tests, reports, and investigations*," plus any "information that might be recognized as a legitimate basis for an opinion." *Id.*

Here, Guzman's weather data, site visit photographs, and analyses of the scene and the government's fire investigation constituted the "bases and reasons" for

Guzman's opinions, so were required to be disclosed. For example, at trial, Guzman relied on weather data that he claimed more accurately reflected conditions between December 31, 2024, and January 1, 2025, to support his opinion that either a firework or smoldering combustion could have caused the Lachman Fire. Although his expert disclosure referenced this opinion at a high level, it did not disclose the underlying data, methodology, or analysis on which the opinion depended.

> **Opinion 6 — Relative humidity at the Lachman origin was below 23% and supported ignition from a wide range of causes.**
>
> 20. Comparing his on-site readings to nearby remote automated weather stations, as PMS 412 directs, Mr. Guzman's opinion is that relative humidity at the Lachman origin in the hour before discovery was approximately 15% to 22%, and that the Report's weather analysis relied on a station that does not best represent conditions at the origin. Humidity in that range markedly increases the receptivity of fine wildland fuels to ignition from low-energy sources, including smoking materials and fireworks.

Guzman specifically identified his "on-site readings" as part of the bases and reasons for his opinions, yet neither the readings themselves nor the associated data were produced. The government obtained those results only recently, and then directly from Guzman rather than through the Defense. The data includes, among other things, relative humidity, temperature, wind speed, and wind-direction measurements collected by Guzman's testing device on December 17, 2025. Guzman compared those measurements to data from nearby weather stations to formulate his opinions regarding weather conditions at the time of the fire.

The newly produced data also revealed a significant discrepancy: Guzman's December 2025 measurements do not appear to support his ultimate opinion that relative humidity ranged from 15% to 22%. More importantly, the late disclosure exposes a broader deficiency in the Rule 16 expert disclosure itself. The disclosure did not explain Guzman's methodology or analytical process to get from the inconsistent readings to his final opinion about the applicable weather data. Without that information, the

government was deprived of its opportunity to meaningfully evaluate, test, challenge, or rebut Guzman's opinions before trial. The failure to produce the weather data collection and related materials constitutes a discovery violation because those materials form a critical part of the foundation for Guzman's opinions. Moreover, the belated production confirms that the deficiencies in the signed Rule 16 expert disclosure were far more substantial than could be discerned from the face of the document itself, revealing that the disclosure omitted information that Rule 16 expressly requires to facilitate meaningful pretrial scrutiny of expert testimony.

This is merely one example of Rule 16 discovery the Defense has failed to produce. The photographs, videos, diagrams, summary of analyses that expand on and supplement the ultimate opinions in the signed Rule 16 Expert Disclosure are equally significant materials that form Guzman's "bases and reasons" that were not disclosed. This was all discoverable, and the Defense failed to produce any of it.

Indeed, Guzman himself seemed to recognize that this material was discoverable under the Federal Rules. In his thumb drive, Guzman labeled the folder with photos, videos, and weather data "discovery from me." (Dkt. 364 at 7.) Guzman also sent defense counsel emails describing these undisclosed items as "discovery." On this issue, the Court should take defendant's expert at his word.

**B. The undisclosed materials also contained "results and reports" that Rule 16(b)(1)(B) required defendant to disclose.**

The second basis for disclosure is Rule 16(b)(1)(B), which required defendant to allow the government to "inspect," "copy," or "photograph the results or reports of any physical or mental examination and of any scientific test or experiment." Fed. R. Crim. P. 16(b)(1)(B).

Guzman's photographs and video of his site examination and weather data (as described above) both qualify as "results or reports" that should have been disclosed under Rule 16(b)(1)(B). Guzman's site visit was a "physical . . . examination" because he visited in-person and conducted observations of the fire origin scene. The

photographs and narrated video are, similarly, "results or reports" because they document Guzman's observations. Similarly, the weather data is the "result" of a "scientific test or experiment," for which he used a device to measure the temperature, humidity levels, and related data at the hill on December 17, 2025.

The Ninth Circuit's decision in *Iglesias*, 881 F.2d 1519 (9th Cir. 1989), supports this conclusion, and in any event is not to the contrary. In *Iglesias*, the government turned over final lab reports but not "log notes" that were generated in the course of drug testing. The Ninth Circuit held that then-numbered Rule 16(a)(1)(D) – which applies to the government and similarly requires producing "results or reports" – did not encompass lab notes, because they lack the "requisite formality or finality" to be "considered as either a 'report' or a 'result.'" *Id*. at 1523. But that conclusion helps the government here, because (a) unlike in *Iglesias*, the government received no "final" report from Guzman (*see* Dkt. 366 (defense brief: Guzman "wrote no report")), and (b) there is no "more final" result of a lab visit or weather collection than the photographs or weather data, respectively. In any event, even if the Court were to conclude *Iglesias* applies, other district courts have correctly noted that it analyzed only the "results or reports" language and does not foreclose materials from being discoverable under other components of Rule 16. *See, e.g.*, *United States v. Liquid Sugars, Inc.*, 158 F.R.D. 466 (E.D. Cal. 1994) (requiring production of similar materials as "data" under government equivalent of Rule 16(b)(1)(A)).[1]

**C. Rule 16(b)(1)(A)'s broad requirements also apply.**

The third basis that required defendant to disclose Guzman's materials is Rule 16(b)(1)(A), which requires inspection any copying of any "books, papers, documents,

---

[1] The Court also identified *United States v. Peters*, 937 F.2d 1422 (9th Cir. 1991). *Peters* is not to the contrary because while it discussed whether an "expert's opinion that has not been recorded in some tangible medium" counts as a "result or report," *Peters* pre-dates the 1993 amendments to Rule 16 requiring disclosure of expert opinions whether or not memorialized in tangible form. In any event, *Peters* would be inapplicable even if it governed because Guzman's photographs, videos, and data were "recorded" in a "tangible medium," as has now been revealed.

data, photographs, tangible objects, buildings or places, or copies" if defendant intends to use the item in his case-in-chief at trial."

Guzman's materials qualify under Rule 16's broadest reciprocal discovery provision because defendant "used" them in his case-in-chief. Defendant "used" Guzman's weather data when Guzman testified about the applicable humidity levels on the Hidden Buddha hill on January 1, 2025 and the weather conditions that would be conducive to a smoldering fire, and he "used" Guzman's site observations when he testified about where he believed the specific origin area was. Defendant may not immunize otherwise discoverable materials that he intends to affirmatively use at trial by presenting their contents only through expert testimony. Indeed, the Ninth Circuit has recognized that defendants may violate Rule 16(b)(1)(A) even without introducing the specific item at trial. In *United States v. Scholl*, 166 F.3d 964, 972 (9th Cir. 1999), the Ninth Circuit affirmed exclusion of cashier's checks that were "not entered into evidence," because defendant nevertheless used the checks to refresh a witness's recollection so that the "information contained on the checks" was presented to the jury. The district court found the failure to disclose was a "strategic decision to withhold the evidence until the government would be unable to fully investigate."

**D. Willful violation of any of Rule 16's requirements justify exclusion.**

Because defendant failed to "comply with" Rule 16, the Court may enter any "order that is just under the circumstances." Fed. R. Crim. P. 16(d). While all the above provisions required discovery, the Court need only find one violation to impose sanctions. Unlike similar civil rules (*see, e.g.*, Fed. R. Civ. P. 37(b)), no preexisting court order is required. However, as explained in the government's sanctions motion, to exclude a witness, the Court must determine defendant's violations were "willful and motivated by a desired to obtain a tactical advantage." *United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002).

Defendant's failures to disclose Guzman's materials were, similarly, strategic and willful. As the government's motion explained more fully, Guzman repeatedly gave

defense counsel his materials, even labelling them "discovery." (Dkt. 364 at 7.) But as Guzman himself joked, regarding certain of his opinions, "[m]aybe it's one of those things that we know, and we keep it to ourselves." (*Id.* at 4.) The federal rules do not permit "keep[ing] it to ourselves," and neither should the Court.

## II. RULE 26.2 ALSO APPLIES

Finally, while the government agrees that the Court may not find a violation of Rule 26.2 that predates the Court's "order" requiring defendant to disclose Guzman's statements (*see* Fed. R. Crim. P. 26.2(a)), the government maintains that Rule 26.2 authorizes sanctions here because defendant still refuses to fully comply with the Court's order. Sanctions for violating Rule 26.2 are mandatory: if a party "disobeys an order to produce or deliver a statement," the Court "must strike the witness's testimony."

Because defendant has "disobeyed" the Court's order requiring disclosure of *all* statements, striking Guzman's testimony is, similarly, required here. But despite that broad order, defendant produced only 76 emails with Guzman—when Guzman himself produced *468* such emails to the government. Defendant may have some legitimate privilege claims. But they do not warrant withholding more than 80% of Guzman's communications, many of which were clearly nonprivileged. The government remains concerned that other, unproduced materials still exist.

## III. CONCLUSION

The Court has "unquestioned discretionary power to exclude evidence that should have been produced in reciprocal discovery." *United States v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011). It is difficult to imagine a more flagrant violation of reciprocal discovery than an expert sending files labeled as "discovery" before defendant made the choice to "keep it to ourselves." While the government hoped the undisclosed materials might not be unduly prejudicial, they have turned out to be critical. Regrettably, exclusion is the best—and only—fair solution.